UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY,<br><br>Plaintiff,<br>v.<br><br>DHARMACON, INC. and FISHER SCIENTIFIC INTERNATIONAL INC.,<br><br>Defendants. | Civil Action No.<br>05-10156-PBS |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## FISHER SCIENTIFIC'S MOTION TO DISMISS

Defendant Fisher Scientific International Inc. ("Fisher") respectfully submits this reply memorandum of law in support of its Motion to Dismiss the Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

As noted in Fisher's opening brief, the allegations in the Amended Complaint provide no discernible factual basis for direct liability on the part of Fisher. Moreover, to the extent the Amended Complaint asserts liability as to Fisher as the parent of Dharmacon, Inc. ("Dharmacon"), it fails utterly to allege any basis—other than the alleged parent-subsidiary relationship—to disregard the separate corporate entities of Dharmacon and Fisher. The claims against Fisher in the Amended Complaint thus have no basis either in fact or in law and MIT's pursuit of the claims is simply part of a continued effort to harass and intimidate Dharmacon and to try to obtain a degree of bargaining leverage.

1

In its Opposition to Fisher's Motion to Dismiss ("MIT's Opposition"), MIT presents an entirely new set of factual allegations in a desperate attempt to revive the Amended Complaint. As an initial matter, the Amended Complaint does not give even a hint of these new allegations and thus the Court should ignore the allegations as they have not been properly pled. MIT's attempt to introduce new allegations in response to a motion to dismiss, after it has already had an opportunity to amend the complaint, is entirely unwarranted and improper. Thus, the Amended Complaint, as originally pled, should be dismissed in its entirety as to Fisher.

Moreover, even assuming, *arguendo*, that they were pled in the Amended Complaint, the new allegations do not alter the conclusion that the Amended Complaint fails to state a claim against Fisher. First, MIT's new allegation that Fisher distributes technology that Dharmacon made pursuant to the siRNA Distributor License Agreement (the "License Agreement") is not a basis for liability as to Fisher. Only Dharmacon has any obligations under the License Agreement, on thus only Dharmacon can be held directly liable for a breach thereunder. Second, MIT's contention that "participation" by Fisher representatives in the discussions between Dharmacon and MIT concerning the present license dispute somehow makes Fisher liable as a parent corporation for breach of contract[1]—or more absurdly, for tortious interference with contractual relations—has no basis whatsoever in the law. Finally, MIT's new allegation that Fisher distributes and sells the accused Dharmacon technology is simply untrue. MIT attached to its opposition a laundry list of products sold on Fisher's website and falsely assumed that the list

---

[1] In its opposition, MIT does not contest Fisher's argument that the Amended Complaint fails sufficiently to allege liability for patent infringement against Fisher as a parent of Dharmacon.

2

includes allegedly infringing products. Accordingly, the Amended Complaint must be dismissed as to Fisher.

## DISCUSSION

### A.   MIT Has Failed to State a Claim Against Fisher for Patent Infringement

In its opposition, MIT provided a general excerpt from Fisher's website and attached a list of products sold through the website. MIT then assumed, without any basis for doing so, that the excerpt pertained to and the list included the accused Dharmacon technology. They do not.

Even assuming that the allegation that Fisher directly sells or distributes the accused technology was properly pled,[2] that allegation cannot ultimately be the basis for liability as to Fisher because, as set forth in the attached affidavit of William Marshall, it is simply untrue. Affidavit of William S. Marshall ("Marshall Affidavit"), ¶ 2-4. Because the new factual allegations contained in MIT's opposition brief, as well as the attached excerpts from Fisher's website, are outside the pleadings, they are not properly considered in the context of a motion to dismiss. MIT's introduction of new allegations at this stage is nothing more than an improper attempt by MIT to salvage its inadequately

---

[2] In its opposition, MIT identifies the bare, generic allegation in the Amended Complaint that "defendants . . . make, use, sell and/or offer for sale products that infringe the '790 patent" and suggest that from this allegation Fisher should have assumed that MIT alleged direct liability against Fisher and submitted an affidavit to rebut such liability. In the same paragraph quoted by MIT, however, the Amended Complaint continues: "For example, *Dharmacon* employs reverse transfection methods that infringe the '790 patent. *Dharmacon* also sells kits that include both reagents used for reverse transfection as well as reverse transfection libraries, such as Dharmacon's si*ARRAY* RTF siRNA Library." Amended Complaint, ¶ 33 (emphasis added). Given that there were no similarly specific allegations in the Amended Complaint concerning infringing activity by Fisher, it was only reasonable for Fisher to assume that MIT's claims against Fisher were as a parent of Dharmacon. In any event, Fisher could not have anticipated that MIT would contend its opposition that the allegations in the Amended Complaint incorporated the false allegation that Fisher actively distributed the accused technology from its website.

3

pled claim against Fisher by obscuring the fact that it lacks any factual foundation for the claim.[3]

**B.   MIT Has Failed to State a Claim Against Fisher for Breach of Contract**

   **1.   The Amended Complaint Does Not State a Direct Breach of Contract Claim Against Fisher**

In its opposition, MIT cites four separate allegations in the Amended Complaint which it contends properly states a direct claim against Fisher for breach of contract. *See* MIT's Opposition, at 6. Each of these sets of allegations makes essentially the same point: that Dharmacon and Fisher have failed to pay certain royalties under the License Agreement and have disputed their royalty obligations under the License Agreement. In addition, MIT alleges in its opposition that Fisher "has sold (and still sells) the technology that Dharmacon made under the License Agreement," *id.* ¶ 5, and that "Fisher qualifies as an "Affiliate" under the terms of the License Agreement, and would receive therefrom rights to 'develop, make, have, use, sell, offer to sell, lease, and import' licensed products." *Id.* ¶ 6.

As a preliminary matter, the allegations that Fisher sells products pursuant to the License Agreement and qualifies as an "Affiliate" under the License Agreement were not set forth in the Amended Complaint and thus were not properly pled. MIT's attempt to introduce new factual allegations in opposition to a motion to dismiss is entirely improper and the allegations should not be considered by the Court.

Even had MIT included the new allegations in the Amended Complaint, those allegations, along with the allegations that Fisher has failed to pay and disputed royalties,

---

[3] To the extent the Court is inclined to convert the present motion into one for summary judgment as to the patent claim and allow discovery as to the claim, Fisher respectfully requests that such discovery be limited to the specific issue of whether Fisher distributes or sells the accused Dharmacon technology.

4

would still have been insufficient to state a direct breach of contract claim against Fisher. MIT ignores a fundamental aspect of the License Agreement which is fatal to its contention that Fisher could be directly liable for breach of contract: only Dharmacon has any obligations to pay royalties under the License Agreement, and thus only Dharmacon could be liable for breach of contract for the nonpayment of royalties. *See Bagley v. Hoopes*, No. 81-1126-Z 1985, WL 17643, *8 (D. Mass. 1985) ("Only a party to a contract may breach the contract.").

The License Agreement clearly states that "COMPANY [Dharmacon] shall pay to M.I.T. a running royalty of seven percent (7%) of NET SALES by COMPANY and AFFILIATES." License Agreement, at 9. Thus, even if Fisher can exercise *rights* under the License Agreement as an "Affiliate," Fisher cannot be liable for breach of contract because it has no *obligations* to pay any royalties or otherwise under the agreement. Indeed, as a factual matter, Fisher has never paid any royalties to MIT pursuant to the License Agreement. *See* Marshall Affidavit, at ¶ 2.

        2.        **Participation by Fisher in Negotiations to Resolve the License Dispute Is Not a Basis Under Massachusetts Law to Pierce the Corporate Veil**

In its opposition, MIT makes much of the detailed history of which individuals attended what meetings concerning the dispute between Dharmacon and MIT. Again, these allegations are not in the Amended Complaint and thus should be entirely disregarded. Moreover, even if considered, these allegations do not form the basis for liability of Fisher as a parent of Dharmacon. MIT's suggestion that mere participation by Fisher representatives in several discussions concerning the royalty dispute provides a basis to pierce the corporate veil between Dharmacon and Fisher has no basis in the law. As set forth in Fisher's opening brief, Massachusetts courts consider a variety of factors

5

in determining whether to pierce the corporate veil between a parent and a subsidiary. None of these factors concerns whether the parent and subsidiary share legal representation or whether representatives from the parent corporation participate in disputes concerning the subsidiary.

MIT states that it is curious that Fisher declined to supply a declaration or affidavit to support "its bald allegations that it should be dropped from this case at this early date." MIT Opposition, at 7. Given the absence of any allegations in the Amended Complaint that pertain to the *Evans* factors set forth in Fisher's opening brief, other than common ownership, or that indicate any fraudulent or deceptive behavior on the part of Fisher or Dharmacon, there was nothing in the Amended Complaint for Fisher to rebut in a declaration or affidavit.[4]

MIT suggests that because "one can speculate that Fisher's role is not limited to publicly-available information," *id.*, MIT is entitled to full discovery as to the relationship between Dharmacon and Fisher. If pure *speculation* that more information about a parent-subsidiary relationship exists than is publicly-available warrants full discovery as to a claim against a parent corporation, a plaintiff could simply join the parent corporations of defendants in any case and thereby be entitled to full discovery as to the parent-subsidiary relationship. Notice pleading notwithstanding, MIT is required to provide more than just hope and speculation that it has a viable claim in order to survive a motion to dismiss. *See Hoffman v. Reali*, 973 F.2d 980, 987 (1st Cir. 1992)

---

[4] Indeed because, as MIT itself noted, the corporate veil piercing standard is "imprecise and fact-intensive," Fisher could not have responded with any specificity to a claim against it as Dharmacon's parent given the complete absence of any factual allegations in the Amended Complaint to support such a claim. Fisher surely could not have been expected to rebut every possible ground for piercing the corporate veil that exists in the case law. Given the absence of any concrete allegations, Fisher's only option was to respond in general terms denying liability as a parent, which it did in its moving memorandum.

6

("[A plaintiff] may not rest merely on a bare hope that discovery will provide evidence to create an issue of fact. 'Discovery is not a "fishing expedition"; parties must disclose some relevant factual basis for their claim before requested discovery will be allowed.'" (*quoting Milazzo v. Sentry Ins.*, 856 F.2d 321, 322 (1st Cir. 1988))). Accordingly, the breach of contract claim against Fisher must be dismissed.

### C.  Fisher Has Not Pled And Has No Basis to Plead Tortious Interference With the License Agreement

MIT contends with no explanation that claims for tortious interference "are adequately subsumed within the breach of contract claims." MIT's Opposition, at 8. MIT cites no legal authority whatsoever for this proposition. It is entirely unclear why MIT believes an independent claim with distinct legal elements is subsumed within the breach of contract claim. Nevertheless, even if the Court were to allow MIT to pursue a tortious interference claim against Fisher, MIT has not sufficiently pled allegations—either in the Amended Complaint or in its opposition—to support such a claim. An essential element of a tortious interference claim is the "intentional interference with the contract or business relationship for an improper purpose or by improper means." *Bourque v. Cape Southport Assocs., LLC*, 60 Mass. App. Ct. 271, 278 (2004); *see also Melo-Tone Vending, Inc. v. Sherry, Inc.*, 39 Mass. App. Ct. 315 316 (1995). Moreover, the requisite improper motive is "actual malice—a spiteful, malignant purpose, unrelated to the legitimate corporate interest." *King v. Driscoll*, 418 Mass. 576, 587 (1994); *Pembroke Country Club, Inc. v. Regency Savings Bank, F.S.B.*, 62 Mass. App. Ct. 34, 39 (2004) (legitimate advancement of its own economic interest not "improper" for purposes of a tortious interference claim). MIT has nowhere alleged that Fisher at any time acted with any improper motive unrelated to its own corporate or economic interest.

7

Thus, MIT has not stated and cannot properly state a claim against Fisher for tortious interference with the License Agreement.

## CONCLUSION

For the reasons stated above, Fisher respectfully requests that the Court dismiss the Amended Complaint in its entirety with prejudice as to Fisher.

Respectfully submitted,

/s/ Michael S. Shin
Timothy C. Blank, BBO # 548670
Michael S. Shin, BBO # 658134
DECHERT LLP
200 Clarendon Street, 27th Floor
Boston, MA 02116
(617) 728-7100
*Attorneys for Fisher Scientific
International Inc. and Dharmacon, Inc.*

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY,<br><br>   Plaintiff,<br>v.<br><br>DHARMACON, INC. and FISHER SCIENTIFIC INTERNATIONAL INC.,<br><br>   Defendants. | Civil Action No.<br>05-10156-PBS |

**AFFIDAVIT OF WILLIAM S. MARSHALL IN SUPPORT OF
FISHER SCIENTIFIC'S REPLY MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS**

William S. Marshall, under oath, deposes and states as follows:

1.  I am the Executive Vice President of Research and Operations for Dharmacon, Inc. ("Dharmacon"). I understand that Dharmacon and Fisher Scientific International Inc. ("Fisher") have been named as defendants in the above-captioned lawsuit in the Commonwealth of Massachusetts. I make this affidavit on personal knowledge concerning the distribution and sales of Dharmacon products to establish that Fisher is not a proper party to this lawsuit.

2.  Fisher has never directly paid any royalties to MIT pursuant to the siRNA Distributor License Agreement (the "License Agreement") between Dharmacon and MIT, nor is it obligated to make any royalty payments.

1

3.  Fisher does not sell any products that use the accused Dharmacon reverse transfection technology—including but not limited to Dharmacon's si*ARRAY* RTF siRNA Library.

4.  None of the items listed on the exhibit to MIT's Opposition to Fisher Scientific's Motion to Dismiss ("MIT's Opposition") are products that use the accused Dharmacon reverse transfection technology.

5.  The following statement quoted in MIT's Opposition from Fisher's website does not refer to the accused Dharmacon reverse transfection products:

> Dharmacon is the market Leader in siRNA Technology. Starter and Control Kits, as well as the new Transfection Kits and siMEM media are available through Fisher Scientific as regular catalog items. All other products, including custom siRNA's, can be obtained via special orders.

Signed under the pains and penalties of perjury on this ___ day of July, 2005.

/s/   William S. Marshall
William S. Marshall, Ph.D.
Executive Vice President of Research and Operations for Dharmacon, Inc.