UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY, <br><br> Plaintiff, <br><br> v. <br><br> DHARMACON, INC. and FISHER SCIENTIFIC INTERNATIONAL INC., <br><br> Defendants. | Civil Action No.: 05-10156 PBS <br><br> **ORAL ARGUMENT REQUESTED** |

**MIT'S MOTION TO COMPEL DISCOVERY
AND MEMORANDUM IN SUPPORT THEREOF**

Pursuant to Federal Rules of Civil Procedure 26, 30, 33, 34 and 37, and Local Rules 33, 34, 37, and 7.1, Plaintiff Massachusetts Institute of Technology ("MIT") hereby submits this motion to compel discovery from Defendants, Dharmacon, Inc. ("Dharmacon") and Fisher Scientific International, Inc. ("Fisher") (collectively, "Dharmacon"), and incorporated memorandum of reasons in support thereof.[1]

This case is a license dispute, centering on interpretation of the terms "Net Sales" of "Licensed Products" in a December 21, 2001 license agreement to which MIT and Dharmacon are parties (the "License Agreement"). Under the License Agreement, Dharmacon was given rights to breakthrough technology in gene technology discussed more fully below called small interfering RNA ("siRNA"), in exchange for a 7% royalty on sales of siRNA products.

Specifically at issue is whether Dharmacon is obligated to pay royalties based on the entire sale price of its siRNA products, which it *concedes* are royalty-bearing, or whether it can

---

[1] Fisher acquired Dharmacon in 2004, and distributes Dharmacon's siRNA products.

1

deduct certain amounts from the prices of those products, prior to calculation of royalties, based on what it claims are "proprietary" Dharmacon "services," or products sold bundled with siRNA.

Dharmacon has failed to produce discovery directly relevant to this case, including:

1.     Documents related to the Fisher-Dharmacon acquisition, which relate to MIT, the MIT-Dharmacon license agreement, or Dharmacon's siRNA products (e.g., offering memoranda, internal and exchanged correspondence concerning the value of the MIT-Dharmacon license, business plans, projections, etc.);

2.     Documents and interrogatory responses concerning what Dharmacon claims to be non-royalty-bearing components of its siRNA products, and the method of calculating royalties by assessing and deducting the "value" of these components from net sales;

3.     Documents and interrogatory responses concerning how Dharmacon markets and sells its siRNA products, including marketing and sales correspondence, projections for future production, and manufacturing costs;

4.     Deposition dates for Dharmacon's witnesses with knowledge of issues such as negotiation and interpretation of the License Agreement, Dharmacon's "proprietary" technology, and its siRNA products; and

5.     An inspection of the facility in which Dharmacon manufactures these allegedly "value-added" products.

Over the past several months, MIT has spent tens of hours trying to work with Dharmacon in order to obtain the requested discovery. Unfortunately, MIT's requests have met a stone (stalling) wall, and although Dharmacon will likely respond to this motion by telling the Court that it "may" or "intends to" produce some of this discovery sometime in the future, MIT simply can not wait any longer on vague promises -- the parties are facing a December 31, 2005 fact discovery deadline, and February 2006 bench trial date. Thus, resolution of these issues as soon as possible is crucial in order to move forward expeditiously with preparing for trial. (MIT has advised Dharmacon that to the extent it produces any of this discovery prior to its opposition to this motion, MIT will withdraw that portion of the motion.)

# I.     FACTUAL AND PROCEDURAL BACKGROUND

## A.     The Licensed Technology

This dispute involves breakthrough gene technology.  Cells that are diseased or defective often make too much of a particular protein, or make a version that has an undesirable activity or effect.  Whereas most drugs and biologics presently used to treat diseased or infected cells interact directly with proteins to block or inhibit their activity, siRNA prevents the production of the protein in the first place.

The potential uses for siRNA are manifold.  siRNA is an extremely significant tool in the continuing quest to identify and catalogue the functions of our genes.  For example, if a cell expresses a protein whose activity is unknown, siRNAs can help researchers reveal the activity of the gene by demonstrating what happens to a cell when protein production is stopped.  The research to date indicates that siRNA will be a significant material for treating and preventing disease.  For example, laboratory work has shown that if a cell is infected with a virus, siRNAs can be used to shut down the expression of viral genes, curing the infection.  In another application, if a cell is defective because of the activity of a mutant protein, or an over expressed protein, siRNAs can address the defect by preventing production of the offending protein.

MIT is a joint owner (with the Whitehead Institute for Biomedical Research, the Max Planck Gesellschaft zur Foerderung der Wissenschaften, and the University of Massachusetts) of patent applications relating to siRNA, described and claimed in U.S. Patent Application No. 09/821,832 (filed March 30, 2001), U.S. Patent Application No. 10/255,568 (a continuation application filed September 26, 2002), and Patent Cooperation Treaty application No. PCT/US01/10188 (filed March 30, 2001) (collectively the "Joint Patents").  Max Planck Gesellschaft zur Foerderung der Wissenschaften, e.V.  is a co-owner of the patent rights relating

3

to a European patent application with the European Serial No. 00126325, relating generally to the same technology (the "Max Planck Patent").

Pursuant to agreements by and among MIT and the other owners, MIT is authorized to act as exclusive agent on behalf of all owners for the purposes of licensing the Joint Patents and the Max Planck Patent in the research reagent field.

### B.     The License Agreement

The License Agreement was executed by MIT and Dharmacon on December 21, 2001, after lengthy negotiations.  (See Ex. 2.)

The License Agreement grants Dharmacon a co-exclusive license to the siRNA technology for use or sale of siRNA products as research reagents for research and educational purposes only.  The License Agreement is one of only four co-exclusive licenses granted by MIT and the other owners to the siRNA technology for use in the research reagent field.

The License Agreement requires Dharmacon to pay a running royalty of 7% on Net Sales of Licensed Products.  Specifically, Paragraph 4.1(c) of the License Agreement requires Dharmacon to pay to MIT "a running royalty rate of seven percent (7%) of NET SALES." Paragraph 1.7 defines "Net Sales" to mean

> the gross amount billed by [Dharmacon] and its AFFILIATES for LICENSED PRODUCTS, LICENSED PROCESSES and IDENTIFIED PRODUCTS, less the following:
> (i)     customary trade, quantity, or cash discounts to the extent actually allowed and taken;
>
> (ii)     amounts repaid or credited by reason of rejection or return;
>
> (iii)     to the extent separately stated on purchase orders, invoices, or other documents of sale, any taxes or other governmental charges levied on the production, sale, transportation, delivery, or use of a LICENSED PRODUCT, LICENSED PROCESS or IDENTIFIED PRODUCT which is paid by or on behalf of [Dharmacon]; and
>
> (iv)     outbound transportation costs prepaid or allowed and costs of insurance in transit.

(v)    amounts attributed to bad debt, not exceeding one percent (1%) of the gross amount billed by [Dharmacon] and its AFFILIATES for LICENSED PRODUCTS, LICENSED PROCESSES and IDENTIFIED PRODUCTS.

(vi)    An allowance for sales of 19-23 mers which are not used for siRNA, not to exceed three percent (3.0%); provided that this provision is not intended by [Dharmacon] to constitute an admission regarding the maximum percentage of sales that may in fact be non-siRNA.

"Licensed Products" is defined in Paragraph 1.4 to include any products which would infringe one or more claims of the licensed patent rights – essentially any siRNA product.

**C.    The Dispute**

There is no dispute that all of Dharmacon's siRNA products are included within the scope of Licensed Products, and thus are royalty-bearing.  As Dharmacon stated in its response to MIT's Interrogatory No. 5, "Defendants have not identified any siRNA products for which Defendants contend no royalties whatsoever should be calculated."

The dispute at issue in this litigation is whether Dharmacon should be able to deduct a "value" it arbitrarily assigns to what it unilaterally considers to be "unlicensed" components of its otherwise royalty-bearing siRNA products, from Net Sales price prior to royalties calculation.

After paying royalties on all its siRNA products for four quarterly royalty periods from December 10, 2001 through 2002, as MIT had expected when it negotiated this agreement, Dharmacon abruptly announced a "re-interpretation" of the License Agreement by letter dated August 21, 2003.  In that letter, Dharmacon stated for the first time a new contention that it had been overpaying royalties since the Effective Date of the License Agreement, and it unilaterally granted itself a $283,263.35 credit for what it claimed was an over-payment of past royalties. Dharmacon asserted therein for the first time that the License Agreement excluded from royalties "Dharmacon's full prices for its combination products that incorporate value-added components and technology."

D.    <u>The Litigation</u>

MIT filed this suit on January 27, 2005, and initiated discovery by serving its First Sets of Requests for Production and Interrogatories on Dharmacon on July 18, 2005.  At the July 11, 2005 Status Conference, the Court set this dispute for bench trial beginning on February 27, 2006, with a fact discovery deadline of December 31, 2005.

## <u>ARGUMENT</u>

**I.    Dharmacon Has Wrongfully Withheld
Relevant Documents Concerning MIT, the License Agreement,
<u>and Dharmacon's siRNA Products Related to the Fisher-Dharmacon Acquisition.</u>**

Missing from defendants' document productions are most of the relevant documents related to this dispute, that would have been created or exchanged when Dharmacon was acquired by Fisher.  This is particularly curious as Dharmacon's February 11, 2004 Press Release announcing the acquisition emphasized its siRNA technology was a driving impetus for the deal, stating, "Dharmacon has established a market leading position in supplying and developing small interfering RNA (siRNA) for gene function analysis and drug discovery in pharmaceutical, biotechnology and academic laboratories."  (See Ex. 3.)  Fisher now distributes Dharmacon's siRNA products.

As Dharmacon's siRNA products (and its MIT license) were clearly a major factor in Fisher's decision to acquire Dharmacon, documents must exist related to the acquisition which pertain to MIT, the License Agreement, and/or Dharmacon's siRNA products.  These documents would likely include at least projected earnings documents, business plans, discussion between the parties of Dharmacon's royalty obligations and projections, internal communications discussing these issues, and communications between Dharmacon and Fisher including offering memoranda, notes and presentations from acquisition meetings.

Such documents would be responsive to at least MIT's Request Nos. 1 (seeking documents related to negotiation, interpretation, and/or performance of the license agreement), 2 (seeking documents concerning Dharmacon's payment of royalties), 13 (seeking future production plans for siRNA products) and 18 (seeking external communications related to MIT or the License Agreement). In Dharmacon's August 25, 2005 responses to each of these requests, Defendants stated that "they have produced, or will produce, non-privileged documents in their possession, custody or control, if any, that are reasonably responsive to this request." (See Exs. 1, 4 and 5.)[2] Thus, these responsive documents should already have been produced.

These documents, reflecting what Dharmacon represented to Fisher, or what was understood by Fisher, during the acquisition, about the scope of the License Agreement and future production plans using siRNA, are directly relevant to MIT's case.

MIT's counsel first raised this issue in a September 13, 2005 letter. (See Ex. 6.) During the conversations that followed, Dharmacon's counsel represented that Dharmacon would supplement its production with documents related to the acquisition, to the extent that those documents were not privileged. On September 27, 2005, Dharmacon produced but two documents related to the acquisition – the executed merger agreement, and the disclosure schedules attached thereto. As this production did not reflect the full range of relevant documents sought, MIT's counsel followed up by email on October 4 and 11, asking when the additional documents would be produced. (See Exs. 7 and 8.) In the October 17, 2005 conversation that followed, Dharmacon's counsel represented that whatever supplemental production was coming would be produced by October 21. No documents were produced on that

---

[2] Exhibit 1 contains the full text of the discovery requests and responses addressed herein.

date.  MIT's counsel yet again wrote to Dharmacon's counsel on October 25, 2005.  (See Ex. 9.)
On October 27, Dharmacon's counsel stated that the only unproduced document was privileged.

In a November 11, 2005 conversation, Dharmacon's counsel claimed to have uncovered
more documents related to these topics which counsel intended to add to Dharmacon's privilege
log.  On that call, Dharmacon's counsel would not state whose files had been searched for such
documents, whether the documents collected would encompass all documents related to the
acquisition relating to MIT, the License Agreement, or Dharmacon's siRNA products, or when
the documents would be added to Dharmacon's privilege log.

Because of the continued delay of resolution of this issue, and the ambiguities as to what,
if any, additional documents will be added to Dharmacon's privilege log, MIT raises this issue
with the Court now.

**REQUESTED RELIEF:**  MIT respectfully asks that this Court enter an order requiring
Defendants to produce or log all documents related to the Fisher-Dharmacon acquisition which
relate to MIT, the License Agreement, or Dharmacon's siRNA products, within five (5) business
days of the Court's order.

**II.    Dharmacon Has Wrongfully Withheld Discovery
       Related to Dharmacon's Method of Calculating Royalties,
       and the Technology Dharmacon Claims Should Not Be Royalty-Bearing.**

Dharmacon's defense to MIT's claim for royalties is that some portions of its royalty-
bearing siRNA products should not be included in the product price when calculating royalties.
Dharmacon's position is premised on two arguments: 1) steps taken by Dharmacon to create the
final product, such as Dharmacon's purification, desalting, duplexing, or selection steps, reflect
"value-added services" which are proprietary to Dharmacon, and should offset a portion of the
value of the product; or 2) unpatented components added to the siRNA products, but not

containing siRNA themselves (such as buffers or transfection reagents sold for use with Dharmacon's siRNA) should not be included in the royalty calculation, *if* they could be packaged and sold separately.  Yet, Dharmacon has failed to provide evidence related to these claims, either in interrogatory responses, or in their document productions.

Dharmacon apparently intends to base its case for separate valuation of these "service" components on a claim that Dharmacon should be given "credit" for the advancements it has made in development of these products.  Yet, it refuses to produce documents related to this defense.  MIT is entitled to documents detailing the efforts made in doing so, as such information is directly relevant to Dharmacon's claims in this litigation.

## A.    **Dharmacon's Deficient Interrogatory Responses**

In Interrogatory No. 3, MIT asked that Dharmacon "state the royalties paid to MIT on sales of each product or service, including the methodology for calculating such royalties."  In response, Dharmacon stated "that pursuant to Fed. R. Civ. P. 33(c), they have produced, or will produce, sufficient documents from which information responsive to this interrogatory may be obtained."  (See Exs. 1, 10 and 11.)

This response is deficient under Federal Rule of Civil Procedure 33, and Local Rule 33.1(B)(1), as Dharmacon failed to specify the documents relied upon "*in sufficient detail* to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained."  Fed. R. Civ. P. 33; LR. 33.1(B)(1).  At a minimum, Dharmacon is required to reference the specific documents within its document production which would supply the sought information.  Dharmacon most likely failed to do so because *no such documents were produced*.  MIT's counsel's review of the documents reveals *no* documents explaining the methodology by which Dharmacon has calculated royalties.

MIT's counsel raised this issue by letter on November 10, 2005. (See Ex. 12.) In a conversation with MIT's counsel on November 11, Dharmacon's counsel refused to respond to MIT's request for supplementation of this interrogatory. MIT's counsel again reiterated its request by letter on November 14, 2005. (See Ex. 13.) Again, no substantive response was provided by Dharmacon's counsel, necessitating this filing with the Court.

### B.    Dharmacon's Deficient Document Productions

Dharmacon has not just made it difficult to understand how it calculates royalties based on sales of its siRNA products, but also how to calculate the "value-added" components of Dharmacon's products on which Dharmacon does not want to pay royalties. This issue, however, is central to MIT's ability to challenge at trial the way in which Dharmacon has allocated "value" / dollar amounts to each component of its siRNA products in determining what royalties it owes. Thus, MIT needs discovery concerning these "services" and kitted products.

In response to MIT's Interrogatory No. 6, Dharmacon states that the value of certain "services" should not be royalty-bearing. These "services" include "desalting, deprotecting, duplexing and various types of purification," and specifically include "Dharmacon's Option A4, B and C custom synthesis product lines, and customer synthesis orders where Dharmacon is requested by the customer to process the molecule for convenience in customer handling." Only a handful of documents, however, have been produced relating to Dharmacon's Option A4, B and C custom synthesis. Many more documents should exist for each of these procedures, such as product proposals, notes, internal memoranda, lab notebooks, test results, evaluations and analyses, and progress reports concerning product development and manufacture; documents concerning prototypes of each product; and documents disclosing the cost of developing and implementing these products and services.

Similarly, Dharmacon claims that the "value" of Dharmacon's "SMARTselection" and "SMARTpooling" techniques should not be included in the base of royalty calculations, as well as other chemical modification of the siRNA "using Dharmacon technologies." Listed as examples of these types of products are "SMARTpools, SMARTselected duplexes and siGENOME products." Dharmacon claims that use of these methods will "maximize the siRNA molecule's stability and minimize its off-target effects." Again, the evidence has not been produced.

Finally, Dharmacon describes certain products as "kits" in which the siRNA is bundled with ancillary products, including "other reagents or products, usually obtained by Dharmacon from third parties, such as buffers, cell lines, transfection reagents, antibodies, and in some cases water." Dharmacon says that products in this group may include "value associated with the intellectual property of third parties (to whom Dharmacon owes compensation on the basis of such sales)." Dharmacon states that "[p]roducts incorporated into these kits are typically procured from third parties, unquestionably do not infringe in and of themselves, and are simply re-sold after being incorporated into the kit."

But for a handful of documents, Dharmacon has produced virtually no internal documents about the products which use these services, or are bundled as kits. Lacking from Dharmacon's production are any documents which describe how Dharmacon's SMARTselection operates, how Dharmacon otherwise chemically modifies the siRNA with "Dharmacon technologies," how these methods maximize siRNA stability and minimize off-target effects, any agreement between Dharmacon and the third-party(ies) from whom Dharmacon procures third-party products for packaging in its kits, and how those products are priced as re-sold in the kits.

MIT has identified numerous statements about the "value" and uses of these products from Dharmacon's public product literature, and documents produced to date, in a November 10, 2005 letter to Dharmacon's counsel. (See Ex. 12.) Documents concerning these methods, including documents supporting statements made in Dharmacon's marketing literature, must exist in Dharmacon's files, and yet remain unproduced to date. The missing documents include the following types of documents for each of the products above discussed: product proposals, notes, internal memoranda, lab notebooks, test results, evaluations and analyses, and progress reports concerning product development and manufacture; documents concerning prototypes of each product; and documents disclosing the cost of development and implementation of these products and services.

Such documents are responsive to at least MIT's Document Request No. 10, which sought "[a]ll documents and things concerning the design, development, manufacture … of any siRNA products or services … manufactured or sold by Defendants, including but not limited to: all laboratory notebooks, test results, reports, memoranda, evaluations, analysis, any prototype, precursor, or experimental versions of such products." In response to this request, Defendants stated that "they have produced, or will produce, non-privileged documents in their possession, custody or control, if any, that are reasonably responsive to this request." (See Exs. 1, 4 and 5.) Thus, any such documents should already have been produced.

Further, to the extent that the documents sought herein were relied upon by Dharmacon in responding to MIT's interrogatories, such documents are responsive to MIT's Request No. 26, which called for "[a]ll documents and things identified, relied upon, or referred to in response to MIT's First Set of Interrogatories." (See Exs. 1, 4 and 5.) Again, Defendants responded "they

have produced, or will produce, non-privileged documents in their possession, custody or control, if any, that are reasonably responsive to this request."

Although the issue of deficiencies with Dharmacon's production of internal technical documents had been raised by letter on September 13, and further emphasis on these "value-added" components of the products was provided by letter on November 10, Dharmacon's counsel refused to discuss MIT's concerns in a November 11, 2005 conversation with MIT's counsel.  (See Exs. 6 and 12.)  Par for the course of past dealings, in a follow-up email to that conversation, Dharmacon's counsel represented that they would "try" to produce some documents later this week.  However, once again, Dharmacon's counsel did not specify what it is Dharmacon is agreeing to produce, nor would they give a date certain for that production. Again, because of the discovery schedule the parties are facing, MIT raises this issue now.

**REQUEST FOR RELIEF:**  MIT respectfully requests that this Court issue an order:

1)    Compelling Defendants to supplement their response to MIT's Interrogatory No. 3 by providing an explanation of the methodology by which Defendants have calculated royalties paid to MIT within five (5) business days of the Court's order; and

2)    Compelling Defendants to produce all documents concerning the research, development, implementation, manufacture, and sale of each allegedly non-royalty-bearing component of any of Defendants' siRNA products, including Dharmacon's methods of "desalting, deprotecting, duplexing and various types of purification" (and, specifically, including Option A4, B and C custom synthesis product lines, and customer synthesis orders), Dharmacon's SMARTselection and SMARTpooling techniques as well as other chemical modification of the siRNA "using Dharmacon technologies," and any products sold as "kits" in which the siRNA is bundled with ancillary products, including "other reagents or products,

usually obtained by Dharmacon from third parties, such as buffers, cell lines, transfection reagents, antibodies, and in some cases water." The documents about each of these services or products should include at least product proposals, notes, internal memoranda, lab notebooks, test results, evaluations and analyses, and progress reports concerning product development and manufacture; documents concerning prototypes of each product; and documents disclosing the cost of development and implementation of these products and services. These documents should be ordered produced within five (5) business days of the Court's order.

**III.    Dharmacon Has Wrongfully Withheld Discovery
         Related to How Dharmacon Markets and Sells Its Products.**

Relevant to the issue of whether these components of royalty-bearing siRNA products should be discounted as separate items from the Licensed Product is the manner in which Dharmacon markets and sells these products to its customers.

**A.    Dharmacon's Deficient Document Production**

Dharmacon has produced virtually no correspondence (either internal or between Dharmacon and outside entities or persons) showing how it markets and sells its siRNA products. These documents would reflect whether Dharmacon describes and sells the products as one unified product, or markets and sells the allegedly separate "services" or "bundled" products separately from the siRNA. Such documents would also reflect whether the customer approaches Dharmacon because of the siRNA they sell, or because of these other "services" or "bundled" products. These issues will be highly relevant to Dharmacon's claims that these components should be treated separately for royalties-calculation purposes.

Such correspondence (including electronic communications) would be responsive to at least MIT's Request Nos. 14 (promotion, marketing and sale of siRNA products or services) and 15 (communications with customers, dealers, etc.). In response to these requests, Defendants

once again stated "they have produced, or will produce, non-privileged documents in their possession, custody or control, if any, that are reasonably responsive to this request." (See Exs. 1, 4 and 5.) Thus, these documents should already have been produced.

This issue was first raised in MIT's counsel's September 13, 2005 letter. (See Ex. 6.) In the September 19 conversation that followed, Dharmacon's counsel asked that MIT's counsel limit the scope of the request to certain products. MIT's counsel provided such a limitation – to those products described by Dharmacon as covered by the License Agreement in its discovery responses – by email on September 20. (See Ex. 14.) MIT's counsel inquired again as to whether Dharmacon would produce the requested documents by letter on October 17, 2005. (See Ex. 15.) Dharmacon's counsel responded that this limitation was insufficient by email on October 17, 2005. (See Ex. 16.)

MIT's counsel then proposed an audit process, by email later that same day, whereby MIT would identify five customers to conduct an "audit" of the documents responsive to the request. (See id.) With the audit procedure, after receiving the initial set of documents, MIT could work to further narrow and specify its request by referencing the types of documents it was interested in, based on its review of the types of documents produced in this first production. MIT's counsel followed up on this proposed resolution by emails on October 18 and 20. (See Exs. 17 and 18.) In a conversation on October 21, Dharmacon's counsel stated that they would consider this idea, once they received the list of customers.

MIT's counsel provided the list of customers to Dharmacon's counsel by letter on October 25, 2005. (See Ex. 9.) On October 27, Dharmacon's counsel stated that the requests were still overly broad, even when limited to these five particular customers, but that Dharmacon was formulating a search query by which it hoped to turn up relevant documents for production

to MIT.  After that, MIT's counsel followed up by letter on November 10, inquiring as to the status of the audit procedure.  (See Ex. 12.)  In counsel's November 11 conversation, Dharmacon's counsel stated that Dharmacon had formulated a search that it hoped would turn up documents of the nature MIT is seeking.  However, counsel would not disclose the search terms used, or whether the search would produce any documents.  Because of the extended delay in responding to this concern, MIT raises this issue now.

Dharmacon has also failed to produce documents in response to Document Request No. 13, which calls for "[a]ll documents concerning any plans, commitments, projections or reports relating to Defendants' future production capacity for any siRNA products or services."  Certainly, the profitability of Dharmacon's siRNA products will be relevant to several issues at trial, including the value of the license to Dharmacon (and thus reasonableness of the royalty rate set forth in the License Agreement), and Dharmacon's motivation to change its method of royalties calculation based on where Dharmacon anticipates certain product lines developing in the future.  Again, in response to this request, Defendants stated that "they have produced, or will produce, non-privileged documents in their possession, custody or control, if any, that are reasonably responsive to this request."  (See Exs. 1, 4 and 5.)  Thus, these documents should already have been produced.

This issue was raised by November 10 letter, but Dharmacon's counsel was unable to respond in a November 11 conversation with MIT's counsel.  (See Ex. 12.)  Because of the tight deadlines the parties are facing, MIT raises this issue now.

## B.    Dharmacon's Deficient Interrogatory Response

Dharmacon's interrogatory responses concerning sales are also deficient.  MIT's Interrogatory No. 4 sought "the manufacturing cost per unit" of Dharmacon's siRNA products.

In response to this Interrogatory, Defendants stated that "they have produced, or will produce, sufficient documents from which information responsive to this interrogatory may be obtained." (See Exs. 1, 10 and 11.)  As discussed above, this broad reference to Dharmacon's entire document production does not supply the necessary specificity to fulfill Dharmacon's discovery obligations.  Furthermore, MIT's counsel is unable to identify any documents within Dharmacon's document productions which disclose this information.

This issue was raised in MIT's counsel's November 10 letter, and discussed on November 11, at which time Dharmacon's counsel was not prepared to respond to MIT's concern.  (See Ex. 12.)  Because of the tight deadlines the parties are facing, MIT raises this issue now.

**REQUEST FOR RELIEF:**  MIT respectfully requests that the Court issue an order:

1)      compelling Defendants to produce all documents, either kept internal or communicated with third parties such as dealers, distributors or customers, that reflect promotion, advertisement, demonstration, marketing or sale of any siRNA product or service within five (5) business days of the Court's order;

2)      compelling Defendants to produce documents reflecting any plans, commitments, projections or reports relating to Defendants' future production capacity for any siRNA products or services within five (5) business days of the Court's order; and

3)      compelling Defendants to provide a fulsome supplemental response to Interrogatory No. 4, stating the manufacturing cost per unit of Defendants' siRNA products within five (5) business days of the Court's order.

**IV.    Dharmacon's Delays In Scheduling**
**Depositions of Dharmacon Employees and Former Employees,**
**and Intent to Refuse MIT's Access to Inspect Dharmacon's Laboratory Facility.**

Since August 12, 2005, MIT's counsel have been attempting to work with Dharmacon's

counsel to arrange the depositions of the following three individuals:

1.    Dr. Steven Scaringe: Founder of Dharmacon; identified in Dharmacon's initial

disclosures as likely to have discoverable information concerning negotiation of the License

Agreement, Dharmacon's siRNA products, and Dharmacon's proprietary technology;

2.    Dr. William Marshall: Executive Vice President of Dharmacon; identified in

Dharmacon's initial disclosures as likely to have discoverable information concerning

negotiation of the License Agreement, Dharmacon's siRNA products, and Dharmacon's

proprietary technology; and

3.    Steven Fuhrman:  Dharmacon's Controller; identified in Dharmacon's initial

disclosures as likely to have discoverable information concerning Dharmacon's payment of

royalties under the License Agreement.

(See Ex. 19.)  Finally, after months, on October 21, 2005, Dharmacon's counsel provided dates,

agreeing that these three depositions could be held in Colorado on November 29 through

December 1.  Throughout that conversation, and other conversations over the past several

months, Dharmacon's counsel consistently stated that its firm, Dechert LLP, would represent Dr.

Scaringe for his deposition, even though he was no longer an employee of Dharmacon.

On October 26, 2005, MIT's counsel sent Dharmacon's counsel confirming deposition

notices for these three dates, asking (purely as a courtesy to Dharmacon) in the enclosure letter

accompanying those notices for the final order of these three witnesses during the three days of

depositions.  MIT's counsel also served a formal subpoena on Dr. Scaringe by hand.  (See Exs.

20-23.)  In an October 27, 2005 conversation, Dharmacon's counsel stated that he expected the

order to be Marshall, Scaringe, and then Fuhrman, but that he would confirm the order and let

MIT's counsel know.  MIT's counsel wrote to inquire as to the order of these witnesses again in

November 2 and November 7 letters, and a November 11 email.  (See Exs. 24-26.)

In a November 11 discussion, Dharmacon's counsel still refused to provide the order of these witnesses for these three depositions. More surprisingly, Dharmacon's counsel also stated that Dechert no longer represented Dr. Scaringe. In an email sent later that night, Dharmacon's counsel stated that they were checking with Dr. Marshall for his "availability" for depositions in November and December. (See Ex. 27.) Dr. Marshall had already been confirmed as attending the deposition, as noticed, on one of the three days from November 29 through December 1. As such, MIT now has serious concerns that its efforts to schedule these depositions with opposing counsel have been a wasted effort.

MIT also served a Rule 34 request for inspection of Dharmacon's facilities on October 26, seeking an inspection of Dharmacon's laboratory facility to see how Dharmacon makes the Licensed Products. (See Ex. 28.) Of particular interest to MIT's counsel is the opportunity to observe those processes for which Dharmacon claims it adds value to its siRNA products, such that a portion of the product price should not be royalty-bearing. It will be helpful in deposition questioning to have seen the facility, to understand the size and layout of the various functions, to see how the various components fit together to provide the "added services" that Dharmacon says it provides, and to understand the flow of the manufacturing and delivery processes. MIT's counsel explained to Dharmacon's counsel that MIT's counsel would work to make the inspection as efficient and non-intrusive as possible, and suggested that the inspection coincide with Dr. Marshall's deposition so that he could act as a tour guide around the facility.

Despite numerous efforts to work this out, Dharmacon's counsel has stated unequivocally, most recently in a November 11, 2005 conversation with MIT's counsel, that Dharmacon will not allow the inspection to go forward absent court order. As such, MIT seeks an order to expedite resolution of this issue.

Finally, MIT has noticed depositions of seven additional party witnesses. Specifically, on November 2, MIT noticed the depositions of Dharmacon employees who have been identified in Dharmacon's discovery responses or initial disclosures as having relevant, discoverable information: John Adair, Michael Deines, Stephanie Hartsell, Kim Nichols, and Timothy Hoogheem; on November 3, MIT noticed a 30(b)(6) deposition of Dharmacon; and on November 7, MIT noticed the deposition of Anastasia Khvorora, an employee who Dharmacon has identified as potentially providing technical testimony at trial. (See Exs. 29-35.) To date, Dharmacon has neither identified dates of availability for these witnesses, nor identified individual designees for 30(b)(6) purposes. Because time is running short, MIT needs the Court's assistance in moving these depositions to conclusion.

**REQUEST FOR RELIEF:** MIT respectfully requests that this Court issue an order:

1) compelling Dr. Marshall and Mr. Fuhrman to appear for their depositions as noticed between November 29 and December 1;

2) compelling Dharmacon to permit MIT's counsel to inspect Dharmacon's laboratory facilities in which Defendants' make their siRNA products, coincident with Dr. Marshall's deposition; and

3) compelling Dharmacon's counsel to provide in good faith dates of availability for each deponent within five (5) business days of the Court's order relating to the depositions of Adair, Deines, Hartsell, Nichols, Hoogheem, Khvorora, and identification and scheduling of depositions of Dharmacon's 30(b)(6) witnesses.

## Certification of Counsel

The undersigned counsel certifies, pursuant to Local Rule 7.1(A), that MIT's counsel has conferred with Defendants' counsel and has attempted in good faith to resolve or narrow the issues presented by this motion.  Most recently, a conference was held from 2:00 to 3:45 p.m. on Friday, November 11, 2005, between MIT's counsel and Defendants' counsel.  The issues on which agreement could not be reached are raised in this motion.

November 15, 2005                                  Respectfully Submitted,


                                                  Massachusetts Institute of Technology
                                                  By its Attorneys,

                                                  /s/ Steven M. Bauer
                                                  Steven M. Bauer (BBO# 542531)
                                                  David J. Cerveny (BBO# 638307)
                                                  Kimberly A. Mottley (BBO# 651190)
                                                  PROSKAUER ROSE LLP
                                                  One International Place – 22nd Floor
                                                  Boston, Massachusetts 02110-2600
                                                  Phone:  617-526-9600
                                                  Fax:     617-526-9899

## EXHIBIT 1

*(This document contains the full text of the discovery requests, and responses thereto, at issue in MIT's Motion to Compel. MIT's document requests, and Defendants' responses thereto, are also attached as Exs. 4 and 5; MIT's interrogatories, and Defendants' responses thereto, are also attached as Exs. 10 and 11 (redacted for confidentiality).)*

## Document Requests

REQUEST NO. 1:

All documents and things concerning the License Agreement, including but not limited to documents concerning:

      a)      the negotiation of the License Agreement (including, but not limited to, drafts of the License Agreement);

      b)      interpretation of the terms of the License Agreement (including, but not limited to, any documents concerning interpretation of paragraph 1.4 of the License Agreement), and / or

      c)      performance under the License Agreement.

RESPONSE TO REQUEST NO. 1:

Defendants object to this request based on general objections 1 through 6, supra. Subject to and without waiving the foregoing objections, Defendants state that they have produced, or will produce, non-privileged documents in their possession, custody or control, if any, that are reasonably responsive to this request, subject to entry of an appropriate protective order in this case.

REQUEST NO. 2:

All documents and things concerning Dharmacon's payment of royalties under the License Agreement.

RESPONSE TO REQUEST NO. 2:

Defendants object to this request based on general objections 1 through 6, supra. Subject to and without waiving the foregoing objections, Defendants state that they have produced, or will produce, non-privileged documents in their possession, custody or control, if any, that are reasonably responsive to this request, subject to entry of an appropriate protective order in this case.

REQUEST NO. 10:

All documents and things concerning the design, development, manufacture, marketing, sale or offer for sale of any siRNA products or services or any reverse transfection products or services used, manufactured or sold by Defendants, including but not limited to: all laboratory notebooks, test results, reports, memoranda, evaluations, analysis, any prototype, precursor, or experimental versions of such products.

RESPONSE TO REQUEST NO. 10:

Defendants object to this request based on general objections 1 through 6, supra. Defendants further object to the extent this request seeks documents that are beyond any scope of relevance in this matter. Subject to and without waiving the foregoing objections, Defendants state that they have produced, or will produce, non-privileged documents in their possession, custody or control, if any, that are reasonably responsive to this request, subject to entry of an appropriate protective order in this case.

REQUEST NO. 13:

All documents concerning any plans, commitments, projections or reports relating to Defendants' future production capacity for any siRNA products or services or reverse transfection products or services.

RESPONSE TO REQUEST NO. 13:

Defendants object to this request based on general objections 1 through 6, supra. Subject to and without waiving the foregoing objections, Defendants state that they have produced, or will produce, non-privileged documents in their possession, custody or control, if any, that are reasonably responsive to this request, subject to entry of an appropriate protective order in this case.

REQUEST NO. 14:

All documents concerning the promotion, advertisement, demonstration, marketing and sale of any siRNA products or services or reverse transfection products or services used, manufactured or sold by Defendants, including, but not limited to: all advertising, press releases, product announcements, bulletins, solicitations, articles, speech or lecture texts, sales presentations, PowerPoint presentations, product brochures, memoranda, and catalogs.

RESPONSE TO REQUEST NO. 14:

Defendants object to this request based on general objections 1 through 6, supra. Subject to and without waiving the foregoing objections, Defendants state that they have produced, or will produce, non-privileged documents in their possession, custody or control, if any, that are reasonably responsive to this request, subject to entry of an appropriate protective order in this case.

REQUEST NO. 15:

All documents concerning any communication with, or relating to, any agent, dealer, wholesaler, distributor, customer, or potential customer of any siRNA products or services, or reverse transfection products or services, in the United States, or any other person, concerning transfers or projected transfers of such products in the United States, including without limitation, costs and sales, and anticipated or actual sales.

RESPONSE TO REQUEST NO. 15:

Defendants object to this request based on general objections 1 through 6, supra. Defendants further object on the grounds that the words "or any other person" make this request hopelessly overbroad, and that the words "transfers or projected transfers" and use of the term "costs" are vague and ambiguous. Subject to and without waiving the foregoing objections, Defendants state that they have produced, or will produce, non-privileged documents in their possession, custody or control, if any, that are reasonably responsive to this request, subject to entry of an appropriate protective order in this case.

REQUEST NO: 18:

All documents concerning communications, whether to or from suppliers or customers or any other persons, that relate to MIT or the subject matter of the '790 Patent, the Tuschl Applications, or the License Agreement.

RESPONSE TO REQUEST NO. 18:

Defendants object to this request based on general objections 1 through 6, supra. Subject to and without waiving the foregoing objections, Defendants state that they have produced, or will produce, non-privileged documents in their possession, custody or control, if any, that are

reasonably responsive to this request, subject to entry of an appropriate protective order in this case.

REQUEST NO. 26:

All documents and things identified, relied upon, or referred to in response to MIT's First Set of Interrogatories.

RESPONSE TO REQUEST NO. 26:

Defendants object to this request based on general objections 1 through 6, supra.  Subject to and without waiving the foregoing objections, Defendants state that they have produced, or will produce, non-privileged documents in their possession, custody or control, if any, that are reasonably responsive to this request, subject to entry of an appropriate protective order in this case.

**Interrogatories**

Interrogatory No. 3:

For each product or service identified in Interrogatory No. 1:

> a)      separately identify all customers, purchasers, consumers and/or distributors;
>
> b)      state the price per unit, lease terms, annual and monthly sales revenue, sales volume, net and gross profits, including the method for calculating each of the foregoing; and
>
> (c)      state the royalties paid to MIT on sales of each product or service, including the methodology for calculating such royalties.

Response to Interrogatory No. 3:

Defendants object to this interrogatory based on general objections 1 through 8, supra. Notwithstanding, and subject to, these objections, based on Defendants' current state of knowledge, Defendants state that pursuant to Fed. R. Civ. P. 33(c), they have produced, or will

produce, sufficient documents from which information responsive to this interrogatory may be obtained, subject to entry of an appropriate protective order.

Interrogatory No. 4:

For each product or service identified in Interrogatory No. 1, state the manufacturing cost per unit, separately identifying fixed and variable costs and the methodology for calculating the foregoing.

Response to Interrogatory No. 4:

Defendants object to this interrogatory based on general objections 1 though 8, supra. Notwithstanding, and subject to, these objections, based on Defendants' current state of knowledge, Defendants state that pursuant to Fed. R. Civ. P. 33(c), they have produced, or will produce, sufficient documents from which information responsive to this interrogatory may be obtained, subject to entry of an appropriate protective order.



**Ver. 5/8/00**

Last Modified:  12/14/01
TLO:  IA/GB/TRI



## MASSACHUSETTS INSTITUTE OF TECHNOLOGY

*and*

## DHARMACON RESEARCH, INC.

## siRNA DISTRIBUTOR LICENSE AGREEMENT

## TABLE OF CONTENTS

R E C I T A L S ..............................................................................................................1

1. Definitions..............................................................................................................2

2. Grant of Rights.......................................................................................................6

3. COMPANY Diligence Obligations. ......................................................................7

4. Royalties and Payment Terms. .............................................................................8

5. Reports and Records. ...........................................................................................10

6. Patent Prosecution................................................................................................12

7. Infringement..........................................................................................................13

8. Indemnification and Insurance............................................................................13

9. No Representations or Warranties. .....................................................................15

10. Assignment. .........................................................................................................15

11. General Compliance with Laws...........................................................................16

12. Termination...........................................................................................................17

13. Dispute Resolution...............................................................................................18

14. Miscellaneous. .....................................................................................................19

APPENDIX A .............................................................................................................22

APPENDIX B ..............................................................................................................23

Ver. 5/8/00

## MASSACHUSETTS INSTITUTE OF TECHNOLOGY
## CO-EXCLUSIVE PATENT LICENSE AGREEMENT

This Agreement, effective as of the date set forth above the signatures of the parties below (the "EFFECTIVE DATE"), is between the Massachusetts Institute of Technology ("M.I.T."), a Massachusetts corporation, with a principal office at 77 Massachusetts Avenue, Cambridge, MA  02139-4307 and Dharmacon Research, Inc. ("COMPANY"), a corporation, with a principal place of business at 1376 Miners Drive, Lafayette, Colorado 80026.

### R E C I T A L S

WHEREAS, M.I.T. Whitehead Institute for Biomedical Research ("WHITEHEAD"), Max Planck Gesellschaft zur Foerderung der Wissenschaften e.V. ("MAX PLANCK") and University of Massachusetts ("UMASS") are joint owners of certain JOINT PATENT RIGHTS (as later defined herein) relating to M.I.T. Case No. 8768W (WHITEHEAD Case No. WI00-06, MAX PLANCK Case No. GI 2716 KTM and UMASS Case No. 01-36) "RNA Sequence-Specific Mediators of RNA Interference", by David P. Bartel, Phillip A. Sharp, Thomas Tuschl, and Phillip D. Zamore and has the right to grant licenses under said JOINT PATENT RIGHTS, subject only to a royalty-free, nonexclusive non-transferable license to practice the JOINT PATENT RIGHTS granted to the United States Government for government purposes;

WHEREAS, MAX PLANCK has authorized GARCHING INNOVATION GMBH ("GI") to act as its agent for the purposes of licensing its ownership position of JOINT PATENT RIGHTS and has authorized M.I.T. to enter into this Patent License Agreement on its behalf;

WHEREAS, WHITEHEAD, MAX PLANCK, GI and UMASS have authorized M.I.T. to act as their exclusive agent for the purposes of licensing the JOINT PATENT RIGHTS and have authorized M.I.T. to enter into this Patent License Agreement on their behalf;

WHEREAS MAX PLANCK is the owner of certain MAX PLANCK PATENT RIGHTS (as later defined herein) relating to MAX PLANCK Case No. GI 2716 KTM "RNA Interference Mediating Small RNA Molecules," by Thomas Tuschl, Sayda Elbashir and Winfried Lendeckel, has the right to grant licenses under said MAX PLANCK PATENT RIGHTS; whereas MAX PLANCK's and their agent, GI, has authorized M.I.T. to act as its exclusive agent for the



purposes of licensing the MAX PLANCK PATENT RIGHTS and has authorized M.I.T. to enter into this Patent License Agreement on its behalf;

WHEREAS, M.I.T. desires to have PATENT RIGHTS developed and commercialized to benefit the public and is willing to grant a license thereunder;

WHEREAS, COMPANY has represented to M.I.T., to induce M.I.T. to enter into this Agreement, that COMPANY shall commit itself to a thorough, vigorous and diligent program of exploiting the PATENT RIGHTS so that public utilization shall result therefrom; and

WHEREAS, COMPANY desires to obtain a license under PATENT RIGHTS upon the terms and conditions hereinafter set forth.

NOW, THEREFORE, M.I.T. and COMPANY hereby agree as follows:

## 1. DEFINITIONS.

1.1 "<u>AFFILIATE</u>" shall mean any legal entity (such as a corporation, partnership, or limited liability company) that controls or is controlled by COMPANY. For the purposes of this definition, the term "control" means (i) beneficial ownership of at least fifty percent (50%) of the voting securities of a corporation or other business organization with voting securities or (ii) a fifty percent (50%) or greater interest in the net assets or profits of a partnership or other business organization without voting securities.

1.2 "<u>FIELD</u>" shall mean commercial sale or use of the LICENSED PRODUCT as a research reagent, including in a kit format, for research or educational purposes, specifically excluding, but not limited to, the following: (1) any uses in humans; and (2) any clinical diagnostic uses.

1.3 "<u>IDENTIFIED PRODUCT</u>" shall mean any product or derivative thereof, sold, used, manufactured or distributed, which product or derivative elicits a positive response in assays covered by PATENT RIGHTS and which product or derivative was identified, selected, or determined to have utility in whole or in part, through the use of LICENSED PRODUCTS or LICENSED PROCESSES.

1.4 "<u>LICENSED PRODUCT</u>" shall mean:

      (i)    absent the license granted hereunder, would infringe one or



claims of the PATENT RIGHTS; or

   (ii)   is manufactured by using a LICENSED PROCESS or that, when used, practices a LICENSED PROCESS; or

   (iii)   is an RNA product of 19-23 mers.

1.5 "LICENSED PROCESS" shall mean any process that, absent the license granted hereunder, would infringe one or more claims of the PATENT RIGHTS or which uses a LICENSED PRODUCT.

1.6 "MARKET PARTNER" shall mean any third party who sells IDENTIFIED PRODUCTS under an agreement with COMPANY. This excludes AFFILIATES.

1.7 "NET SALES" shall mean the gross amount billed by COMPANY and its AFFILIATES for LICENSED PRODUCTS, LICENSED PROCESSES and IDENTIFIED PRODUCTS, less the following:

   (i)   customary trade, quantity, or cash discounts to the extent actually allowed and taken;

   (ii)   amounts repaid or credited by reason of rejection or return;

   (iii)   to the extent separately stated on purchase orders, invoices, or other documents of sale, any taxes or other governmental charges levied on the production, sale, transportation, delivery, or use of a LICENSED PRODUCT, LICENSED PROCESS or IDENTIFIED PRODUCT which is paid by or on behalf of COMPANY; and

   (iv)   outbound transportation costs prepaid or allowed and costs of insurance in transit.

   (v)   amounts attributed to bad debt, not exceeding one percent (1%) of the gross amount billed by COMPANY and its AFFILIATES for LICENSED PRODUCTS, LICENSED PROCESSES and IDENTIFIED PRODUCTS.

   (vi)   An allowance for sales of 19-23 mers which are not used for siRNA, not to exceed three percent (3.0%); provided that this provision is not intended by COMPANY to constitute an admission regarding the maximum percentage of sales that may in fact be non-siRNA.

No deductions shall be made for commissions paid to individuals whether they be with independent sales agencies or regularly employed by COMPANY or its AFFILIATES or its MARKET PARTNERS and on their respective payrolls, or for cost of collections. NET SALES shall occur on the date of billing for a LICENSED PRODUCT, LICENSED PROCESS or IDENTIFIED PRODUCT. If a LICENSED PRODUCT, LICENSED PROCESS or

3



IDENTIFIED PRODUCT is distributed at a discounted price that is substantially lower than the customary price charged by COMPANY or its AFFILIATES or its MARKET PARTNERS, or distributed for non-cash consideration (whether or not at a discount), NET SALES shall be calculated based on the non-discounted amount of the LICENSED PRODUCT, LICENSED PROCESS or IDENTIFIED PRODUCT charged to an independent third party during the same REPORTING PERIOD or, in the absence of such sales, on the fair market value of the LICENSED PRODUCT, LICENSED PROCESS or IDENTIFIED PRODUCT

Non-monetary consideration shall <u>not</u> be accepted by COMPANY or any AFFILIATE or any MARKET PARTNER for any LICENSED PRODUCT, LICENSED PROCESS or IDENTIFIED PRODUCT without the prior written consent of M.I.T.

1.8 "<u>OTHER INCOME</u>" shall mean any payments that COMPANY or an AFFILIATE receives in consideration for LICENSED PRODUCTS, LICENSED PROCESSES, and IDENTIFIED PRODUCTS including without limitation, milestone payments, fees, and other payments, but specifically excluding NET SALES , and specifically excluding income received on sales of IDENTIFIED PRODUCTS when such IDENTIFIED PRODUCTS were discovered by COMPANY or its AFFILIATES.

1.9 "<u>OWNERS</u>" shall mean M.I.T., WHITEHEAD, UMASS and MAX PLANCK collectively.

1.10 "<u>JOINT PATENT RIGHTS</u>" shall mean:

    (a)    the United States and international patent and provisional applications listed on <u>Appendix A</u> and the resulting patents.

    (b)    any patent applications resulting from the provisional applications listed on <u>Appendix A</u>, and any divisionals, continuations, continuation-in-part applications, and continued prosecution applications (and their relevant international equivalents) of the patent applications listed on <u>Appendix A</u> and of such patent applications that result from the provisional applications listed on <u>Appendix A</u>, to the extent the claims are directed to subject matter specifically described in the provisional applications, and patent applications listed on <u>Appendix A</u>, and the resulting patents;

    (c)    any patents resulting from reissues, reexaminations, or extensions (and their relevant international equivalents) of the patents described in (a) and (b) above; and

    (d)    international (non-United States) patent applications and provisional applications filed after the EFFECTIVE DATE and the relevant international equivalents to divisionals, continuations, continuation-in-part applications and continued prosecution

4

 

applications of the patent applications to the extent the claims are directed to subject matter specifically described in the patents or patent applications referred to in (a), (b), and (c) above, and the resulting patents.

    1.11  "<u>MAX PLANCK PATENT RIGHTS</u>" shall mean:

        (a)    the United States and international patent and provisional applications listed on <u>Appendix B</u> and the resulting patents.

        (b)    any patent applications resulting from the provisional applications listed on <u>Appendix B</u>, and any divisionals, continuations, continuation-in-part applications, and continued prosecution applications (and their relevant international equivalents) of the patent applications listed on <u>Appendix B</u>, and of such patent applications that result from the provisional applications listed on <u>Appendix B</u>, to the extent the claims are directed to subject matter specifically described in the patent applications listed on <u>Appendix B</u>, and the resulting patents;

        (c)    any patents resulting from reissues, reexaminations, or extensions (and their relevant international equivalents) of the patents described in (a) and (b) above; and

        (d)    international (non-United States) patent applications and provisional applications filed after the EFFECTIVE DATE and the relevant international equivalents to divisionals, continuations, continuation-in-part applications and continued prosecution applications of the patent applications to the extent the claims are directed to subject matter specifically described in the patents or patent applications referred to in (a), (b), and (c) above, and the resulting patents.

    1.12  "<u>PATENT RIGHTS</u>" shall mean the JOINT PATENT RIGHTS and MAX PLANCK PATENT RIGHTS together.

    1.13  "<u>REPORTING PERIOD</u>" shall begin on the first day of each calendar quarter and end on the last day of such calendar quarter.

    1.14  "<u>TERM</u>" shall mean the term of this Agreement, which shall commence on the EFFECTIVE DATE and shall remain in effect until the expiration or abandonment of all issued patents and filed patent applications within the PATENT RIGHTS, unless earlier terminated in accordance with the provisions of this Agreement.

    1.15  "<u>TERRITORY</u>" shall mean world-wide.

## 2. GRANT OF RIGHTS.

2.1 <u>License Grants</u>. Subject to the terms of this Agreement, M.I.T. hereby grants to COMPANY and its AFFILIATES for the TERM a royalty-bearing nonexclusive license under the PATENT RIGHTS to develop, make, have made, use, sell, offer to sell, lease, and import LICENSED PRODUCTS in the FIELD in the TERRITORY and to develop and perform LICENSED PROCESSES in the FIELD in the TERRITORY. Neither COMPANY nor its AFFILIATES shall have the right to enter into sublicensing agreements.

2.2 <u>Co-Exclusivity</u>. In order to establish a co-exclusive period for COMPANY, M.I.T. agrees that it shall not grant more than a total of four licenses to sell and import LICENSED PRODUCTS in the FIELD in the TERRITORY or to perform LICENSED PROCESSES in the FIELD in the TERRITORY during the period of time commencing on the EFFECTIVE DATE and terminating with the last to expire of the PATENT RIGHTS.

2.3 <u>Retained Rights</u>.

(a)    <u>Owners</u>. Owners retain the right to practice under the PATENT RIGHTS for research, teaching, and educational purposes.

(b)    <u>Federal Government</u>. COMPANY acknowledges that the U.S. federal government retains a royalty-free, non-exclusive, non-transferable license to practice any government-funded invention claimed in any JOINT PATENT RIGHTS as set forth in 35 U.S.C. §§ 201-211, and the regulations promulgated thereunder, as amended, or any successor statutes or regulations.

2.4 <u>Most Favored Licensee</u>. If M.I.T. has previously granted, or hereafter grants a commercial license to a third party under the PATENT RIGHTS in the FIELD under substantially more favorable terms as a whole than those in this Agreement, COMPANY may elect to terminate this Agreement and enter into a new license agreement under the same terms and conditions, as a whole, as such third party license agreement. Whether the terms of the Agreement with a third party are substantially more favorable or not shall be judged solely by COMPANY. This provision shall not apply to forgiveness for past infringements to reach settlement of a lawsuit or genuine dispute between M.I.T. and a third party with respect to any PATENT RIGHTS. This provision also shall not apply with respect to any license granted to any non-profit, university or governmental agency.

COMPANY agrees and acknowledges that M.I.T. shall provide a copy of this license



agreement in its entirety to any non-exclusive licensee of the PATENT RIGHTS upon request of such licensee in the FIELD. M.I.T. shall provide a copy of commercial licenses granted to third parties under the PATENT RIGHTS in the FIELD to COMPANY upon the request of COMPANY.

2.5  Disclosure of Other License Holders. Upon COMPANY's written request, and not more frequently than once every six (6) months, M.I.T. will provide COMPANY with a report on licensees who have been granted rights to use the LICENSED PRODUCTS or LICENSED PROCESSES for internal purposes only. This report will include the number of such licensees, and their size (based on number of employees). COMPANY will keep this information confidential.

2.6  No Additional Rights. Nothing in this Agreement shall be construed to confer any rights upon COMPANY by implication, estoppel, or otherwise as to any technology or patent rights of M.I.T. or any other entity other than the PATENT RIGHTS, regardless of whether such technology or patent rights shall be dominant or subordinate to any PATENT RIGHTS

## 3. COMPANY DILIGENCE OBLIGATIONS.

3.1  Diligence Requirements. COMPANY shall use diligent efforts and shall cause its AFFILIATES to use diligent efforts, to develop LICENSED PRODUCTS or LICENSED PROCESSES and to introduce LICENSED PRODUCTS or LICENSED PROCESSES into the commercial market; thereafter, COMPANY or its AFFILIATES shall make LICENSED PRODUCTS or LICENSED PROCESSES reasonably available to the public without significant delay. Specifically, COMPANY or AFFILIATE shall fulfill the following obligations:

(a)     Within sixty (60) days after the end of each calendar year, COMPANY shall furnish M.I.T. with a written report (consistent with Section 5.1(a)) on the progress of its efforts during the immediately preceding calendar year to develop and commercialize LICENSED PRODUCTS or LICENSED PROCESSES.

(b)     COMPANY shall make a first commercial sale of a LICENSED PRODUCT within two (2) years of the EFFECTIVE DATE.

(c)     All LICENSED PRODUCTS shall meet the following quality standards within thirty (30) days of the first commercial sale:

Seventy Percent (70%) of the RNA in each sample sold shall be of the specific length ordered, and of the correct sequence. If multiple RNA oligonucleotides are included in the sample, all RNAs must meet this standard.



Any time after first commercial sale, M.I.T. and OWNERS reserve the right to test LICENSED PRODUCTS at random intervals to assure that quality standards have been maintained. Such testing shall be at OWNERS and Inventors expense.

(d)    COMPANY shall make NET SALES to unaffiliated third parties according to the following schedule:

First Full Calendar Year after          $250,000 (Two Hundred and Fifty Thousand);
First Commercial Sale

Second Full Calendar Year after        $500,000 (Five Hundred Thousand);
First Commercial Sale

Third Full Calendar Year after         $1,000,000 (One Million).
First Commercial Sale and each year
Thereafter.

(e)    COMPANY will make LICENSED PRODUCTS available for use by non-profit research institutions without reach-through rights to discoveries made through use of the LICENSED PRODUCTS.

In the event that M.I.T. determines that COMPANY (or an AFFILIATE) has failed to fulfill any of its obligations under this Section 3.1, then M.I.T. may treat such failure as a material breach in accordance with Section 12.3(b).

## 4. ROYALTIES AND PAYMENT TERMS.

4.1 Consideration for Grant of Rights.

(a)    Patent Cost Reimbursement. COMPANY shall reimburse M.I.T. on the EFFECTIVE DATE, in accordance with Section 6.2, for its actual expenses incurred as of the EFFECTIVE DATE in connection with obtaining the PATENT RIGHTS. This payment is nonrefundable.

(b)    License Maintenance Fees. COMPANY shall pay to M.I.T. the following license maintenance fees on the dates set forth below:

January 1, 2002          Twenty-five Thousand dollars ($25,000)

8





January 1, 2003          Fifty Thousand dollars ($50,000)
and each January 1 of every year thereafter
                        One Hundred Thousand dollars ($100,000)

This annual license maintenance fee is nonrefundable; however, the license maintenance fee shall be credited to running royalties subsequently due on NET SALES earned during the same calendar year, if any. License maintenance fees paid in excess of running royalties due in such calendar year shall not be creditable to amounts due for future years.

(c)    Running Royalties. COMPANY shall pay to M.I.T. a running royalty of seven percent (7%) of NET SALES by COMPANY and AFFILIATES. Running royalties shall be payable for each REPORTING PERIOD and shall be due to M.I.T. within sixty (60) days of the end of each REPORTING PERIOD. The royalty hereunder shall be due on all NET SALES made after December 9, 2001; provided, that royalties for NET SALES during 2001 shall be due at the same time as royalties for the first REPORTING PERIOD of 2002.

(d)    Running Royalties on Internal Use. If Company uses LICENSED PRODUCTS internally, whether for its own behalf, or that of an AFFILIATE or third party ("INTERNAL USE"), a royalty shall be paid on such INTERNAL USE, calculated by treating the amount of LICENSED PRODUCTS used in such INTERNAL USE as NET SALES, and assuming a price for the LICENSED PRODUCTS equal to the non-discounted price for LICENSED PRODUCTS of the same type customarily charged by COMPANY to an independent third party during the same REPORTING PERIOD or, in the absence of such sales, a price equal to the fair market value of the LICENSED PRODUCTS.

(e)    OTHER INCOME. COMPANY shall pay M.I.T. a total of ten percent (10%) of all OTHER INCOME received by COMPANY or AFFILIATES. Such amount shall be payable for each REPORTING PERIOD and shall be due to M.I.T. within sixty (60) days of the end of each REPORTING PERIOD. This royalty obligation shall survive termination of this AGREEMENT and shall remain in effect so long as COMPANY receives OTHER INCOME.

(f)    No Multiple Royalties. If the manufacture, use, lease, or sale of any LICENSED PRODUCT or the performance of any LICENSED PROCESS is covered by more than one of the PATENT RIGHTS, multiple royalties shall not be due.

4.2  Payments.

(a)    Method of Payment. All payments under this Agreement should be made payable to "Massachusetts Institute of Technology" and sent to the address identified in

9




Section 14.1. Each payment should reference this Agreement and identify the obligation under this Agreement that the payment satisfies.

     (b)    <u>Payments in U.S. Dollars</u>. All payments due under this Agreement shall be drawn on a United States bank and shall be payable in United States dollars. Conversion of foreign currency to U.S..dollars shall be made at the conversion rate existing in the United States (as reported in the <u>Wall Street Journal</u>) on the last working day of the calendar quarter of the applicable REPORTING PERIOD, Such payments shall be without deduction of exchange, collection, or other charges, and, specifically, without deduction of withholding or similar taxes or other government imposed fees or taxes, except as permitted in the definition of NET SALES.

     (c)    <u>Late Payments</u>. Any payments by COMPANY that are not paid on or before the date such payments are due under this Agreement shall bear interest, to the extent permitted by law, at two percentage points above the Prime Rate of interest as reported in the <u>Wall Street Journal</u> on the date payment is due.

<u>5. REPORTS AND RECORDS.</u>

   5.1 <u>Frequency of Reports</u>.

     (a)    <u>Before First Commercial Sale</u>. Prior to the first commercial sale of any LICENSED PRODUCT or IDENTIFIED PRODUCT or first commercial performance of any LICENSED PROCESS, COMPANY shall deliver reports to M.I.T. annually, within sixty (60) days of the end of each calendar year, containing information concerning the immediately preceding calendar year, as further described in Section 5.2.

     (b)    <u>Upon First Commercial Sale of a LICENSED PRODUCT or IDENTIFIED PRODUCT or Commercial Performance of a LICENSED PROCESS</u>. COMPANY shall report to M.I.T. the date of first commercial sale of a LICENSED PRODUCT and the date of first commercial performance of a LICENSED PROCESS within sixty (60) days of occurrence in each country.

     (c)    <u>After First Commercial Sale</u>. After the first commercial sale of a LICENSED PRODUCT or IDENTIFIED PRODUCT or first commercial performance of a LICENSED PROCESS, COMPANY shall deliver reports to M.I.T. within sixty (60) days of the end of each REPORTING PERIOD, containing information concerning the immediately preceding REPORTING PERIOD, as further described in Section 5.2.

   5.2 <u>Content of Reports and Payments</u>. Each report delivered by COMPANY to M.I.T.



shall contain at least the following information for the immediately preceding REPORTING PERIOD:

      (i)     the number of LICENSED PRODUCTS or IDENTIFIED PRODUCTS sold by COMPANY, AFFILIATES and their MARKET PARTNERS to independent third parties in each country, and, if applicable, the number of LICENSED PRODUCTS or IDENTIFIED PRODUCTS used by COMPANY and its AFFILIATES in the provision of services in each country;

      (ii)    a description of LICENSED PROCESSES performed by COMPANY and its AFFILIATES in each country as may be pertinent to a royalty accounting hereunder;

      (iii)   the gross price charged by COMPANY, AFFILIATES and their MARKET PARTNERS for each LICENSED PRODUCT or IDENTIFIED PRODUCTS and, if applicable, the gross price charged for each LICENSED PRODUCT or IDENTIFIED PRODUCT used to provide services in each country; and the gross price charged for each LICENSED PROCESS performed by COMPANY and its AFFILIATES in each country;

      (iv)   calculation of NET SALES for the applicable REPORTING PERIOD in each country, including a list of applicable deductions, including an explanation of credits taken for sales of 19-23 mers which are not used for siRNA purposes; and

      (v)    total royalty payable on NET SALES in U.S. dollars, together with the exchange rates used for conversion.

If no amounts are due to M.I.T. for any REPORTING PERIOD, the report shall so state.

5.3  Financial Statements.  On or before the ninetieth (90th) day following the close of COMPANY's fiscal year, COMPANY shall provide M.I.T. with COMPANY's financial statements for the preceding fiscal year including, at a minimum, a balance sheet and an income statement, certified by COMPANY's treasurer or chief financial officer or by an independent auditor. These reports shall be kept confidential by M.I.T.

5.4  Records.  COMPANY shall maintain, and shall cause its AFFILIATES to maintain, complete and accurate records relating to the rights and obligations under this Agreement and any amounts payable to M.I.T. in relation to this Agreement, which records shall contain sufficient information to permit M.I.T. to confirm the accuracy of any reports delivered to M.I.T. and compliance in other respects with this Agreement. The relevant party shall retain such records for at least five (5) years following the end of the calendar year to which they pertain,



during which time M.I.T., or M.I.T.'s appointed agents, upon reasonable notice to company shall have the right, at M.I.T.'s expense, to inspect such records during normal business hours to verify any reports and payments made or compliance in other respects under this Agreement. In the event that any audit performed under this Section reveals an underpayment in excess of five percent (5%), COMPANY shall bear the full cost of such audit and shall remit any amounts due to M.I.T. within thirty (30) days of receiving notice thereof from M.I.T.

## 6. PATENT PROSECUTION.

6.1 Responsibility for PATENT RIGHTS  Whitehead Institute shall, in their sole discretion, apply for, seek issuance of, maintain, or abandon the JOINT PATENT RIGHTS during the term of this Agreement. Max Planck Gesellschaft shall, in their discretion, apply for, seek issuance of, maintain, or abandon the MAX PLANCK PATENT RIGHTS during the term of this Agreement. Upon request, M.I.T. will inform COMPANY of abandonment of any PATENT RIGHTS.

6.2 Payment of Expenses.  Payment of all fees and costs, including attorneys fees, relating to the filing, prosecution and maintenance of the PATENT RIGHTS shall be the responsibility of COMPANY and other siRNA distributor licensees of the PATENT RIGHTS. COMPANY shall be responsible for twenty five percent (25%) of all such patent related costs, whether such amounts were incurred before or after the EFFECTIVE DATE. COMPANY shall reimburse M.I.T. for all amounts due pursuant to this Section within thirty (30) days of invoicing; late payments shall accrue interest pursuant to Section 4.2(c). In all instances, Whitehead Institute and Max Planck Gesellschaft shall pay the fees prescribed for large entities to the United States Patent and Trademark Office. Should the PATENT RIGHTS be licensed in the therapeutic field of use, COMPANY'S responsibility to pay fees and costs hereunder shall be reduced by one-half, to 12.5%, for all fees and costs incurred during the period in which any therapeutic license is in effect. Furthermore, COMPANY may elect not to pay such costs for territories other than the United States, EPC territory countries or Japan only if COMPANY gives written notice to M.I.T. that it wishes to exclude such territories from the scope of its license within sixty (60) days of notification from M.I.T. that it intends to seek patent protection in such territories.

12

## 7. INFRINGEMENT.

7.1 <u>Notification of Infringement</u>. COMPANY shall inform M.I.T. promptly in writing of any alleged infringement of the PATENT RIGHTS by a third party and of any available evidence thereof. Upon reasonable request, M.I.T. will inform COMPANY of any alleged infringement of the PATENT RIGHTS and of any actions the OWNERS have taken against such alleged infringements to the extent that M.I.T. becomes aware of such actions.

7.2 <u>Right to Prosecute</u>. The OWNERS shall have the right, but shall not be obligated, to prosecute at their own expense all infringements of the PATENT RIGHTS and, in furtherance of such right, COMPANY hereby agrees that the OWNERS may include COMPANY as a party plaintiff in any such suit, without expense to COMPANY. The total cost of any such infringement action commenced or defended solely by the OWNERS shall be borne by the OWNERS, and the OWNERS shall keep any recovery or damages derived therefrom, whether compensatory for past infringement or punitive.

7.3 <u>Cooperation</u>. In any infringement suit which any or all of the OWNERS may institute to enforce the PATENT RIGHTS pursuant to this Agreement, COMPANY shall, at the OWNERS' expense, cooperate in all respects and, to the extent possible, have its employees testify when requested and make available relevant records, papers, information, samples, specimens, and the like.

## 8. INDEMNIFICATION AND INSURANCE.

8.1 <u>Indemnification</u>.

(a)    <u>Indemnity</u>. COMPANY shall indemnify, defend, and hold harmless the OWNERS and their trustees, officers, faculty, students, employees, and agents and their respective successors, heirs and assigns (the "Indemnitees"), against any liability, damage, loss, or expense (including reasonable attorneys fees and expenses) incurred by or imposed upon any of the Indemnitees in connection with any claims, suits, actions, demands or judgments arising out of any theory of liability (including without limitation actions in the form of tort, warranty, or strict liability and regardless of whether such action has any factual basis) concerning any product, process, or service that is made, used, sold, imported, or performed pursuant to any right or license granted under this Agreement.



(b)   Procedures. The Indemnitees agree to provide COMPANY with prompt written notice of any claim, suit, action, demand, or judgment for which indemnification is sought under this Agreement. COMPANY agrees, at its own expense, to provide attorneys reasonably acceptable to M.I.T. to defend against any such claim. The Indemnitees shall cooperate fully with COMPANY in such defense and will permit COMPANY to conduct and control such defense and the disposition of such claim, suit, or action (including all decisions relative to litigation, appeal, and settlement); provided, however, that any Indemnitee shall have the right to retain its own counsel, at the expense of COMPANY, if representation of such Indemnitee by the counsel retained by COMPANY would be inappropriate because of actual or potential differences in the interests of such Indemnitee and any other party represented by such counsel. COMPANY agrees to keep M.I.T. informed of the progress in the defense and disposition of such claim and to consult with M.I.T. with regard to any proposed settlement.

8.2 Insurance. Whenever COMPANY elects to obtain and carry in full force and effect commercial general liability insurance, including product liability and errors and omissions insurance, such insurance shall protect COMPANY and Indemnitees with respect to events covered by Section 8.1 (a) above. COMPANY shall obtain such insurance before any use of the LICENSED PRODUCTS or IDENTIFIED PRODUCTS in humans. Such insurance (i) shall be issued by an insurer licensed to practice in the Commonwealth of Massachusetts or an insurer pre-approved by M.I.T., such approval not to be unreasonably withheld, (ii) shall list the OWNERS as additional insured thereunder, (iii) shall be endorsed to include product liability coverage, and (iv) shall require thirty (30) days written notice to be given to M.I.T. prior to any cancellation or material change thereof. The limits of such insurance shall not be less than One Million Dollars ($1,000,000) per occurrence with an aggregate of Three Million Dollars ($3,000,000) for bodily injury including death; One Million Dollars ($1,000,000) per occurrence with an aggregate of Three Million Dollars ($3,000,000) for property damage; and One Million Dollars ($1,000,000) per occurrence with an aggregate of Three Million Dollars ($3,000,000) for errors and omissions. In the alternative, COMPANY may self-insure subject to prior approval of M.I.T. COMPANY shall provide M.I.T. with Certificates of Insurance evidencing compliance with this Section. COMPANY shall continue to maintain such insurance or self-insurance after the expiration or termination of this Agreement during any period in which COMPANY or any AFFILIATE continues (i) to make, use, or sell a product that was a LICENSED PRODUCT under this Agreement or an IDENTIFIED PRODUCT or (ii) to perform a service that was a LICENSED PROCESS under this Agreement, and thereafter for a period of five (5) years.

14

 

## 9. NO REPRESENTATIONS OR WARRANTIES.

THE OWNERS MAKE NO REPRESENTATIONS OR WARRANTIES OF ANY KIND CONCERNING THE PATENT RIGHTS, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, NONINFRINGEMENT, VALIDITY OF PATENT RIGHTS CLAIMS, WHETHER ISSUED OR PENDING, AND THE ABSENCE OF LATENT OR OTHER DEFECTS, WHETHER OR NOT DISCOVERABLE. Specifically, and not to limit the foregoing, the OWNERS makes no warranty or representation (i) regarding the validity or scope of the PATENT RIGHTS, and (ii) that the exploitation of the PATENT RIGHTS or any LICENSED PRODUCT or LICENSED PROCESS will not infringe any patents or other intellectual property rights of the OWNERS or of a third party.

IN NO EVENT SHALL THE OWNERS, THEIR TRUSTEES, DIRECTORS, OFFICERS, EMPLOYEES AND AFFILIATES BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING ECONOMIC DAMAGES OR INJURY TO PROPERTY AND LOST PROFITS, REGARDLESS OF WHETHER ANY OF THE OWNERS SHALL BE ADVISED, SHALL HAVE OTHER REASON TO KNOW, OR IN FACT SHALL KNOW OF THE POSSIBILITY OF THE FOREGOING.

## 10. ASSIGNMENT.

This Agreement is personal to COMPANY and no rights or obligations may be assigned by COMPANY without the prior written consent of M.I.T., except that COMPANY may assign its rights and obligations under this Agreement to an AFFILIATE or to a successor in connection with the merger, consolidation, or sale of all or substantially all of its assets or that portion of its business to which this Agreement relates; provided, however, that this Agreement shall immediately terminate if the proposed assignee fails to agree in writing to be bound by the terms and conditions of this Agreement on or before the effective date of the assignment.

15

 

## 11. GENERAL COMPLIANCE WITH LAWS

11.1 <u>Compliance with Laws</u>. COMPANY shall use reasonable commercial efforts to comply with all commercially material local, state, federal, and international laws and regulations relating to the development, manufacture, use, and sale of LICENSED PRODUCTS and LICENSED PROCESSES.

11.2 <u>Export Control</u>. COMPANY and its AFFILIATES shall comply with all United States laws and regulations controlling the export of certain commodities and technical data, including without limitation all Export Administration Regulations of the United States Department of Commerce. Among other things, these laws and regulations prohibit or require a license for the export of certain types of commodities and technical data to specified countries. COMPANY hereby gives written assurance that it will comply with, and will cause its AFFILIATES to comply with, all United States export control laws and regulations, that it bears sole responsibility for any violation of such laws and regulations by itself or its AFFILIATES, and that it will indemnify, defend, and hold M.I.T. harmless (in accordance with Section 8.1) for the consequences of any such violation.

11.3 <u>Non-Use of OWNERS Names</u>. Neither COMPANY nor its AFFILIATES shall use the name of "Massachusetts Institute of Technology," "University of Massachusetts", "Whitehead Institute", "Max Planck Institute" or any variation, adaptation, or abbreviation thereof, or of any of its trustees, officers, faculty, students, employees, or agents, or any trademark owned by any of the OWNERS, or any terms of this Agreement in any promotional material or other public announcement or disclosure without the prior written consent of the OWNERS. The foregoing notwithstanding, without the consent of the OWNERS, COMPANY may state that it is nonexclusively licensed by the OWNERS under one or more of the patents and/or patent applications comprising the PATENT RIGHTS.

11.4 <u>Marking of LICENSED PRODUCTS</u>. To the extent commercially feasible and consistent with prevailing business practices, COMPANY shall mark, and shall cause its AFFILIATES to mark, all LICENSED PRODUCTS that are manufactured or sold under this Agreement with the number of each issued patent under the PATENT RIGHTS that applies to such LICENSED PRODUCT.



## 12.  TERMINATION.

12.1 <u>Voluntary Termination by COMPANY</u>.  COMPANY shall have the right to terminate this Agreement, for any reason, (i) upon at least six (6) months prior written notice to M.I.T., such notice to state the date at least six (6) months in the future upon which termination is to be effective, and (ii) upon payment of all amounts due to M.I.T. through such termination effective date.

12.2 <u>Cessation of Business</u>.  If COMPANY ceases to carry on its business related to this Agreement, M.I.T. shall have the right to terminate this Agreement immediately upon written notice to COMPANY. ·

12.3 <u>Termination for Default</u>.

(a)    <u>Nonpayment</u>.  In the event COMPANY fails to pay any amounts due and payable to M.I.T. hereunder, and fails to make such payments within thirty (30) days after receiving written notice of such failure, M.I.T. may terminate this Agreement immediately upon written notice to COMPANY.

(b)    <u>Material Breach</u>.  In the event COMPANY commits a material breach of its obligations under this Agreement, except for breach as described in Section 12.3(a), and fails to cure that breach within sixty (60) days after receiving written notice thereof, M.I.T. may terminate this Agreement immediately upon written notice to COMPANY.

12.4 <u>Effect of Termination</u>.

(a)    <u>Survival</u>.  The following provisions shall survive the expiration or termination of this Agreement:  Articles 1, 8, 9, 13 and 14, and Sections 4.1(e) and 5.2 (obligation to provide final report and payment), 5.4, and 12.4.

(b)    <u>Pre-termination Obligations</u>.  In no event shall termination of this Agreement release COMPANY or its AFFILIATES from the obligation to pay any amounts that became due on or before the effective date of termination.



## 13. DISPUTE RESOLUTION.

13.1 <u>Mandatory Procedures</u>. The parties agree that any dispute arising out of or relating to this Agreement shall be resolved solely by means of the procedures set forth in this Article, and that such procedures constitute legally binding obligations that are an essential provision of this Agreement. If either party fails to observe the procedures of this Article, as may be modified by their written agreement, the other party may bring an action for specific performance of these procedures in any court of competent jurisdiction.

13.2 <u>Equitable Remedies</u>. Although the procedures specified in this Article are the sole and exclusive procedures for the resolution of disputes arising out of or relating to this Agreement, either party may seek a preliminary injunction or other provisional equitable relief if, in its reasonable judgment, such action is necessary to avoid irreparable harm to itself or to preserve its rights under this Agreement.

13.3 <u>Dispute Resolution Procedures</u>.

      (a)    <u>Mediation</u>. In the event any dispute arising out of or relating to this Agreement remains unresolved within sixty (60) days from the date the affected party informed the other party of such dispute, either party may initiate mediation upon written notice to the other party ("Notice Date"), whereupon both parties shall be obligated to engage in a mediation proceeding under the then current Center for Public Resources ("CPR") Model Procedure for Mediation of Business Disputes (http://www.cpradr.org), except that specific provisions of this Article shall override inconsistent provisions of the CPR Model Procedure. The mediator will be selected from the CPR Panels of Neutrals. If the parties cannot agree upon the selection of a mediator within fifteen (15) business days after the Notice Date, then upon the request of either party, the CPR shall appoint the mediator. The parties shall attempt to resolve the dispute through mediation until the first of the following occurs: (i) the parties reach a written settlement; (ii) the mediator notifies the parties in writing that they have reached an impasse; (iii) the parties agree in writing that they have reached an impasse; or (iv) the parties have not reached a settlement within sixty (60) days after the Notice Date.

      (b)    <u>Trial Without Jury</u>. If the parties fail to resolve the dispute through mediation, or if neither party elects to initiate mediation, each party shall have the right to pursue any other remedies legally available to resolve the dispute, provided, however, that the parties expressly waive any right to a jury trial in any legal proceeding under this Article.

18




13.4  <u>Performance to Continue</u>.  Each party shall continue to perform its undisputed obligations under this Agreement pending final resolution of any dispute arising out of or relating to this Agreement; provided, however, that a party may suspend performance of its undisputed obligations during any period in which the other party fails or refuses to perform its undisputed obligations.  Nothing in this Article is intended to relieve COMPANY from its obligation to make undisputed payments pursuant to Articles 4 and 6 of this Agreement.

13.5  <u>Statute of Limitations</u>.  The parties agree that all applicable statutes of limitation and time-based defenses (such as estoppel and laches) shall be tolled while the procedures set forth in Sections 13.3(a) are pending.  The parties shall cooperate in taking any actions necessary to achieve this result.

## · 14.  MISCELLANEOUS.

14.1  <u>Notice</u>.  Any notices required or permitted under this Agreement shall be in writing, shall specifically refer to this Agreement, and shall be sent by hand, recognized national overnight courier, confirmed facsimile transmission, confirmed electronic mail, or registered or certified mail, postage prepaid, return receipt requested, to the following addresses or facsimile numbers of the parties:

If to M.I.T.:      Technology Licensing Office, Room NE25-230
                   Massachusetts Institute of Technology
                   77 Massachusetts Avenue
                   Cambridge, MA 02139-4307
                   Attention:  Director
                   Tel:   617-253-6966
                   Fax:   617-258-6790

If to COMPANY      Dharmacon Research, Inc.
                   1376 Miners Drive
                   Suite 101
                   Lafayette, CO 80026
                   Attention: Dr. Steven Scaringe
                   Tel:    303-604-9499
                   Fax:    303-604-9680

All notices under this Agreement shall be deemed effective upon receipt.  A party may change its contact information immediately upon written notice to the other party in the manner provided in this Section.

14.2 <u>Governing Law</u>. This Agreement and all disputes arising out of or related to this Agreement, or the performance, enforcement, breach or termination hereof, and any remedies relating thereto, shall be construed, governed, interpreted and applied in accordance with the laws of the Commonwealth of Massachusetts, U.S.A., without regard to conflict of laws principles, except that questions affecting the construction and effect of any patent shall be determined by the law of the country in which the patent shall have been granted.

14.3 <u>Force Majeure</u>. Neither party will be responsible for delays resulting from causes beyond the reasonable control of such party, including without limitation fire, explosion, flood, war, strike, or riot, provided that the nonperforming party uses commercially reasonable efforts to avoid or remove such causes of nonperformance and continues performance under this Agreement with reasonable dispatch whenever such causes are removed.

14.4 <u>Amendment and Waiver</u>. This Agreement may be amended, supplemented, or otherwise modified only by means of a written instrument signed by both parties. Any waiver of any rights or failure to act in a specific instance shall relate only to such instance and shall not be construed as an agreement to waive any rights or fail to act in any other instance, whether or not similar.

14.5 <u>Severability</u>. In the event that any provision of this Agreement shall be held invalid or unenforceable for any reason, such invalidity or unenforceability shall not affect any other provision of this Agreement, and the parties shall negotiate in good faith to modify the Agreement to preserve (to the extent possible) their original intent.

14.6 <u>Binding Effect</u>. This Agreement shall be binding upon and inure to the benefit of the parties and their respective permitted successors and assigns.

14.7 <u>Headings</u>. All headings are for convenience only and shall not affect the meaning of any provision of this Agreement.

14.8 <u>Entire Agreement</u>. This Agreement constitutes the entire agreement between the parties with respect to its subject matter and supersedes all prior agreements or understandings between the parties relating to its subject matter.



IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized representatives.

**The EFFECTIVE DATE of this Agreement is** _Dec 21, 2001_ .

MASSACHUSETTS INSTITUTE OF
TECHNOLOGY

By: _Lita Nelsen_

Name: ~~LITA L. NELSEN DIRECTOR~~

Title: TECHNOLOGY LICENSING OFFICE

Dharmacon Research, Inc.

By: _Stephen Scaringe_

Name: STEPHEN SCARINGE

Title: CEO

21

## APPENDIX A

## JOINT PATENT RIGHTS

I.    United States Patents and Applications

USSN 60/265232 entitled "RNA Sequence-Specific Mediators of RNA Interference", by David
      P. Bartel, Phillip A. Sharp, Thomas Tuschl, And Phillip D. Zamore

USSN 09/821832 entitled "RNA Sequence-Specific Mediators of RNA Interference", by David
      P. Bartel, Phillip A. Sharp, Thomas Tuschl, And Phillip D. Zamore

II.    International (non-U.S.) Patents and Applications

PCT/US01/10188 entitled "RNA Sequence-Specific Mediators of RNA Interference", by David
      P. Bartel, Phillip A. Sharp, Thomas Tuschl, And Phillip D. Zamore

22

## APPENDIX B

### MAX PLANCK PATENT RIGHTS

I.    United States <u>Patents and Applications</u>

II.   <u>International (non-U.S.) Patents and Applications</u>

European Serial Number 00126325 entitled "RNA Interference Mediating Small RNA Molecules" by Thomas Tuschl, Sayda Elbashir and Winfried Lendeckel

24

Dharmacon Announces Agreement To Be Acquired By Fisher Scientific -Acquisition Gives Dharmacon's Leading RNA Interf...   Page 1 of 2

Case 1:05-cv-10156-PBS     Document 44-4     Filed 11/15/2005     Page 1 of 2

DHARMACON
RNA TECHNOLOGIES

Enter Search Term    **Search**

CART ● LOGIN ● CONTACT US

Home    About Us    Technical Resources    Product Information    Custom RNA    siRNA    Catalog

## About Dharmacon

### Press Release

**Dharmacon Announces Agreement To Be Acquired By Fisher Scientific -Acquisition Gives Dharmacon's Leading RNA Interference Technology Expanded Access To Global Research Markets -**

**LAFAYETTE, Colo., Feb. 11, 2004 - Dharmacon, Inc.,** of Lafayette, Colorado, the leading global supplier of innovative RNA and RNA-interference research (RNAi) products, today announced that it has signed a definitive agreement to be acquired by Fisher Scientific International Inc. (NYSE: FSH), a leading global provider of equipment, supplies, and services for the scientific-research and clinical-laboratory markets.
Dharmacon brings leading RNAi capabilities to Fisher Scientific that can accelerate a broad range of biomedical and biological research. The acquisition provides unique and proprietary products and technologies, which will complement those offered by Fisher's recently acquired Perbio brands: Pierce, Endogen, and HyClone. Dharmacon shareholders will receive $80 million in cash for all outstanding shares and options. The transaction has been approved by the boards of directors of both companies and is anticipated to close by the end of the first quarter.

"The addition of Dharmacon's industry leading RNAi technology and products will give Fisher Scientific a leadership position in the important and rapidly growing new field of RNA interference, which is playing an increasingly important role in both basic biomedical research and drug discovery and development," said Stephen A. Scaringe, Ph.D., chairman, chief scientific officer, and founder of Dharmacon. "Fisher Scientific is already a world leader in serving the scientific research community, and adding Dharmacon's capabilities is another important step in their strategy to augment the cutting-edge, high value-added products they provide to scientists across the entire research and development spectrum."

Dharmacon has established a market leading position in supplying and developing small interfering RNA (siRNA) for gene function analysis and drug discovery in pharmaceutical, biotechnology and academic laboratories. Dharmacon's proprietary SMARTselection$^{TM}$ and SMARTpool® technologies enable the design of highly potent and specific siRNA reagents for gene silencing. Dharmacon has pioneered the development and commercialization of siRNAs that are exceptionally stable, longer lasting and more specifically targeted in their "gene silencing" effects with guaranteed high quality results.
"By joining forces with Fisher Scientific, Dharmacon will now have access to the global resources and infrastructure to continuously improve our technologies and products and to make them available to a broader audience of researchers, companies and institutions," said Scaringe. "By linking Fisher's wide range of complementary technologies with our RNA and RNAi capabilities, Fisher and Dharmacon will be uniquely positioned to lead the industry in supporting integration of RNAi approaches into ongoing R&D activities."

Dharmacon has headquarters in Lafayette, Co. where it employs more than 100 people. The company was

Dharmacon Announces Agreement To Be Acquired By Fisher Scientific -Acquisition Gives Dharmacon's Leading RNA Interf...   Page 2 of 2

Case 1:05-cv-10156-PBS    Document 44-4    Filed 11/15/2005    Page 2 of 2

founded in 1995 by Stephen Scaringe and has been profitable every year since 1997. Fisher Scientific is expected to maintain Dharmacon's facilities in Lafayette.

About Dharmacon

Dharmacon is the world's leading provider of reliable and high quality RNA oligonucleotides, small interfering RNA (siRNA) and related RNA-interference (RNAi) products and technologies to the life sciences industry. Founded in 1995, Dharmacon discovered and commercialized 2'-ACE$^®$, a novel, highly productive chemical strategy for RNA synthesis. Using its core expertise in chemistry, biology, bioinformatics and production, Dharmacon has pioneered a custom siRNA design service that employs its proprietary SMARTselectionTM algorithm for maximizing the efficiency of gene silencing, a powerful and increasingly widely-used new technology based on siRNA. Dharmacon's proprietary SMARTselection$^{TM}$and SMARTpool$^®$ technologies result in potent and specific gene silencing agents that can accelerate research and discovery across a broad range of biomedical and biological research.

About Fisher Scientific International Inc.

As a world leader in serving science, Fisher Scientific International Inc. (NYSE: FSH) offers more than 600,000 products and services to more than 350,000 customers located in approximately 145 countries. Fisher's customers include pharmaceutical and biotech companies; colleges and universities; medical-research institutions; hospitals and reference labs; quality-control, process-control and R&D labs in various industries; as well as government and first responders. As a result of its broad product offering, electronic-commerce capabilities and integrated global logistics network, Fisher serves as a one-stop source of products, services and global solutions for its customers. The company primarily serves the scientific-research, clinical-laboratory and safety markets. Additional information about Fisher is available on the company's Web site at www.fisherscientific.com.

Top

| Site Map | Privacy Statement | Terms & Conditions | Site Feedback |
| --- | --- | --- | --- |
| **About Us** | **Technical Resources** | **Product Information** | **Custom RNA** | **siRNA** | **Product Catalog** |

Copyright © 1998-2005 Dharmacon, Inc.



# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY, Plaintiff, v. DHARMACON, INC. and FISHER SCIENTIFIC INTERNATIONAL, INC., Defendants. | Civil Action No. 05-10156-PBS |

## PLAINTIFF'S FIRST REQUEST FOR THE
## PRODUCTION OF DOCUMENTS AND THINGS (1-33)

Plaintiff Massachusetts Institute of Technology ("MIT"), pursuant to Rule 34 of the Federal Rules of Civil Procedure, hereby requests that Defendants Dharmacon, Inc. ("Dharmacon") and Fisher Scientific International, Inc. ("Fisher") produce for inspection and copying the documents and tangible things identified below. Such documents and things shall be produced within thirty (30) days of service of these requests at the office of PROSKAUER ROSE LLP, One International Place, 22nd Floor, Boston, MA 02110 or at another mutually convenient location.

These requests are to be deemed continuing and any information secured subsequent to service of such documents and things must be furnished with supplemental responses upon receipt of such information in accordance with Federal Rule of Civil Procedure 26(e).

## DEFINITIONS

Notwithstanding any definition set forth below, each word, term, or phrase used in this request for documents and things is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure. For purposes of these document requests, the following definitions, regardless of whether the defined word is capitalized, shall apply:

A.      "MIT" means the Massachusetts Institute of Technology, including its servants, agents, representatives, employees, principals, attorneys, and all other persons, forms or corporations acting with it or on its behalf.

B.      "Dharmacon" means Dharmacon, Inc., including its servants, agents, representatives, employees, principals, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest, successors-in-interest, and all other persons, forms or corporations acting with it or on its behalf.

C.      "Fisher" means Fisher International Industries, Inc., including its servants, agents, representatives, employees, principals, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest, successors-in-interest, and all other persons, forms or corporations acting with it or on its behalf.

D.      "Defendants" means Dharmacon, Fisher and both of those parties.

E.      "License Agreement" means the December 21, 2001 license agreement executed by MIT and Dharmacon.

F.      "The Tuschl Applications" refers to the patents and applications listed in Appendices A and B to the License Agreement, and any United States, foreign, or PCT patent applications claiming priority to or from these patents or applications.

G.      "'790 Patent" means U.S. Patent No. 6,544,790.

H.     The term "prior art" encompasses by way of example and without limitation, the subject matter described in each and every subdivision of 35 U.S.C. §§ 102-03.

I.     "siRNA products or services" refers to any product or service which is used with, or is capable of being used in conjunction with, siRNA material.

J.     "Reverse transfection products or services" refers to any products or services using or employing reverse transfection technology.

K.     "All" means "any and all."

L.     Any word written in the singular shall be construed as plural and vice versa.

M.     "Concerning" means referring to, relating to, describing, evidencing, or constituting.

N.     As used herein, the term "Document[s]" shall be synonymous in meaning and equal in scope to the usage of the term in Fed. R. Civ. P. 34(a). Electronic correspondence is also included within the meaning of this term. A draft or non-identical copy is a separate document within the meaning of this term.

O.     As used herein, the term "or" means "and/or."

P.     As used herein, the term "Communication[s]" means all letters, memoranda, notes and messages, whether printed, typed or handwritten, including but not limited to all electronic modes of correspondence such as electronic mail and faxes, and including documents reflecting conversations and meetings.

Q.     "Person" means any natural person or juridical person including any corporation, partnership, sole proprietorship, agency, or business association of any type or character.

R.     As used herein, the term "Identify" means:

     a)     with respect to persons, give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, the present or last known place of employment, his/her title and position with that employer; and

     b)     with respect to documents, give, to the extent known, the: (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s), and recipient(s).

## INSTRUCTIONS

A.     When a claim of privilege is asserted in the objection to any request or any subpart thereof, and any document is not provided on the basis of that assertion, identify in the objection the nature of the privilege that is being claimed with respect to each such document. If the privilege is being asserted in the connection with a claim or defense governed by state law, indicate the particular privilege rule that is being invoked.

B.     When an objection is made to any request, or subpart thereof, state with specificity all grounds for the objection.

C.     With respect to each document which is withheld from production for any reason, provide a statement setting forth:

(i)     the name and title of the author(s);

(ii)     the name and title of the person(s) to whom the document was addressed;

(iii)     the name and title of the person(s) to whom copies of the document were sent;

(iv)     the date on which the document was written or otherwise produced and the date on which it was mailed, sent or delivered to its addressees:

(v)     the number of pages contained in the document;

(vi)    a brief description of the nature and subject matter;

(vii)    the grounds upon which it is being withheld; and

(viii)    the paragraph number to which the document is otherwise responsive.

D.    When a document contains both privileged and non-privileged material, the non-privileged material should be disclosed to the fullest extent possible without thereby disclosing the privileged material.  If a privilege is asserted with regard to part of the material contained in a document, specifically indicate the portions as to which the privilege is claimed.  When a document has been redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and person performing the redaction or alteration.  Any notice of redaction must be clearly visible on the redacted document.

E.    If production of any requested document is objected to on the grounds that production is unduly burdensome, set forth the burden or expense of the proposed discovery and why Defendants contend that the burden or expense outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties, resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues, as set forth in Fed. R. Civ. P. 26(b)(2).

F.    If requested documents are maintained in a file, the file folder is included in the request for production of those documents.

G.    For all documents produced by Defendants in this litigation,

1.    Provide, by document Bates number range, the source of the original documents;

2.    Provide a log of all documents withheld on grounds of privilege; and

3.    Describe the company's document retention policies and efforts to preserve e-mail and other electronic documents responsive to MIT's discovery requests.

## DOCUMENT REQUESTS

REQUEST NO. 1:

All documents and things concerning the License Agreement, including but not limited to documents concerning:

a)    the negotiation of the License Agreement (including, but not limited to, drafts of the License Agreement);

b)    interpretation of the terms of the License Agreement (including, but not limited to, any documents concerning interpretation of paragraph 1.4 of the License Agreement), and / or

c)    performance under the License Agreement.

RESPONSE TO REQUEST NO. 1:


REQUEST NO. 2:

All documents and things concerning Dharmacon's payment of royalties under the License Agreement.

RESPONSE TO REQUEST NO. 2:


REQUEST NO. 3:

All documents and things concerning the validity, infringement, enforceability or scope of the '790 Patent or the Tuschl Applications.

RESPONSE TO REQUEST NO. 3:

REQUEST NO. 4:

All documents and things concerning any search, investigation, review, opinion, study, analysis, event or reference concerning, without limitation, the scope, validity, infringement or enforceability of the '790 Patent or the Tuschl Applications, including, but not limited to, opinions, summaries, notes, memoranda, or the equivalent prepared by Defendants or any of their representatives.

RESPONSE TO REQUEST NO. 4:


REQUEST NO. 5:

All documents ever considered, evaluated, or possessed by Defendants regarding the novelty, patentability, validity, enforceability, or scope of the subject matter disclosed and claimed in the '790 Patent or the Tuschl Applications.

RESPONSE TO REQUEST NO. 5:


REQUEST NO. 6:

All documents and things tending to support or refute any argument by Defendants that the '790 Patent or the Tuschl Applications are invalid, void, and unenforceable under the patent laws of the United States, Title 35 of the United States Code.

RESPONSE TO REQUEST NO. 6:

REQUEST NO. 7:

All prior art patents and publications that Defendants consider pertinent to the subject matter of the '790 Patent or the Tuschl Applications.

RESPONSE TO REQUEST NO. 7:


REQUEST NO. 8:

All documents and things concerning Defendants' first awareness of the '790 Patent or the Tuschl Applications.

RESPONSE TO REQUEST NO. 8:


REQUEST NO. 9:

All documents and things concerning any of Defendants' efforts, after Defendants became aware of the '790 Patent or the Tuschl Applications, to modify any siRNA products or services, or any reverse transfection products or services used, manufactured, or sold by Defendants.

RESPONSE TO REQUEST NO. 9:

REQUEST NO. 10:

All documents and things concerning the design, development, manufacture, marketing, sale or

offer for sale of any siRNA products or services or any reverse transfection products or services

used, manufactured or sold by Defendants, including but not limited to: all laboratory notebooks,

test results, reports, memoranda, evaluations, analysis, any prototype, precursor, or experimental

versions of such products.

RESPONSE TO REQUEST NO. 10:


REQUEST NO. 11:

All documents and things that support or refute Defendants' claims that they have not infringed,

and are not infringing, the '790 Patent or the Tuschl Applications.

RESPONSE TO REQUEST NO. 11:


REQUEST NO. 12:

All documents concerning comparisons of any product manufactured or sold by Defendants and

any of the claims of the '790 Patent or the Tuschl Applications.

RESPONSE TO REQUEST NO. 12:


REQUEST NO. 13:

All documents concerning any plans, commitments, projections or reports relating to

Defendants' future production capacity for any siRNA products or services or reverse

transfection products or services.

RESPONSE TO REQUEST NO. 13:

REQUEST NO. 14:

All documents concerning the promotion, advertisement, demonstration, marketing and sale of any siRNA products or services or reverse transfection products or services used, manufactured or sold by Defendants, including, but not limited to: all advertising, press releases, product announcements, bulletins, solicitations, articles, speech or lecture texts, sales presentations, PowerPoint presentations, product brochures, memoranda, and catalogs.

RESPONSE TO REQUEST NO. 14:


REQUEST NO. 15:

All documents concerning any communication with, or relating to, any agent, dealer, wholesaler, distributor, customer, or potential customer of any siRNA products or services, or reverse transfection products or services, in the United States, or any other person, concerning transfers or projected transfers of such products in the United States, including without limitation, costs and sales, and anticipated or actual sales.

RESPONSE TO REQUEST NO. 15:


REQUEST NO. 16:

All documents sufficient to identify all prospective, existing and past customers of any siRNA products or services, or reverse transfection products or services, including documents concerning the dissemination of promotional materials for such products including, but not limited to: mailing lists, tear sheets, and periodicals in which promotional materials have appeared.

RESPONSE TO REQUEST NO. 16:

REQUEST NO. 17:

All documents comprising pricing, price quotes, price lists, price announcements, actual prices, or projected prices, paid by, or expected to be paid by, customers for any siRNA products or services or reverse transfection products or services.

RESPONSE TO REQUEST NO. 17:

REQUEST NO: 18:

All documents concerning communications, whether to or from suppliers or customers or any other persons, that relate to MIT or the subject matter of the '790 Patent, the Tuschl Applications, or the License Agreement.

RESPONSE TO REQUEST NO. 18:

REQUEST NO. 19:

All documents concerning any policy, guideline or agreement of Dharmacon or Fisher with respect to patent procurement, patent licensing and royalty rates.

RESPONSE TO REQUEST NO. 19:

REQUEST NO. 20:

All documents concerning any communication by or to persons other than MIT asserting patent infringement by Dharmacon or Fisher.

RESPONSE TO REQUEST NO. 20:

REQUEST NO. 21:

All documents passing between Defendants and any person who Defendants expect to offer

testimony of at trial in this action, including, without limitation, any expert witness.

RESPONSE TO REQUEST NO. 21:


REQUEST NO. 22:

All documents and things reviewed, considered or relied upon by any experts retained by

Defendants in connection with this matter or that are a basis for each opinion to be reached by

such experts.

RESPONSE TO REQUEST NO. 22:


REQUEST NO. 23:

All documents and things, including but not limited to, reports, studies, books, articles or

publications prepared by each expert retained by Defendants in this matter concerning the

subject matter about which such expert is expected to testify.

RESPONSE TO REQUEST NO. 23:


REQUEST NO. 24:

A sample of all siRNA products or services, or reverse transfection products or services, used,

manufactured or sold by Defendants.

RESPONSE TO REQUEST NO. 24:

REQUEST NO. 25:

All documents and things Defendants may use or intend to rely upon at trial.

RESPONSE TO REQUEST NO. 25:


REQUEST NO. 26:

All documents and things identified, relied upon, or referred to in response to MIT's First Set of Interrogatories.

RESPONSE TO REQUEST NO. 26:


REQUEST NO. 27:

All documents and things identified, relied upon, or referred to in preparing Defendants' answers to the complaint filed by MIT in this action.

RESPONSE TO REQUEST NO. 27:


REQUEST NO. 28:

All documents Dharmacon relied upon in filing, or intends to rely upon at trial in support of, its affirmative defenses set forth in its answer to MIT's complaint.

RESPONSE TO REQUEST NO. 28:


REQUEST NO. 29:

All documents Dharmacon relied upon in filing, or intends to rely upon at trial in support of, its counterclaim for Breach of the Implied Covenant of Good Faith and Fair Dealing.

RESPONSE TO REQUEST NO. 29:

REQUEST NO. 30:

All documents Dharmacon relied upon in filing, or intends to rely upon at trial in support of, its counterclaim for violation of Mass. Gen. L. ch. 93A, § 11.

RESPONSE TO REQUEST NO. 30:


REQUEST NO. 31:

All documents Dharmacon relied upon in filing, or intends to rely upon at trial in support of, its counterclaim for Interference with Prospective Economic Advantage.

RESPONSE TO REQUEST NO. 31:


REQUEST NO. 32:

All documents concerning Defendants' document retention policies or practices.

RESPONSE TO REQUEST NO. 32:


REQUEST NO. 33:

Copies of organizational charts sufficient to show Defendants' organizational structures and corporate management over the past two (2) years, and Dharmacon's corporate relationship with Fisher.

RESPONSE TO REQUEST NO. 33:

MASSACHUSETTS INSTITUTE OF
TECHNOLOGY,

By its Counsel,

*Kimberly A. Mottley*

Steven M. Bauer (BBO #542531)
Kimberly A. Mottley (BBO #651190)
PROSKAUER ROSE LLP
One International Place
Boston, MA  02110
Tel: (617) 526-9600
Fax: (617) 526-9899

Dated:  July 18, 2005

## Certificate of Service

I hereby certify that on July 18, 2005, a true and correct copy of the foregoing document was served upon opposing counsel by hand.

*Kimberly A. Mottley*

Kimberly A. Mottley

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____

|  |  |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| DHARMACON, INC. and FISHER SCIENTIFIC INTERNATIONAL, INC., | ) ) ) |
| Defendants. | ) ) |

_____

## DEFENDANTS' RESPONSE TO PLAINTIFF'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS AND THINGS (1-33)

Defendants Dharmacon, Inc. ("Dharmacon") and Fisher Scientific International, Inc. ("Fisher") (together, "Defendants") respond to Plaintiff's First Request for the Production of Documents and Things (1-33), as follows:

### General Objections

Defendants make the following general objections to these requests. Each of these general objections are incorporated into each of Defendants' separate responses to Plaintiff's specific requests as though fully set forth therein. Further, Defendants submit their responses to these requests without conceding the relevancy or materiality of the subject matter of any request and without prejudice to Defendants' right to object to further discovery or to object to the admissibility of any proof on the subject matter of any response at the time of trial, or to correct, supplement, or clarify any of its responses.

1.     Defendants object generally to these requests to the extent they are vague and incomprehensible.

2.    Defendants object generally to these requests to the extent that they are overbroad and unduly burdensome, seek documents and information not relevant to the subject matter of this case and are not reasonably calculated to lead to the discovery of admissible evidence.

3.    Defendants object generally to these requests to the extent they seek documents and information protected by the attorney-client privilege and/or the attorney work product doctrine.

4.    Defendants object generally to these requests to the extent they seek Defendants' confidential and/or proprietary technical or business documents and information beyond the scope of any protective order in this case.

5.    Defendants object generally to the scope of these requests to the extent they are unnecessarily extensive, burdensome and repetitive.

6.    Defendants object generally to these requests and the instructions to the extent they seek to impose obligations beyond those set forth in the Federal Rules of Civil Procedure.

<u>REQUEST NO. 1</u>:

All documents and things concerning the License Agreement, including but not limited to documents concerning:

    a)    the negotiation of the License Agreement (including, but not limited to, drafts of the License Agreement);

    b)    interpretation of the terms of the License Agreement (including, but not limited to, any documents concerning interpretation of paragraph 1.4 of the License Agreement), and/or

    c)    performance under the License Agreement.

RESPONSE TO REQUEST NO. 1:

Defendants object to this request based on general objections 1 through 6, supra.  Subject to and

without waiving the foregoing objections, Defendants state that they have produced, or will

produce, non-privileged documents in their possession, custody or control, if any, that are

reasonably responsive to this request, subject to entry of an appropriate protective order in this

case.

REQUEST NO. 2:

All documents and things concerning Dharmacon's payment of royalties under the License

Agreement.

RESPONSE TO REQUEST NO. 2:

Defendants object to this request based on general objections 1 through 6, supra.  Subject to and

without waiving the foregoing objections, Defendants state that they have produced, or will

produce, non-privileged documents in their possession, custody or control, if any, that are

reasonably responsive to this request, subject to entry of an appropriate protective order in this

case.

REQUEST NO. 3:

All documents and things concerning the validity, infringement, enforceability or scope of the

'790 Patent or the Tuschl Applications.

RESPONSE TO REQUEST NO. 3:

Defendants object to this request based on general objections 1 through 6, supra.  Defendants

further object to the extent this request seeks documents and things relating to the validity,

infringement, enforceability and/or scope of the "Tuschl Applications" which are currently only

pending patent applications, the validity, infringement, enforceability and/or scope of which

cannot be determined unless and until one or more patents have issued with allowed claims. Subject to and without waiving the foregoing objections, Defendants state that they have produced, or will produce, non-privileged documents in their possession, custody or control, if any, that are reasonably responsive to this request, subject to entry of an appropriate protective order in this case.

REQUEST NO. 4:

All documents and things concerning any search, investigation, review, opinion, study, analysis, event or reference concerning, without limitation, the scope, validity, infringement or enforceability of the '790 Patent or the Tuschl Applications, including, but not limited to, opinions, summaries, notes, memoranda, or the equivalent prepared by Defendants or any of their representatives.

RESPONSE TO REQUEST NO. 4:

Defendants object to this request based on general objections 1 through 6, supra. Defendants further object to the extent this request seeks documents and things relating to the validity, infringement, enforceability and/or scope of the "Tuschl Applications" which are currently only pending patent applications, the validity, infringement, enforceability and/or scope of which cannot be determined unless and until one or more patents have issued with allowed claims. Subject to and without waiving the foregoing objections, Defendants state that they have produced, or will produce, non-privileged documents in their possession, custody or control, if any, that are reasonably responsive to this request, subject to entry of an appropriate protective order in this case.

REQUEST NO. 5:

All documents ever considered, evaluated, or possessed by Defendants regarding the novelty,
patentability, validity, enforceability, or scope of the subject matter disclosed and claimed in the
'790 Patent or the Tuschl Applications.

RESPONSE TO REQUEST NO. 5:

Defendants object to this request based on general objections 1 through 6, supra. Defendants
further object to the extent this request seeks documents and things relating to the validity,
infringement, enforceability and/or scope of the "Tuschl Applications" which are currently only
pending patent applications, the validity, infringement, enforceability and/or scope of which
cannot be determined unless and until one or more patents have issued with allowed claims.
Subject to and without waiving the foregoing objections, Defendants state that they have
produced, or will produce, non-privileged documents in their possession, custody or control, if
any, that are reasonably responsive to this request, subject to entry of an appropriate protective
order in this case.

REQUEST NO. 6:

All documents and things tending to support or refute any argument by Defendants that the '790
Patent or the Tuschl Applications are invalid, void, and unenforceable under the patent laws of
the United States, Title 35 of the United States Code.

RESPONSE TO REQUEST NO. 6:

Defendants object to this request based on general objections 1 through 6, supra. Defendants
further object to the extent this request seeks documents and things relating to any argument by
Defendants that the "Tuschl Applications" are invalid, void, and unenforceable, since the
"Tuschl Applications" are currently only pending patent applications, the validity, infringement,

enforceability and/or scope of which cannot be determined unless and until one or more patents have issued with allowed claims. Defendants further object in that the request assumes that Defendants have asserted that the "Tuschl Applications" are invalid, void and/or unenforceable. Subject to and without waiving the foregoing objections, Defendants state that they have produced, or will produce, non-privileged documents in their possession, custody or control, if any, that are reasonably responsive to this request, subject to entry of an appropriate protective order in this case.

REQUEST NO. 7:

All prior art patents and publications that Defendants consider pertinent to the subject matter of the '790 Patent or the Tuschl Applications.

RESPONSE TO REQUEST NO. 7:

Defendants object to this request based on general objections 1 through 6, supra. Subject to and without waiving the foregoing objections, Defendants state that they have produced, or will produce, non-privileged documents in their possession, custody or control, if any, that are reasonably responsive to this request, subject to entry of an appropriate protective order in this case.

REQUEST NO. 8:

All documents and things concerning Defendants' first awareness of the '790 Patent or the Tuschl Applications.

RESPONSE TO REQUEST NO. 8:

Defendants object to this request based on general objections 1 through 6, supra. Defendants further object to grounds that the words "first awareness" are vague and ambiguous. Subject to and without waiving the foregoing objections, Defendants state that they have produced, or will

produce, non-privileged documents in their possession, custody or control, if any, that are reasonably responsive to this request, subject to entry of an appropriate protective order in this case.

REQUEST NO. 9:

All documents and things concerning any of Defendants' efforts, after Defendants became aware of the '790 Patent or the Tuschl Applications, to modify any siRNA products or services, or any reverse transfection products or services used, manufactured, or sold by Defendants.

RESPONSE TO REQUEST NO. 9:

Defendants object to this request based on general objections 1 through 6, supra. Subject to and without waiving the foregoing objections, Defendants state that they have produced, or will produce, non-privileged documents in their possession, custody or control, if any, that are reasonably responsive to this request, subject to entry of an appropriate protective order in this case.

REQUEST NO. 10:

All documents and things concerning the design, development, manufacture, marketing, sale or offer for sale of any siRNA products or services or any reverse transfection products or services used, manufactured or sold by Defendants, including but not limited to: all laboratory notebooks, test results, reports, memoranda, evaluations, analysis, any prototype, precursor, or experimental versions of such products.

RESPONSE TO REQUEST NO. 10:

Defendants object to this request based on general objections 1 through 6, supra. Defendants further object to the extent this request seeks documents that are beyond any scope of relevance in this matter. Subject to and without waiving the foregoing objections, Defendants state that

they have produced, or will produce, non-privileged documents in their possession, custody or control, if any, that are reasonably responsive to this request, subject to entry of an appropriate protective order in this case.

REQUEST NO. 11:

All documents and things that support or refute Defendants' claims that they have not infringed, and are not infringing, the '790 Patent or the Tuschl Applications.

RESPONSE TO REQUEST NO. 11:

Defendants object to this request based on general objections 1 through 6, supra. Defendants further object to the extent this request seeks documents and things relating to the Tuschl Applications which are currently only pending patent applications, the infringement of which cannot be determined unless and until one or more patents have issued with allowed claims. Subject to and without waiving the foregoing objections, Defendants state that they have produced, or will produce, non-privileged documents in their possession, custody or control, if any, that are reasonably responsive to this request, subject to entry of an appropriate protective order in this case.

REQUEST NO. 12:

All documents concerning comparisons of any product manufactured or sold by Defendants and any of the claims of the '790 Patent or the Tuschl Applications.

RESPONSE TO REQUEST NO. 12:

Defendants object to this request based on general objections 1 through 6, supra. Subject to and without waiving the foregoing objections, Defendants state that they have produced, or will produce, non-privileged documents in their possession, custody or control, if any, that are

reasonably responsive to this request, subject to entry of an appropriate protective order in this case.

REQUEST NO. 13:

All documents concerning any plans, commitments, projections or reports relating to Defendants' future production capacity for any siRNA products or services or reverse transfection products or services.

RESPONSE TO REQUEST NO. 13:

Defendants object to this request based on general objections 1 through 6, supra. Subject to and without waiving the foregoing objections, Defendants state that they have produced, or will produce, non-privileged documents in their possession, custody or control, if any, that are reasonably responsive to this request, subject to entry of an appropriate protective order in this case.

REQUEST NO. 14:

All documents concerning the promotion, advertisement, demonstration, marketing and sale of any siRNA products or services or reverse transfection products or services used, manufactured or sold by Defendants, including, but not limited to: all advertising, press releases, product announcements, bulletins, solicitations, articles, speech or lecture texts, sales presentations, PowerPoint presentations, product brochures, memoranda, and catalogs.

RESPONSE TO REQUEST NO. 14:

Defendants object to this request based on general objections 1 through 6, supra. Subject to and without waiving the foregoing objections, Defendants state that they have produced, or will produce, non-privileged documents in their possession, custody or control, if any, that are

reasonably responsive to this request, subject to entry of an appropriate protective order in this case.

REQUEST NO. 15:

All documents concerning any communication with, or relating to, any agent, dealer, wholesaler, distributor, customer, or potential customer of any siRNA products or services, or reverse transfection products or services, in the United States, or any other person, concerning transfers or projected transfers of such products in the United States, including without limitation, costs and sales, and anticipated or actual sales.

RESPONSE TO REQUEST NO. 15:

Defendants object to this request based on general objections 1 through 6, supra. Defendants further object on the grounds that the words "or any other person" make this request hopelessly overbroad, and that the words "transfers or projected transfers" and use of the term "costs" are vague and ambiguous. Subject to and without waiving the foregoing objections, Defendants state that they have produced, or will produce, non-privileged documents in their possession, custody or control, if any, that are reasonably responsive to this request, subject to entry of an appropriate protective order in this case.

REQUEST NO. 16:

All documents sufficient to identify all prospective, existing and past customers of any siRNA products or services, or reverse transfection products or services, including documents concerning the dissemination of promotional materials for such products including, but not limited to: mailing lists, tear sheets, and periodicals in which promotional materials have appeared.

RESPONSE TO REQUEST NO. 16:

Defendants object to this request based on general objections 1 through 6, supra. Subject to and without waiving the foregoing objections, Defendants state that they have produced, or will produce, non-privileged documents in their possession, custody or control, if any, that are reasonably responsive to this request, subject to entry of an appropriate protective order in this case.

REQUEST NO. 17:

All documents comprising pricing, price quotes, price lists, price announcements, actual prices, or projected prices, paid by, or expected to be paid by, customers for any siRNA products or services or reverse transfection products or services.

RESPONSE TO REQUEST NO. 17:

Defendants object to this request based on general objections 1 through 6, supra. Subject to and without waiving the foregoing objections, Defendants state that they have produced, or will produce, non-privileged documents in their possession, custody or control, if any, that are reasonably responsive to this request, subject to entry of an appropriate protective order in this case.

REQUEST NO. 18:

All documents concerning communications, whether to or from suppliers or customers or any other persons, that relate to MIT or the subject matter of the '790 Patent, the Tuschl Applications, or the License Agreement.

RESPONSE TO REQUEST NO. 18:

Defendants object to this request based on general objections 1 through 6, supra. Subject to and without waiving the foregoing objections, Defendants state that they have produced, or will

produce, non-privileged documents in their possession, custody or control, if any, that are reasonably responsive to this request, subject to entry of an appropriate protective order in this case.

REQUEST NO. 19:

All documents concerning any policy, guideline or agreement of Dharmacon or Fisher with respect to patent procurement, patent licensing and royalty rates.

RESPONSE TO REQUEST NO. 19:

Defendants object to this request based on general objections 1 through 6, supra. Defendants further object on the grounds that the words "policy, guideline or agreement" are vague and ambiguous. Subject to and without waiving the foregoing objections, Defendants state that they have produced, or will produce, non-privileged documents in their possession, custody or control, if any, that are reasonably responsive to this request, subject to entry of an appropriate protective order in this case.

REQUEST NO. 20:

All documents concerning any communication by or to persons other than MIT asserting patent infringement by Dharmacon or Fisher.

RESPONSE TO REQUEST NO. 20:

Defendants object to this request based on general objections 1 through 6, supra. Defendants further object on the grounds that this request is vague and ambiguous. Subject to and without waiving the foregoing objections, Defendants state that they have produced, or will produce, non-privileged documents in their possession, custody or control, if any, that are reasonably responsive to this request, subject to entry of an appropriate protective order in this case.

REQUEST NO. 21:

All documents passing between Defendants and any person who Defendants expect to offer testimony of at trial in this action, including, without limitation, any expert witness.

RESPONSE TO REQUEST NO. 21:

Defendants object to this request based on general objections 1 through 6, supra. Defendants further object to this request as premature, in that Defendants have not yet determined who they will offer as witnesses in the trial of this action.

REQUEST NO. 22:

All documents and things reviewed, considered or relied upon by any experts retained by Defendants in connection with this matter or that are a basis for each opinion to be reached by such experts.

RESPONSE TO REQUEST NO. 22:

Defendants object to this request based on general objections 1 through 6, supra. Defendants further object to this request as premature, in that Defendants have not yet determined who they will offer as expert witnesses in the trial of this action.

REQUEST NO. 23:

All documents and things, including but not limited to, reports, studies, books, articles or publications prepared by each expert retained by Defendants in this matter concerning the subject matter about which such expert is expected to testify.

RESPONSE TO REQUEST NO. 23:

Defendants object to this request based on general objections 1 through 6, supra. Defendants further object to this request as premature, in that Defendants have not yet determined who they will offer as expert witnesses in the trial of this action.

REQUEST NO. 24:

A sample of all siRNA products or services, or reverse transfection products or services, used, manufactured or sold by Defendants.

RESPONSE TO REQUEST NO. 24:

Defendants object to this request based on general objections 1 through 6, supra. Defendants further object on the grounds that this request is unlimited in time or scope. Subject to and without waiving the foregoing objections, Defendants state that they will make available, at Dharmacon's premises and upon reasonable notice, samples of certain products or services that are reasonably responsive to this request, subject to entry of an appropriate protective order in this case.

REQUEST NO. 25:

All. documents and things Defendants may use or intend to rely upon at trial.

RESPONSE TO REQUEST NO. 25:

Defendants object to this request based on general objections 1 through 6, supra. Defendant further objects on the grounds that the request is premature, and that the use of the words "use" and "rely upon" is vague and ambiguous.

REQUEST NO. 26:

All documents and things identified, relied upon, or referred to in response to MIT's First Set of Interrogatories.

RESPONSE TO REQUEST NO. 26:

Defendants object to this request based on general objections 1 through 6, supra. Subject to and without waiving the foregoing objections, Defendants state that they have produced, or will produce, non-privileged documents in their possession, custody or control, if any, that are

reasonably responsive to this request, subject to entry of an appropriate protective order in this case.

REQUEST NO. 27:

All documents and things identified, relied upon, or referred to in preparing Defendants' answers to the complaint filed by MIT in this action.

RESPONSE TO REQUEST NO. 27:

Defendants object to this request based on general objections 1 through 6, supra. Subject to and without waiving the foregoing objections, Defendants state that they have produced, or will produce, non-privileged documents in their possession, custody or control, if any, that are reasonably responsive to this request, subject to entry of an appropriate protective order in this case.

REQUEST NO. 28:

All documents Dharmacon relied upon in filing, or intends to rely upon at trial in support of, its affirmative defenses set forth in its answer to MIT's Complaint.

RESPONSE TO REQUEST NO. 28:

Defendants object to this request based on general objections 1 through 6, supra. Defendants further object on the grounds that this request is premature in that Dharmacon has not yet determined which documents it will use at trial, and on the grounds that the use of the words "rely upon" is vague and ambiguous. Subject to and without waiving the foregoing objections, Defendants state that they have produced, or will produce, non-privileged documents in their possession, custody or control, if any, that are reasonably responsive to this request, subject to entry of an appropriate protective order in this case.

REQUEST NO. 29:

All documents Dharmacon relied upon in filing, or intends to rely upon at trial in support of, its counterclaim for Breach of the Implied Covenant of Good Faith and Fair Dealing.

RESPONSE TO REQUEST NO. 29:

Defendants object to this request based on general objections 1 through 6, supra.  Defendants further object on the grounds that this request is premature in that Dharmacon has not yet determined which documents it will use at trial, and on the grounds that the use of the words "rely upon" is vague and ambiguous.  Subject to and without waiving the foregoing objections, Defendants state that they have produced, or will produce, non-privileged documents in their possession, custody or control, if any, that are reasonably responsive to this request, subject to entry of an appropriate protective order in this case.

REQUEST NO. 30:

All documents Dharmacon relied upon in filing, or intends to rely upon at trial in support of, its counterclaim for violation of Mass. Gen. L. ch. 93A, § 11.

RESPONSE TO REQUEST NO. 30:

Defendants object to this request based on general objections 1 through 6, supra.  Defendants further object on the grounds that this request is premature in that Dharmacon has not yet determined which documents it will use at trial, and on the grounds that the use of the words "rely upon" is vague and ambiguous.  Subject to and without waiving the foregoing objections, Defendants state that they have produced, or will produce, non-privileged documents in their possession, custody or control, if any, that are reasonably responsive to this request, subject to entry of an appropriate protective order in this case.

REQUEST NO. 31:

All documents Dharmacon relied upon in filing, or intends to rely upon at trial in support of, its counterclaim for Interference with Prospective Economic Advantage.

RESPONSE TO REQUEST NO. 31:

Defendants object to this request based on general objections 1 through 6, supra. Defendants further object on the grounds that this request is premature in that Dharmacon has not yet determined which documents it will use at trial, and on the grounds that the use of the words "rely upon" is vague and ambiguous. Subject to and without waiving the foregoing objections, Defendants state that they have produced, or will produce, non-privileged documents in their possession, custody or control, if any, that are reasonably responsive to this request, subject to entry of an appropriate protective order in this case.

REQUEST NO. 32:

All documents concerning Defendants' document retention policies or practices.

RESPONSE TO REQUEST NO. 32:

Defendants object to this request based on general objections 1 through 6, supra. Subject to and without waiving the foregoing objections, Defendants state that they have produced, or will produce, non-privileged documents in their possession, custody or control, if any, that are reasonably responsive to this request, subject to entry of an appropriate protective order in this case.

REQUEST NO. 33:

Copies of organizational charts sufficient to show Defendants' organizational structures and corporate management over the past two (2) years, and Dharmacon's corporate relationship with Fisher.

RESPONSE TO REQUEST NO. 33:

Defendants object to this request based on general objections 1 through 6, supra.  Defendants

further objects on the grounds that the words "corporate relationship" and "corporate

management" are vague and ambiguous.  Subject to and without waiving the foregoing

objections, Defendants state that they have produced, or will produce, non-privileged documents

in their possession, custody or control, if any, that are reasonably responsive to this request,

subject to entry of an appropriate protective order in this case.

Respectfully submitted,

Timothy C. Blank BBO # 548670
Michael S. Shin BBO # 658134
DECHERT LLP
200 Clarendon Street, 27th Floor
Boston, MA  02116
(617) 728-7154
Fax:  (617) 426-6567
Attorneys for Defendants

| | | NEW YORK |
|---|---|---|
| | One International Place | LOS ANGELES |
| | Boston, MA 02110-2600 | WASHINGTON |
| | Telephone 617.526.9600 | BOCA RATON |
| | Fax 617.526.9899 | NEWARK |
| | | PARIS |
| **PROSKAUER ROSE LLP** | | NEW ORLEANS |

**Kimberly A. Mottley**
Attorney at Law

Direct Dial 617-526-9616
kmottley@proskauer.com

September 13, 2005

<u>**Via Email**</u>

Timothy C. Blank, Esq.
Dechert LLP
200 Clarendon Street
27th Floor
Boston, MA 02116

Re:    <u>Massachusetts Institute of Technology v. Dharmacon, Inc. & Fisher Scientific
International, Inc.</u>, Civil Action No. 05-10156-PBS

Dear Tim:

I write concerning various outstanding discovery issues. Because of the tight schedule we're working with, we must resolve these issues expeditiously. Unfortunately, despite my repeated attempts to contact you to discuss several of these issues, you have not responded to my inquiries.

Thus, as to each of the issues addressed herein, please let me know no later than noon on Wednesday, September 14, 2005, whether your clients are willing to address MIT's concerns raised herein by providing the requested information or documents by close of business (5:00 p.m.) on Friday, September 16, 2005. If I don't get such confirmation from you by noon on Wednesday, MIT will consider its meet and confer obligations met, and seek appropriate relief from the Court.

**I.    <u>Defendants' Interrogatory Responses</u>**

Still unanswered from my August 25, 2005 letter are MIT's requests for supplementation of Defendants' responses to Interrogatory Nos. 1, 2, and 7. I am also still awaiting your executed signature pages from both sets of discovery responses.

I also will ask, again, that you permit me to share the response to Interrogatory No. 8 with MIT at this time. Nothing therein is so highly confidential that the folks at MIT's Technology Licensing Office should not be able to see the response.

PROSKAUER ROSE LLP

Timothy C. Blank, Esq.
September 13, 2005
Page 2

## II.    Defendants' Document Productions

As a whole, Defendants' document productions remain grossly deficient.  I inquired of you on August 25, 2005, whether the document productions we have received are complete, or whether Defendants intend to supplement their productions.  I followed up on that request by email last Friday, September 9, 2005.  As I still have not heard back from you in response to these requests, I assume Defendants consider their productions complete at this time.

### A.    Fisher's Document Production

Fisher has produced only **6 documents**, comprising **16 pages total**, in response to MIT's document requests.  Moreover, the documents Fisher produced merely consist of correspondence with MIT concerning resolution of the license dispute.

Fisher's failure to produce documents in any meaningful capacity is blatant disregard for its discovery obligations as a party to this suit.  Please confirm by noon on Wednesday, September 14, that we will receive Fisher's complete document production no later than close of business on Friday, September 16.

### B.    Major Deficiencies In Dharmacon's Production

Dharmacon has failed to produce entire groups of documents responsive to MIT's document requests.  Indeed, the vast majority of Dharmacon's 3550 page production consists of documents which are either publicly-available (e.g., print-outs of websites, publications, public PTO filings) or MIT should already have (e.g., correspondence between Dharmacon and MIT concerning negotiation of the license agreement).  The internal Dharmacon documents provided are scant, and do not reflect a good faith effort to respond to MIT's requests.

1.    Internal documents concerning negotiation and interpretation of the license agreement.

Dharmacon's production related to negotiation of the License Agreement is limited to documents between Dharmacon and MIT.  Dharmacon has failed to produce *any* internal documents about negotiation or interpretation of the license agreement.  Certainly, documents of this nature exist, including for example drafts of the license agreement, and internal correspondence (including email) and meeting notes concerning the negotiation and interpretation of the agreement and Dharmacon's decision to change its method of royalties calculation.

These documents are responsive to at least MIT's Request Nos. 1, 2, 3, 4, 5, 6, 7, 8, and 18, and must be produced.

PROSKAUER ROSE LLP

Timothy C. Blank, Esq.
September 13, 2005
Page 3

2.    Internal documents concerning the Sabatini patent, validity thereof and infringement thereof.

Dharmacon has failed to provide any internal documents concerning the Sabatini patent. It is impossible that Dharmacon has no internal documents about Sabatini, as its collaboration with Akceli, Inc. was based on Akceli's rights as licensee of the Sabatini patent from MIT.

As stated in Dharmacon's November 3, 2003 press release, Dharmacon and Akceli, Inc. entered into a "research collaboration to study the utility of combining two powerful technologies: siRNA-mediated gene silencing and whole-well reverse transfection." The reverse transfection technology Akceli brought to that collaboration was based on its role as licensee of the Sabatini patent.

Despite the clear relevance of the Dharmacon-Akceli relationship to this case, Dharmacon has not produced a single document concerning this relationship – not even the research collaboration agreement. Such documents have relevance to Dharmacon's reverse transfection products, and to its knowledge and understanding of the claims of the Sabatini patent, and would be responsive to at least MIT's Request Nos. 3, 4, 5, 6, 7, 8, 9, 11, 12, and 18, and therefore must be produced.

3.    Internal documents concerning Dharmacon's products.

Dharmacon's production of internal documents concerning its products is extremely limited, and is lacking. Such documents are directly responsive to at least MIT's Request Nos. 9, 10, and 12.

At least the following types of documents should exist for each product, and must be produced: product proposals (from scientists or management); notes, internal memoranda, lab notebooks, test results, evaluations and analyses, and progress reports concerning product development and manufacture; material safety data sheets; standard operating procedures for product manufacture; and documents concerning prototypes of each product. Documents concerning comparison of any proposed product with the Sabatini patent or Tuschl applications also must be produced.

4.    Documents from Fisher's acquisition of Dharmacon.

Notably absent from Dharmacon's production are any documents from Fisher's acquisition of Dharmacon. Certainly, documents were created during that acquisition which discuss Dharmacon's products at issue here, the license agreement with MIT, the value of Dharmacon's products based on the licensed technology, and its projected earnings (and the

PROSKAUER ROSE LLP

Timothy C. Blank, Esq.
September 13, 2005
Page 4

impact of its royalties obligations on those projections).  Such documents would include at least communications (electronic and printed, both internal to Dharmacon and shared with Fisher, and any other entity involved in the transaction), notes and presentations from meetings, and business plans.

These types of documents are responsive to at least MIT's Request Nos. 1, 2, 3, 4, 5, 6, 7, 9, 11, 12, 13, and 18, and therefore must be produced.

>        5.        Marketing and sales correspondence.

Dharmacon has produced no correspondence (either internal to Dharmacon, or between Dharmacon and outside entities or persons) showing how it markets and sells its products at issue in this case.  Such correspondence (including electronic communications) is relevant, and is responsive to at least MIT's Request Nos. 14, 15, 17, and therefore must be produced.

>        6.        Documents concerning patent procurement, licensing, and infringement.

Despite its agreement to produce documents concerning patent its policies on patent procurement, licensing and royalty rates in response to MIT's Request No. 19, Dharmacon has not provided any such documents.  Similarly, Dharmacon has failed to provide any documents concerning communications with persons other than MIT asserting patent infringement by Dharmacon, despite its agreement to produce such documents in response to MIT's Request No. 20.  These documents must be produced.

>        7.        Product samples.

In response to MIT's Request No. 21, Dharmacon states that it will make the requested product samples available at Dharmacon's premises in Colorado.  MIT would like to procure the samples for its use in this litigation.  Please let me know the cost of purchasing these samples, and having the samples shipped to me.

>        8.        Document retention policies and organizational charts.

In response to MIT's Request Nos. 32 and 33, Dharmacon agreed to produce documents concerning its retention policies and practices, and corporate organization charts.  No such documents appear in Dharmacon's production.  These documents must be produced.

**PROSKAUER ROSE LLP**

Timothy C. Blank, Esq.
September 13, 2005
Page 5

    **C.**    **Minor Problems Identified in Dharmacon's Production**

      The following are what appear to be clerical-type problems identified in Dharmacon's production:

      1.    Several communications produced are incomplete documents, as they are missing either pages therein or attachments thereto, including at least the following documents: DHARM-722; 726-727; 781-782; 785; 786; 797-798; 799-803; 808-810; 891; 898-902; 904-905; 906-907; 909; and 910.  Please provide the missing pages from these documents immediately.

      2.    There is a gap in the Bates numbering of Dharmacon's production, from DHARM000738-000744.  Please confirm that this gap was left intentionally, and thus there is not a document missing from the production.

      3.    Please confirm that the document bearing Bates No. DHARM-1374 was mistakenly copied.

**III.**    **Privilege Log**

      In response to several discovery requests, Defendants have refused to provide information and withheld documents based on the attorney-client privilege or work product doctrine.  Fed. R. Civ. P. 26(b)(5) requires that

      [w]hen a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

We have not yet received any privilege log from Defendants.  Please provide a privilege log for Defendants' discovery responses immediately.

**IV.**    **Depositions**

      I asked for deposition availability of Dr. Scaringe, Dr. Marshall, Mr. Fuhrman, and Mr. Foster over a month ago – on August 12, 2005.  Despite my repeated follow-up requests for these dates (e.g., including those in my correspondence on August 18, August 24, September 6, and September 9), you still have not provided them.  In your message left on my voicemail Friday evening, September 9, you stated that you are working on getting us dates, it's just taking you "a little while."  As stated in my email to you earlier that day, without that information in

PROSKAUER ROSE LLP

Timothy C. Blank, Esq.
September 13, 2005
Page 6

hand, we'll have to serve deposition notices without it. If I don't hear from you with a meaningful offer of availability for these witnesses by noon on Wednesday, September 14, we will be sending deposition notices for dates convenient to our schedules.

**V.**     **Protective Order**

       As you know, MIT proposed allowing specified employees of each party (for MIT, Irene Abrams, Aaron Schwartz and Lita Nelsen) to have access to highly confidential technical documents, so that both sides can work with their clients in trying this case. As we discussed, these individuals would not need access to highly confidential financial information (e.g., licensing policies), as in that context MIT and Defendants may have competing interests. However, as to technical, non-financial documents, MIT's Technology Licensing Office does not compete with Dharmacon, and the individuals designated would agree to be bound by the terms of the protective order (and thus, agree not to use any of that technical information for purposes other than assisting us with trying this case).

       I understand from your Friday voicemail that your clients remain unwilling to agree to allow anyone at MIT to have access to any of Defendants' Highly Confidential documents. With this issue remaining outstanding, I will be filing a motion with the Court as soon as possible, identifying the text upon which the parties are in agreement, and the issue which remains in dispute.

*       *       *

       I look forward to hearing from you on these issues by noon on September 14, 2005.

Very truly yours,

Kimberly A. Mottley

**Mottley, Kimberly**

| | |
|---|---|
| **From:** | Mottley, Kimberly |
| **Sent:** | Tuesday, October 04, 2005 12:03 PM |
| **To:** | 'Blank, Timothy' |
| **Subject:** | MIT/Dharmacon, Fisher |

Tim -

I write to address some remaining outstanding issues:

1.      I'm still waiting to hear from you whether you are authorized to accept service on Steven Scaringe's behalf.  Can you please let me know?  Thanks.

2.      I expect that you are still working on a supplemental production, as we have not yet received documents related to Akceli, internal correspondence/diligence/business plan documents concerning the Fisher-Dharmacon acquisition, nor your supplemental responses to Interrogatories 1 and 2.  Can you please confirm that we'll receive the remainder of your clients' supplementation, and the privilege log, by end of the day tomorrow?  Thanks.

3.      I'm still waiting to hear from you whether the attachments to the documents identified in Section II.C.1 of my September 13 letter can be located.  Please let me know as soon as possible.

Thanks.

Kim

Kimberly A. Mottley, Esq.
Proskauer Rose LLP
One International Place - 22nd Floor
Boston, MA 02210
Tel.  617-526-9616
Fax. 617-526-9899
kmottley@proskauer.com

**Mottley, Kimberly**

| | |
|---|---|
| **From:** | Mottley, Kimberly |
| **Sent:** | Tuesday, October 11, 2005 1:22 PM |
| **To:** | 'Blank, Timothy' |
| **Cc:** | MIT_Dharmacon |
| **Subject:** | MIT/Dharmacon, Fisher |

Hi Tim -

Following up on my voicemail this morning, can you please let me know when you're available this afternoon to talk about the following issues:

1 - the letter I sent last Friday concerning MIT's infringement claim

2 - when I can expect to receive the rest of Defendants' supplemental discovery (documents, interrogatory responses, and privilege log)

3 - dates for depositions of Scaringe, Fuhrman and Marshall

Thanks.

Kim

Kimberly A. Mottley, Esq.
Proskauer Rose LLP
One International Place - 22nd Floor
Boston, MA 02210
Tel. 617-526-9616
Fax. 617-526-9899
kmottley@proskauer.com

**PROSKAUER ROSE LLP**

One International Place
22nd Floor
Boston, MA  02110-2600
Telephone 617.526.9600
Fax 617.526.9899

NEW YORK
LOS ANGELES
WASHINGTON
BOCA RATON
NEWARK
PARIS

**Kimberly A. Mottley**

Direct Dial 617.526.9616
kmottley@proskauer.com

October 25, 2005

*__Via Email__*

Timothy C. Blank
Dechert LLP
200 Clarendon Street
27th Floor
Boston, MA 02116-5021

> Re:   Massachusetts Institute of Technology v. Dharmacon, Inc. and Fisher Scientific
>         International, Inc., Civ. No. 05-10156 (PBS)

Dear Tim:

I write concerning several outstanding discovery issues we need to discuss and resolve as soon as possible.

1.    <u>Supplemental Discovery</u>.  As you know, we have been awaiting Defendants' supplementation of its discovery responses for two months now.

I first addressed the deficiencies in Defendants' Interrogatory Responses by letter on August 25, 2005.  I raised those issues again in my September 9 email and September 13 letter. In our ensuing conversations, you agreed to supplement Defendants' Responses to Interrogatory Nos. 1 and 2.

In our September 19 conversation, you stated that you would supplement these responses by September 23.  Having not received the responses, I followed up by email on October 4, 2005.  On October 7, 2005, you told me I would receive the supplemental responses that day. On October 11, 2005, having still not received the supplemental responses, I wrote again asking when I could expect them.  Again, on October 17, 2005, you told me I would receive the supplemental responses by Friday, October 21, 2005.  I still have not received the responses.

Your response to Interrogatory No. 2 is particularly important, as it should provide information helpful for us in identifying deponents for our next round of fact depositions.  Will you provide your supplemental responses to these interrogatories by close of business tomorrow, October 26, 2005?

PROSKAUER ROSE LLP

Timothy C. Blank
October 25, 2005
Page 2


Similarly, I first addressed deficiencies in Defendants' document productions by letter on September 13, 2005. You agreed to supplement Defendants' productions for certain documents, including documents relevant to Fisher's acquisition of Dharmacon, including the deal documents, and internal correspondence/diligence/business plan documents concerning the Fisher-Dharmacon acquisition. You also stated that the diligence documents may be in the hands of a third-party, and that you would let me know the name of that third-party.

On September 27, 2005, you sent us a supplemental production, which lacked the internal documents referenced above concerning the Fisher-Dharmacon acquisition (other than the merger agreement and disclosure schedules). On October 4, 2005, I followed up by email, inquiring as to when we would receive these additional supplemental documents. On October 11, 2005, I wrote again asking when I could expect your supplemental production. Again, in our October 17, 2005 conversation, you represented that whatever supplemental production you were sending would be sent to us by Friday, October 21, 2005. We still have not received these documents.

This supplemental production will impact our response to your inquiry about Fisher's continued involvement in this case. We also need the identity of the third-party entity that might have diligence documents from this deal in its possession. Will you produce these supplemental documents, and the name of that entity, by close of business tomorrow?

At this point, I don't think we have any disagreement that you have agreed to produce this supplemental discovery. However, in light of our calendar, we need this supplementation now in order to prepare for the upcoming depositions. If we do not have the supplementation by Monday, we will be filing a motion with the Court on Monday addressing these issues. Once our motion is filed, we would be happy to continue discussions before your opposition brief is due.

We also discussed on several occasions the fact that you produced a number of documents without the attachments thereto. You stated that you were looking into this. Can you let us know where these documents are?

Similarly, I had asked you to confirm, and you confirmed, that Defendants claim to have no non-privileged internal documents related to negotiation or interpretation of the license agreement (as none have been produced). In light of the documents MIT has produced which appear to have been created by Dharmacon and given to MIT during the negotiation process (e.g., MIT0001351-1352), we again find this hard to believe. Please confirm that your production inquiry included a search of any back-up tapes Dharmacon might have as to this issue, as well as any files kept by Dr. Scaringe during the time the license was being negotiated.

Also, we have identified five Dharmacon customers, per your request, so that you can discuss with your client production of documents pursuant to MIT's Request Nos. 14, 15, and 17:

**PROSKAUER ROSE LLP**

Timothy C. Blank
October 25, 2005
Page 3

Novartis, Celera Genomics, B-Bridge International, Merck Research Labs, and Johns Hopkins University.  Please let us know whether we can reach agreement on production of the requested documents related to these five entities, so that we can assess how to move forward on this issue.

      2.     <u>Privilege Log</u>.  I understand your position that you will not be supplementing your descriptions of the documents listed on Defendants' privilege log.  However, in your October 17, 2005 email and during our conversation that day, you agreed to provide me with a list identifying the people on the privilege log.  Over a week has past, and we have not received that list.  Please send me the list immediately, because we intend to bring this matter to the Court.

      3.     <u>Depositions</u>.  I took our tentative deposition schedule back to the individuals involved, and have to make a few minor modifications.  I propose the following schedule, which is much more workable than the one you and I discussed on Friday, and should alleviate your concern with potential conflicts on November 14:

> November 15:  Tuschl (starting 2:00 p.m. in NY (and running as late as appropriate))
> November 21:  Bartel (Boston)
> November 22:  Abrams (Boston)
> November 29-December 1:  Scaringe, Marshall and Fuhrman (Colorado)
> December 2:   Nelsen (Boston)
> December 6:   Zamore (Worcester)
> December 19:  Sharp (Boston)

      Please let me know if this schedule works for you.  Please also let me know the order of the witnesses in Colorado so we can plan accordingly.

      Also, as referenced above, once we receive your supplementation of Defendants' Response to Interrogatory No. 2, we expect to be noticing additional depositions.  With the December 31, 2005 fact discovery deadline fast-approaching, it is imperative that we get that supplementation quickly so that we can begin scheduling those additional depositions, if necessary.

      4.     <u>Protective Order</u>.  We agreed to postpone the hearing on our motion for protective order based on your representation that we could work together to reach agreement on the language therein.  On October 19, 2005 (the same day we reached that agreement), I sent a revised draft of the order to Mike Shin, after discussing the necessary changes with him.

      I asked for a response to this draft in my October 20 email, and during our conversation on October 21.  During that conversation, you said that Mike would be sending me a revised version of the order, with slight tweaking.  Again, yesterday, October 24, 2005, you stated that you would send me the proposed changes.  I still have not received that draft.

PROSKAUER ROSE LLP

Timothy C. Blank
October 25, 2005
Page 4

As you know, the hearing with Magistrate Judge Bowler was only postponed until November 3, 2005, which means we need to move quickly on this. Please send me your marked-up draft so that we can finalize the order and get it filed with the Court.

5.    <u>Experts</u>. Following up on our conversation last Friday concerning the experts we have identified, Joyce Brinton is a licensing expert who may testify about typical licensing practices, particularly those involving educational institutions and biotechnology. Ms. Brinton may also provide testimony about the interpretation of the License Agreement in light of her experience in the field. Dr. Norbert Perrimon is a technical expert who may testify about the technology involved in this litigation in general, the patent applications in particular, and standard methods of purchase and use of that technology.

*          *          *

Can you please let me know a time today that you are available to discuss these issues? I'm available for the remainder of the afternoon. If today doesn't work, pick any time tomorrow that you are available, and I will work it into my schedule.

Thanks.

Sincerely,

Kimberly A. Mottley

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 05-10156-PBS |
| DHARMACON, INC. and FISHER SCIENTIFIC INTERNATIONAL, INC., | ) ) ) | |
| Defendants. | ) ) ) | |

## PLAINTIFF'S FIRST SET OF INTERROGATORIES (NOS. 1-16)

Plaintiff Massachusetts Institute of Technology ("MIT"), pursuant to Rule 33 of the Federal Rules of Civil Procedure, hereby requests that Defendants Dharmacon, Inc. ("Dharmacon") and Fisher Scientific International, Inc. ("Fisher") provide answers to the following Interrogatories fully, in writing, and under oath, and that the answers be served within thirty (30) days of the date of service of this request at the offices of PROSKAUER ROSE LLP, One International Place, 22nd Floor, Boston, MA 02110 or at another mutually convenient location.

These Interrogatories are to be deemed continuing and any information secured subsequent to service of Defendants' answers hereto must be furnished to MIT upon receipt of such information in supplemental answers in accordance with Federal Rule of Civil Procedure 26(e).

<u>DEFINITIONS</u>

Notwithstanding any definition set forth below, each word, term, or phrase used in this set of Interrogatories is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.  For purposes of these Interrogatories, the following definitions, regardless of whether the defined word is capitalized, shall apply:

A.     "MIT" means the Massachusetts Institute of Technology, including its servants, agents, representatives, employees, principals, attorneys, and all other persons, forms or corporations acting with it or on its behalf.

B.     "Dharmacon" means Dharmacon, Inc., including its servants, agents, representatives, employees, principals, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest, successors-in-interest, and all other persons, forms or corporations acting with it or on its behalf.

C.     "Fisher" means Fisher International Industries, Inc., including its servants, agents, representatives, employees, principals, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest, successors-in-interest, and all other persons, forms or corporations acting with it or on its behalf.

D.     "Defendants" means Dharmacon, Fisher and both of those parties.

E.     "License Agreement" means the December 21, 2001 license agreement executed by MIT and Dharmacon.

F.     "The Tuschl Applications" refers to the patents and applications listed in Appendices A and B to the License Agreement, and any United States, foreign, or PCT patent applications claiming priority to or from these patents or applications.

G.     "'790 Patent" means U.S. Patent No. 6,544,790.

H.     The term "prior art" encompasses by way of example and without limitation, the subject matter described in each and every subdivision of 35 U.S.C. §§ 102-03.

I.     "siRNA products or services" refers to any product or service which is used with, or is capable of being used in conjunction with, siRNA material.

J.     "Reverse transfection products or services" refers to any products or services using or employing reverse transfection technology.

K.     "All" means "any and all."

L.     Any word written in the singular shall be construed as plural and vice versa.

M.     "Concerning" means referring to, relating to, describing, evidencing, or constituting.

N.     As used herein, the term "Document[s]" shall be synonymous in meaning and equal in scope to the usage of the term in Fed. R. Civ. P. 34(a).  Electronic correspondence is also included within the meaning of this term.  A draft or non-identical copy is a separate document within the meaning of this term.

O.     As used herein, the term "or" means "and/or."

P.     As used herein, the term "Communication[s]" means all letters, memoranda, notes and messages, whether printed, typed or handwritten, including but not limited to all electronic modes of correspondence such as electronic mail and faxes, and including documents reflecting conversations and meetings.

Q.     "Person" means any natural person or juridical person including any corporation, partnership, sole proprietorship, agency, or business association of any type or character.

R.    As used herein, the term "Identify" means:

    a)    with respect to persons, give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, the present or last known place of employment, his/her title and position with that employer; and

    b)    with respect to documents, give, to the extent known, the: (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s), and recipient(s).

S.    As used herein, the term "state the basis" means, when referring to a particular claim, assertion, allegation, or contention,

    a)    identify each and every document (and, where pertinent, the section, article, or subpart thereof) which forms any part of the party's source of information regarding the alleged facts or legal conclusions referred to by the interrogatory;

    b)    identify each and every communication which forms any part of the party's source of information regarding the alleged facts or legal conclusions referred to by the interrogatory;

    c)    state separately the acts or omissions to act on the part of any person (identifying the acts or omissions to act by stating their nature, time, and place and identifying the persons involved) which form any part of the party's information regarding the alleged facts or legal conclusions referred to in the interrogatory; and

    d)    state separately any other fact which forms the basis of the party's information regarding the alleged facts or legal conclusions referred to in the interrogatory.

## INSTRUCTIONS

A.      If Defendants object to any Interrogatory or any subpart thereof, state all grounds for the objection with specificity and answer the Interrogatory to the extent that it is not objectionable.

B.      When a claim of privilege is asserted in objection to any Interrogatory, or any subpart thereof, please identify in the objection the nature of the privilege that is being claimed with respect to each part or subpart.  If the privilege is being asserted in the connection with a claim or defense governed by state law, indicate the particular privilege rule that is being invoked.

C.      If all of the information furnished in answer to all or part of any Interrogatory is not within the personal knowledge of Defendants, please identify each person to whom all or any part of the information furnished is a matter of personal knowledge, and identify each person who communicated to MIT any part of the information furnished.

D.      In the case of any document to be identified in answer to any Interrogatory or part thereof, Defendants may, if they choose, in lieu of identifying such document, attach a true and correct copy of the document, identifying the particular Interrogatory part or subpart in response to which it is submitted.

E.      When an Interrogatory contains more than one part or subpart, identify your answer (or the documents produced in lieu thereof), by part or subpart.

INTERROGATORIES

Interrogatory No. 1:

Identify each siRNA product or service or reverse transfection product or service used, made, sold or offered for sale by Defendants.

Response to Interrogatory No. 1:


Interrogatory No. 2:

For each product or service identified in Interrogatory No. 1, identify all persons in charge of performing the following activities, and identify the persons most knowledgeable about each named activity:  manufacturing; sales; profits; research and development; patent activities; marketing; production; advertising; licensing; and regulatory submissions.  For each such individual identified, identify the time period and nature of involvement in each activity.

Response to Interrogatory No. 2:


Interrogatory No. 3:

For each product or service identified in Interrogatory No. 1:

      a)      separately identify all customers, purchasers, consumers and/or distributors;

      b)      state the price per unit, lease terms, annual and monthly sales revenue, sales volume, net and gross profits, including the method for calculating each of the foregoing; and

      (c)      state the royalties paid to MIT on sales of each product or service, including the methodology for calculating such royalties.

Response to Interrogatory No. 3:

Interrogatory No. 4:

For each product or service identified in Interrogatory No. 1, state the manufacturing cost per

unit, separately identifying fixed and variable costs and the methodology for calculating the

foregoing.

Response to Interrogatory No. 4:


Interrogatory No. 5:

If you contend that any of the products or services identified in Interrogatory No. 1 are not

royalty-bearing products under the License Agreement, please identify each such product or

service and state the basis for your reasons for this contention.

Response to Interrogatory No. 5:


Interrogatory No. 6:

If you contend that royalties due MIT for any of the products or services identified in

Interrogatory No. 1 are to be based on anything other than the sale price for the entire products or

services with which the siRNA product or service or reverse transfection product or service is

used or sold, please identify each such product or service and state the basis for this contention

and the methodology of calculating royalties on that product or service.

Response to Interrogatory No. 6:

Interrogatory No. 7:

State the basis for Defendants' contention that the '790 Patent is invalid, and identify all prior art Defendants contend supports that contention.

Response to Interrogatory No. 7:


Interrogatory No. 8:

State the basis, including a claim chart, for Defendants' contention that none of its products or services infringe any of the claims of the '790 Patent.

Response to Interrogatory No. 8:


Interrogatory No. 9:

State whether Defendants have ever solicited or received, directly or indirectly, from any source, or prepared on their own any opinion, search, report or advice, written or oral, concerning the infringement, noninfringement, validity or enforceability of the '790 Patent, and identify all documents and prior art constituting, concerning, or identified by the opinion, search, report or advice; and all persons who prepared, presented or assisted in the preparation of such opinion, search, report or advice.  If such opinion, search, report or advice was solicited but never received, identify all persons who made the inquiry or investigation.

Response to Interrogatory No. 9:

Interrogatory No. 10:

If you contend that any of the Tuschl Applications are invalid, state the basis for such a

contention, and identify all prior art Defendants contend supports that contention.

Response to Interrogatory No. 10:


Interrogatory No. 11:

If you contend that any of the products or services identified in Interrogatory No. 1 do not

infringe the claims of the Tuschl Applications, state the basis for such a contention, including a

claim chart.

Response to Interrogatory No. 11:


Interrogatory No. 12:

State whether Defendants have ever solicited or received, directly or indirectly, from any source,

or prepared on their own any opinion, search, report or advice, written or oral, concerning the

infringement, noninfringement, validity or enforceability of the Tuschl Applications, and identify

all documents and prior art constituting, concerning, or identified by the opinion, search, report

or advice; and all persons who prepared, presented or assisted in the preparation of such opinion,

search, report or advice.  If such opinion, search, report or advice was solicited but never

received, identify all persons who made the inquiry or investigation.

Response to Interrogatory No. 12:

<u>Interrogatory No. 13:</u>

With respect to these Interrogatories, identify:

     a)     all persons who provided any response to any of these Interrogatories, specifying the response provided by each such person;

     b)     all persons who provided any information in connection with the responses to any of these Interrogatories or MIT's First Request for the Production of Documents and Things ("Document Requests"), specifying the information provided by each such person;

     c)     all persons interviewed for the purpose of answering these Interrogatories or the Document Requests;

     d)     all persons whose files were reviewed for the purposes of gathering or identifying documents responsive to these Interrogatories or the Document Requests, and identify the physical location and title by file and file drawer of every file searched for any information on which Defendants base their responses to these Interrogatories and Document Requests, or any part thereof, to any of the foregoing Interrogatories; and

     e)     all documents and things responsive to these Interrogatories or the Document Requests which have been destroyed during the pendency of this litigation or the twelve months prior to the initiation of this litigation, and describe the subject matter of each such document and thing, and state the reason for its destruction.

<u>Response to Interrogatory No. 13:</u>

Interrogatory No. 14:

Identify each Person Defendants may call to testify at trial as a fact or expert witness, and for each such witness, provide:

    a)     the name, address, occupation and employer of the witness;

    b)     the subject matter on which each witness is expected to testify;

    c)     that witness's basis for testifying;

    d)     the substance of the facts and any expert opinions to which each such witness is expected to testify;

    e)     a summary of the grounds for each such expert opinion;

    f)     each expert report prepared by such witness, and identify all documents and things reviewed, considered or relied upon by any expert retained by Defendants in this matter in respect to their opinions related to this litigation.

Response to Interrogatory No. 14:

<u>Interrogatory No. 15:</u>

State separately the factual basis for each of the following Affirmative Defenses raised by

Defendants in this case:

    a)     MIT's claims are barred by the doctrine of estoppel;

    b)     MIT's claims are barred by the doctrine of waiver;

    c)     MIT's claims are barred by MIT's unclean hands;

    d)     MIT's claims are barred by failure of consideration;

    e)     MIT's claims are barred by the doctrine of laches;

    f)     MIT's claims are barred by the Statute of Limitations;

    g)     MIT's claims are barred by the Statute of Frauds;

    h)     MIT's claims are barred by MIT's misrepresentations;

    i)     MIT's patent infringement claims are barred by the doctrine of misuse;

    j)     MIT's claims are barred as a result of interference with economic advantage; and

    k)     MIT's patent claims were brought in bad faith.

<u>Response to Interrogatory No. 15:</u>

Interrogatory No. 16:

State the factual basis for your Counterclaim that:

    a)    MIT breached the implied covenant of good faith and fair dealing;

    b)    MIT violated Mass. Gen. L. ch. 93A, §11; and

    c)    MIT interfered with Dharmacon's Prospective Economic Advantage.

Response to Interrogatory No. 16:

                              MASSACHUSETTS INSTITUTE OF TECHNOLOGY,

                              By its Counsel,

                              Steven M. Bauer (BBO #542531)
                              Kimberly A. Mottley (BBO #651190)
                              PROSKAUER ROSE LLP
                              One International Place
                              Boston, MA  02110
                              Tel: (617) 526-9600
                              Fax: (617) 526-9899

Dated:  July 18, 2005

### Certificate of Service

    I hereby certify that on July 18, 2005, a true and correct copy of the foregoing document was served upon opposing counsel by hand.

                              Kimberly A. Mottley

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY, | ) ) ) |  |
| Plaintiff, | ) ) ) ) | **THIS DOCUMENT CONTAINS CONFIDENTIAL AND HIGHLY CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER** |
| v. | ) ) |  |
| DHARMACON, INC. and FISHER SCIENTIFIC INTERNATIONAL, INC., | ) ) ) |  |
| Defendants. | ) ) |  |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S
## FIRST SET OF INTERROGATORIES (NOS. 1-16)

Defendants Dharmacon, Inc. ("Dharmacon") and Fisher Scientific International, Inc.

("Fisher") (together, "Defendants") hereby respond to Plaintiff's First Set of Interrogatories

(Nos. 1-16), as follows:

### General Objections

Defendants make the following general objections to these interrogatories. Each of these

general objections is incorporated into each of Defendants separate responses as though fully set

therein. Further, Defendants submit these responses to interrogatories without conceding the

relevancy or materiality of the subject matter of any interrogatory and without prejudice to

Defendants' right to object to further discovery or to object to the admissibility of any proof on

the subject matter of any response at the time of trial, or to correct, supplement or clarify any of

these responses.

1.      Defendants, object generally to these interrogatories to the extent they are vague and incomprehensible.

2.      Defendants object generally to these interrogatories to the extent that they are overbroad and burdensome, seek information not relevant to the subject matter of this case and are not reasonably calculated to lead to the discovery of admissible evidence.

3.      Defendants object generally to these interrogatories to the extent they seek information protected by the attorney-client privilege and/or that constitutes work product.

4.      Defendants object generally to these interrogatories to the extent they seek Defendants' confidential and/or proprietary technical or business information beyond the scope of any protective order in this case.

5.      Defendants object generally to the scope of these interrogatories as they are unnecessarily extensive, burdensome and repetitive.

6.      Defendants object generally to these interrogatories to the extent they are premature and Defendants are unable to respond to them until MIT has produced documents requested by Defendants.

7.      Defendants object generally to these interrogatories and to the instructions to the extent they seek to impose obligations beyond those set forth in the Federal Rules of Civil Procedure.

8.      Defendants object generally to these interrogatories to the extent that the interrogatories, including subparts, exceed the limit of 25 set forth in the Federal Rules of Civil

Procedure.  Defendants will count the subparts in these interrogatories and respond accordingly,

reserving their right to object to any interrogatories now or in the future beyond the limit of 25.

Interrogatory No. 3:

For each product or service identified in Interrogatory No. 1:

    a)    separately identify all customers, purchasers, consumers and/or distributors;

    b)    state the price per unit, lease terms, annual and monthly sales revenue, sales volume, net and gross profits, including the method for calculating each of the foregoing; and

    (c)    state the royalties paid to MIT on sales of each product or service, including the methodology for calculating such royalties.

Response to Interrogatory No. 3:

Defendants object to this interrogatory based on general objections 1 through 8, supra. Notwithstanding, and subject to, these objections, based on Defendants' current state of knowledge, Defendants state that pursuant to Fed. R. Civ. P. 33(c), they have produced, or will produce, sufficient documents from which information responsive to this interrogatory may be obtained, subject to entry of an appropriate protective order.

Interrogatory No. 4:

For each product or service identified in Interrogatory No. 1, state the manufacturing cost per unit, separately identifying fixed and variable costs and the methodology for calculating the foregoing.

<u>Response to Interrogatory No. 4</u>:

Defendants object to this interrogatory based on general objections 1 through 8, supra.

Notwithstanding, and subject to, these objections, based on Defendants' current state of

knowledge, Defendants state that pursuant to Fed. R. Civ. P. 33(c), they have produced, or will

produce, sufficient documents from which information responsive to this interrogatory may be

obtained, subject to entry of an appropriate protective order.

## **VERIFICATION**

I, William Marshall of Dharmacon, Inc., hereby certify that the foregoing responses are correct to the best of my knowledge, information and belief based upon information provided to me by others at Dharmacon, Inc.

William Marshall

# PROSKAUER ROSE LLP

One International Place
22nd Floor
Boston, MA  02110-2600
Telephone 617.526.9600
Fax 617.526.9899

NEW YORK
LOS ANGELES
WASHINGTON
BOCA RATON
NEWARK
PARIS

**Kimberly A. Mottley**

Direct Dial 617.526.9616
kmottley@proskauer.com

November 10, 2005

*Via Email*

Timothy C. Blank
Dechert LLP
200 Clarendon Street
27th Floor
Boston, MA 02116-5021

> Re:    Massachusetts Institute of Technology v. Dharmacon, Inc. and Fisher Scientific
> International, Inc., Civ. No. 05-10156 (PBS)

Dear Tim:

I write concerning additional deficiencies noted in Defendants' discovery produced to date.

## I.    Allegedly Non-Royalty-Bearing Components of Dharmacon's siRNA Products.

These deficiencies relate to what Defendants allege to be "non-royalty-bearing" components of their siRNA products, several of which Defendants describe as "services." In response to MIT's Interrogatory No. 6, Defendants list four product groups, three of which contain these components.

### A.    Group 2

Within Group 2, Defendants state that the value of certain "services" is not royalty-bearing. These "services" include "desalting, deprotecting, duplexing and various types of purification," and specifically include "Dharmacon's Option A4, B and C custom synthesis product lines, and customer synthesis orders where Dharmacon is requested by the customer to process the molecule for convenience in customer handling." Defendants further claim that these services are provided "for convenience in customer handling."

Only a handful of documents have been produced relating to Dharmacon's Option A4, B and C custom synthesis. Many more documents should exist for each of these procedures, such as product proposals, notes, internal memoranda, lab notebooks, test results, evaluations and analyses, and progress reports concerning product development and manufacture; documents

PROSKAUER ROSE LLP

Timothy C. Blank
November 10, 2005
Page 2

concerning prototypes of each product; and documents disclosing the cost of developing and implementing these products and services. In particular, documents must exist which provide support for the added customer convenience through provision of these "services."

**B.    Groups 3 and 4**

In Group 3, Defendants describe an allegedly non-royalty bearing "service" component of those products, including use of Dharmacon's SMARTselection or SMARTpooling techniques, as well as other chemical modification of the siRNA "using Dharmacon technologies." Listed as examples of these types of products are "SMARTpools, SMARTselected duplexes and siGENOME products."

Defendants claim in response to Interrogatory No. 6 that use of these methods will "maximize the siRNA molecule's stability and minimize its off-target effects." Defendants also state that Dharmacon's proprietary technology selects and designs a specific sequence to meet a customer's needs."

In Group 4, Defendants describe these products as "kits" in which the siRNA is bundled with ancillary products, including "other reagents or products, usually obtained by Dharmacon from third parties, such as buffers, cell lines, transfection reagents, antibodies, and in some cases water."

Defendants further note that products in this group may include "value associated with the intellectual property of third parties (to whom Dharmacon owes compensation on the basis of such sales)." Defendants state that "[p]roducts incorporated into these kits are typically procured from third parties, unquestionably do not infringe in and of themselves, and are simply re-sold after being incorporated into the kit."

But for a handful of documents, Defendants have produced virtually no internal documents about the products sold within these two Groups. Thus, lacking from the production are any documents which describe how Dharmacon's SMART selection operates, how Dharmacon otherwise chemically modifies the siRNA with "Dharmacon technologies," how these methods maximize siRNA stability and minimize off-target effects, any agreement between Dharmacon and the third-party(ies) from whom Dharmacon procures third-party products for packaging in its kits, and how those products are priced as re-sold with the kits.

PROSKAUER ROSE LLP

Timothy C. Blank
November 10, 2005
Page 3

Similarly, documents from Defendant's productions and publicly-available marketing materials make several statements concerning products containing these "value-added" components, including the following:

- DHARM 002319:
  - "Dharmacon's SMARTselection design algorithm uses *over 30 proprietary design parameters* to select four *highly potent* and specific siRNA sequences."
  - "The combination of SMARTselection and SMARTpool technologies provide *unsurpassed performance and ease of use*."
  - "The performance advantage of SMARTselection and SMARTpool algorithms compared to randomly selected siRNA duplexes has been *rigorously analyzed*."
  - "The use of SMART technologies effectively *eliminates the need for costly and time-consuming trial and error evaluation* of conventionally designed siRNA."

- DHARM 003804:
  - "*8 disclosed criteria* for selecting siRNAs are incorporated into the publicly available online siRNA design tool, the siDESIGN center (www.dharmacon.com)."
  - "When this preliminary algorithm is expanded to include the additional advanced criteria that comprise the full SMARTselection algorithm, selection of highly functional siRNAs is *virtually guaranteed*."

- DHARM 003809:
  - "The value of SMARTselection design, relative to conventional methods, is even *more dramatic when considering genes that are more difficult to silence…*"

- DHARM 003809
  - "(. . .) [S]cientists at Dharmacon discovered that cells transfected with a mixture of four rationally designed siRNAs (SMARTpool reagents) *resulted in potent target silencing...*"

- DHARM 003809
  - "(. . .) [M]ixtures of conventionally designed duplexes *fail to improve silencing* while rationally designed siRNAs in a pool silence *as well as, or better than*, the individual components." (an example is shown)

- DHARM 002319
  - "The combination of SMARTselection and SMARTpool technologies provide *unsurpassed performance* and ease of use."
  - "The performance advantage of SMARTselection and SMARTpool algorithms compared to randomly selected siRNA duplexes has been *rigorously analyzed*."

PROSKAUER ROSE LLP

Timothy C. Blank
November 10, 2005
Page 4

- • "SMARTpool reagents *consistently outperform* random and conventionally designed siRNA."
- • "When SMARTselection designed siRNA is combined into SMARTpool reagents, *over 97% of the resulting pools are at least as functional* as the most potent siRNA in the pool and *23% are even more potent than any single duplex.*"

- • DHARM 002320
  - • "In contrast to SMARTselection and SMARTpool technologies, the pooling of low potency siRNA may result in decreased potency and specificity of the pool. *Results from Dharmacon and external collaborators* have demonstrated that *combining highly potent siRNA does not cause this effect.*"

- • siSTABLE Version 2 - Flier obtained from Dharmacon's website
  - • "Modified siRNA with *dramatically improved stability and specificity.*"
  - • "Novel modification pattern to *enhance duplex stability and specificity, without inducing cellular toxicity.*"
  - • "*Enables* an *expanded range* of in vivo RNAi applications."

- • DHARM 002330
  - • "Dharmacon's novel ON-TARGET siRNA *further improves silencing specificity* by inactivating the siRNA sense strand, eliminating its participation in off-target silencing."
  - • "To *maximize siRNA specificity*, Dharmacon has developed proprietary chemical modifications to the siRNA sense strand that eliminate sense strand processing by RISC. These modifications exploit the biochemical and biophysical requirements of the siRNA/RISC interaction to allow siRNA design in which the *antisense strand remains fully functional while the sense strand is completely inactivated.*"
  - • "When combined with *rigorous design*, the ON-TARGET specificity enhancement of highly potent siRNA provides the *highest degree of protection against off-target silencing.*"

- • Web page "siRNA silencing-find your target gene - Human, Mouse or Rat"
  - • "Pooled and individual siRNAs with guaranteed minimum 75% mRNA knock down."
  - • "Over 300,000 siRNAs targeting 66,000 human, mouse and rat genes."

- • Web page "siARRAY siRNA Libraries for Human and Products: siARRAY siRNA Libraries for Mouse"
  - • "Pooled and individual siRNAs with *guaranteed minimum 75% mRNA knock down.*"

PROSKAUER ROSE LLP

Timothy C. Blank
November 10, 2005
Page 5

- "Dharmacon's state-of-the-art SMARTselection design algorithm incorporates *dozens of structural and sequence-specific parameters* of the siRNA molecule."

- DHARM 000934
  - "These libraries *combine optimized broad-spectrum transfection reagents*"
  - "*Optimized* with DharmaFECT siRNA Transfection Reagents and SMARTpool siRNAs, the *most reliable silencing reagents available*"

- DHARM 000936
  - DharmaFECT 1, 2, 3, and 4 "represent reagents that have been *optimized* for the delivery of siRNA into mammalian cells with *minimal impact on cell viability*."

- DHARM 000938 (SMARTpool Reagents - siARRAY RTF Libraries)
  - "*Ensure potent and specific silencing* with Dharmacon's proven SMARTselection technologies."
  - "Deliver *guaranteed gene silencing* with SMARTpool reagents and individual siRNAs."
  - "*Minimize off-target effects and reduce the probability of false positives and false negatives*."
  - "*Efficient and potent gene silencing is virtually assured* when using the siARRAY RTF siRNA Libraries. . .each SMARTpool reagent is *designed using Dharmacon's multi-component, proprietary SMARTselection algorithm.* SMARTselection designed siRNAs are pooled *based on an extension of the algorithm that determines the best combination of four SMARTselection designed siRNAs in a single reagent*."
  - "SMARTpool siRNA reagents are *guaranteed* to silence target gene expression at the mRNA level *by at least 75% and often by 90% or more . . .*"
  - "Gene silencing by SMARTpool siRNAs *matches and often exceeds silencing by the individual SMARTselection designed siRNAs* that comprise the SMARTpool reagent."

Defendants' failure to produce documents supporting each of these statements is unacceptable. These document must exist in Dharmacon's files, but for some reason have not yet been produced, including the following types of documents for each of the products above discussed: product proposals, notes, internal memoranda, lab notebooks, test results, evaluations and analyses, and progress reports concerning product development and manufacture; documents concerning prototypes of each product; and documents disclosing the cost of development and implementation of these products and services.

PROSKAUER ROSE LLP

Timothy C. Blank
November 10, 2005
Page 6

These documents are responsive to at least MIT's Document Request No. 10, which sought "[a]ll documents and things concerning the design, development, manufacture … of any siRNA products or services … manufactured or sold by Defendants, including but not limited to: all laboratory notebooks, test results, reports, memoranda, evaluations, analysis, any prototype, precursor, or experimental versions of such products." Further, to the extent that the documents sought herein were relied upon by Defendants in responding to MIT's interrogatories, such documents are responsive to MIT's Request No. 26, which called for "[a]ll documents and things identified, relied upon, or referred to in response to MIT's First Set of Interrogatories."

Defendants apparently intend to base their case for separate valuation of these "service" components on a claim that Defendants should be given "credit" for the advancements they have made in development of these products. Thus, MIT is entitled to documents detailing the efforts made in doing so. Please produce these documents immediately.

### C.    <u>Interrogatory Deficiencies Related to Valuation</u>

In addition to these document deficiencies, Defendants' Interrogatory Responses on this topic are also deficient. In Interrogatory No. 3, MIT asked Defendants to "state the royalties paid to MIT on sales of each product or service, *including the methodology for calculating such royalties*." In response, Defendants refered to their document productions for this information.

After reviewing Defendants' document production, we have not found any documents which describe the method by which Defendants allocate value in calculating the royalties due on products in groups 2, 3, and 4. Please supplement this response immediately with a full description of the royalties calculation method for each individual product.

### II.    <u>Sales and Marketing Discovery</u>

As you know, we previously raised a concern about the lack of marketing and sales documents responsive to MIT's Request Nos. 14, 15, and 17. We are still awaiting your response to our proposal as to whether we can reach agreement on how to handle this production.

In addition, other deficiencies related to sales of Defendants' products have been noted in Defendants' discovery responses.

### A.    <u>Interrogatory No. 4 (Manufacturing Cost)</u>

In response to Interrogatory No. 4, which sought "the manufacturing cost per unit" of Defendants' siRNA products, Defendants referred generally to their document productions. It is unclear which, if any, documents from Defendants' productions contain manufacturing costs of Dharmacon's products. Please supplement your response with, at a minimum, identification of the Bates number range of documents you claim disclose this information.

PROSKAUER ROSE LLP

Timothy C. Blank
November 10, 2005
Page 7

**B.      Document Request No. 13 (Projections)**

MIT's Document Request No. 13 sought "[a]ll documents concerning any plans, commitments, projections or reports relating to Defendants' future production capacity for any siRNA products or services." Defendants stated that they "have produced, or will produce, non-privileged documents in their possession, custody or control, if any, that are reasonably responsive to this request." We have been unable to identify any such documents within Defendants' productions. If it is your position that such documents have been produced, please identify by Bates Number range the documents you claim are responsive to this request. Otherwise, please supplement your production with responsive documents immediately.

*               *               *

As previously requested, I would like to set a time on Friday when we can discuss these outstanding discovery concerns. We need to resolve these issues, as well as the already outstanding issues concerning Defendants' marketing and sales documents and computer hard drives, during our discussion on Friday, or else we will have to bring these issues to the Court's attention because of the tight calendar we're facing.

We also need to finalize the schedule for the additional depositions we have noticed (including Adair, Deines, Hartsell, Hoogheem, Khvorora, Nichols, and Dharmacon's 30(b)(6) deposition).

Finally, many documents within Defendants' production are illegible, barely legible, or appear to be color documents copied to black and white. We would like to inspect the originals of Defendants' document production to assess whether we need to make clean color copies of the documents. Please let me know when we can arrange to do so.

Sincerely,

Kimberly A. Mottley

## PROSKAUER ROSE LLP

One International Place
22nd Floor
Boston, MA 02110-2600
Telephone 617.526.9600
Fax 617.526.9899

NEW YORK
LOS ANGELES
WASHINGTON
BOCA RATON
NEWARK
PARIS

**Kimberly A. Mottley**

Direct Dial 617.526.9616
kmottley@proskauer.com

November 14, 2005

*Via Email*

Michael S. Shin
Dechert LLP
200 Clarendon Street
27th Floor
Boston, MA 02116-5021

>      Re:     Massachusetts Institute of Technology v. Dharmacon, Inc. and Fisher Scientific
>              International, Inc., Civ. No. 05-10156 (PBS)

Dear Mike:

I write to memorialize our discussion last Friday, November 11, 2005, about certain outstanding discovery issues, and in response to your letter and email of November 11, 2005.

As we discussed on Friday, because you refuse to commit to producing documents, and refuse to provide a date certain when we might get answers from you where you apparently agree to produce, and in light of the tight schedule we're facing on this case where we cannot sit around and just wait for you any longer, we will file a motion to compel with the Court as soon as possible. Of course, if you produce any of the documents discussed below before your opposition to the motion, we can withdraw that particular issue from the Court's consideration.

## I.    **MIT's Concerns About Defendants' Discovery Responses**

### A.    Fisher-Dharmacon Acquisition Documents

Based on our conversation, I understand Defendants' position to be that Defendants have unproduced documents relevant to this suit related to the Fisher-Dharmacon acquisition. During our conversation, you could not 1) state whether your document collection efforts would have identified all documents related to MIT, the License Agreement, and/or Defendants' siRNA products; 2) provide me with a date certain by which I would receive the supplemental log; or 3) tell me the volume of documents you will be logging, nor the names of those individuals whose

**PROSKAUER ROSE LLP**

Michael S. Shin
November 14, 2005
Page 2

files were searched for these documents. At this point, due to the tight schedule, we will seek
relief from the Court.

B.    Internal Documents Concerning Negotiation of the License Agreement

Remarkably, you now claim (after we have asked for weeks) to have "uncovered" a set of
"notes" drafted by Dr. Scaringe, which you say you are going to produce, although you refused
to give a date certain for this production. If we do not receive these documents from you this
morning, we will be moving to compel their production.

Further, we discussed on Friday the request made in my November 2 letter seeking
access to the hard-drives of the computers used by Dr. Scaringe during negotiation of the License
Agreement. I understand Defendants' position to be that the laptop used by Dr. Scaringe at that
time is no longer in Defendants' possession. You also told me that Dechert no longer represents
Dr. Scaringe, and thus we are free to contact him directly. We intend to do so.

C.    Non-royalty-bearing Components of Defendants' Products

As to Defendants' failure to produce discovery concerning the allegedly "non-royalty-
bearing components" of their siRNA products, I understand Defendants' position to be that the
discovery specifically sought by my November 10 letter is irrelevant or overbroad. I also
understand that, despite these objections, Defendants will "try" to produce "responsive, non-
privileged documents" by Monday or Tuesday of this week. What you could not tell me during
our call, nor did you clarify in your follow-up email, is what it is Defendants will be producing.
As I explained, this information is essential so that we can identify the issues about which we
still have a disagreement. Because you can not give us this information, nor provide a date
certain for the upcoming production, we will address it with the Court.

I also understand your position to be that you can not yet respond to Defendants'
deficient response to Interrogatory No. 3 raised in my November 10 letter. That request simply
asked that Defendants identify the documents which the interrogatory response relies upon to
supply the requested information. You were unprepared to respond in any way to our request.
Thus, we will raise it with the Court.

D.    Sales and Marketing Discovery

As to our concerns voiced months ago with respect to Defendants' response to MIT's
Request Nos. 14, 15, and 17, we are at an impasse. We have tried to negotiate a reasonable
resolution of this issue with you, but your delays in responding require us to raise this issue with
the Court.

PROSKAUER ROSE LLP

Michael S. Shin
November 14, 2005
Page 3

Similarly, as to our request that you simply identify the documents produced in response to Interrogatory No. 4 and Request No. 13, you were unable to identify the documents, or respond in any way, during our call on Friday. As such, we will raise this issue with the Court.

    E.      Depositions / Inspection of Dharmacon's Facility

As to the depositions of Dr. Scaringe, Bill Marshall and Stephen Fuhrman, Tim confirmed for me on October 21 that these three individuals were available for deposition on November 29 through December 1, although he could not yet tell me the order in which they would be testifying. We noticed these depositions for those dates, incurred the expense of subpoenaing Dr. Scaringe for his date, and made the necessary arrangements for these depositions.

Your Friday email was the first time any issue with respect to Mr. Marshall's attendance at these depositions was raised. If we do not receive confirmation from you by noon today that those three depositions will move forward on November 29 through December 1, we will move the Court to compel the attendance of Mr. Marshall and Mr. Fuhrman, as noticed.

I also understand your position to be that Dharmacon will not, under any circumstances, allow MIT's counsel to inspect Dharmacon's facility, and that your formal objection to our Rule 34 request will reflect this. We intend to raise this issue with the Court in our motion to compel.

## II.    Defendants' Concerns with MIT's Discovery Responses

    A.      Discovery Concerning Negotiation of Other License Agreements

I confirmed for you that MIT's position is that documents concerning MIT's negotiations with third parties are not relevant to this litigation, and also that Defendants' requests in this regard are overbroad.

I also stated that, notwithstanding those objections, to the extent Defendants can narrow their requests to target issues more closely related to the issues in dispute in this case (e.g., documents bearing on the scope of the term "Licensed Product" in the four co-exclusive license agreements), we may be able to agree to produce or log those documents in order to avoid the need to raise the issue with the Court. I look forward to receiving your proposal in this regard.

    B.      Work Product Correspondence Between the Co-Owners and Inventors

I confirmed for you that MIT believes documents between the co-owners and the inventors in furtherance of negotiation of the MIT-Dharmacon license agreement are privileged work-product. See Handguards, Inc. v. Johnson & Johnson, 69 F.R.D. 451, 454 (N. D. Cali. 1975) ("All other documents referred to on Schedule B relate to the negotiation and

PROSKAUER ROSE LLP

Michael S. Shin
November 14, 2005
Page 4

interpretation of licensing agreements between defendants and others. These documents fall within the ambit of the attorney-client privilege …as well as documents prepared with an 'eye toward litigation'."); American Optical Corp. v. Medtronic, Inc., 56 F.R.D. 426, 431 (D. Mass. 1972) ("While the documents prepared in the post-license period were more clearly prepared in anticipation of litigation than the pre-license documents, the latter were written when litigation was certainly a contingency.").

I note that Dharmacon has not produced similar documents. Therefore, I don't see where you can complain about this.

C.    Depositions

We understand that you have canceled Dr. Tuschl's deposition for tomorrow. That is your prerogative, but you should not assume that you will get Dr. Tuschl's deposition again before the close of discovery. You cancel the deposition at your own risk, particularly where there are no documents relevant to his deposition withheld from production.

As a courtesy to our witnesses, are you also canceling Dr. Bartel's and Irene Abrams's depositions next week?

Finally, contrary to the mischaracterization in your November 11 letter, we do represent the inventors. I confirmed for you during Friday's conversation, as I had told Tim weeks ago, that while we represent the inventors, we have not yet collected nor produced documents from the inventors, as they are not parties to this suit and have not received any subpoena for document production from Defendants. Insofar as you refused to accept a subpoena on Dr. Scaringe, please contact me to discuss any subpoena before you serve it on one of the inventors.

Sincerely,

Kimberly A. Mottley

**Mottley, Kimberly**

| | |
|---|---|
| **From:** | Mottley, Kimberly |
| **Sent:** | Tuesday, September 20, 2005 8:03 PM |
| **To:** | 'Blank, Timothy' |
| **Subject:** | MIT/Dharmacon, Fisher |

Tim -

I'm writing to follow-up on a few issues from yesterday's call.

1.      The Bates numbers of the documents we're requesting that you de-designate, which appear to be literature sent to customers, are DHARM-000010-000052.

2.      I am still waiting to get deposition dates from you.  In an earlier email, I let you know that we would like to schedule 3 consecutive days for the Colorado depositions of Scaringe, Marshall and Fuhrman, and preferably for October 17-19. Please let me know if those dates will work.

3.      As for the mediation date, as I mentioned in my earlier email, the morning of October 24 works for us.  Please let me know if it works for you, and the Court.

4.      With respect to the marketing and sales correspondence we're seeking, you asked that we narrow the scope of the requested discovery.  I may be able to limit this request to that correspondence which applies to the products described as Dharmacon's product groups 2, 3, and 4 in its response to MIT's Interrogatory No. 6.  Please let me know your thoughts on this.

5.      I'd like to discuss with you the RTF products for purchase.  Specifically, on Dharmacon's website listing the "siARRAY RTF siRNA Libraries - Human," it lists two optimization kits, and numerous experimental kits for Human siARRAY RTF.  I'd like to discuss with you how these products differ, so that we can determine which products to purchase for testing.

Please let me know when you are available for a call to discuss these issues tomorrow.  I should be generally available most of the day.

Thanks.

Kim

Kimberly A. Mottley, Esq.
Proskauer Rose LLP
One International Place - 22nd Floor
Boston, MA 02210
Tel. 617-526-9616
Fax. 617-526-9899
kmottley@proskauer.com

**PROSKAUER ROSE LLP**

One International Place
22nd Floor
Boston, MA 02110-2600
Telephone 617.526.9600
Fax 617.526.9899

NEW YORK
LOS ANGELES
WASHINGTON
BOCA RATON
NEWARK
PARIS

**Kimberly A. Mottley**

Direct Dial 617.526.9616
kmottley@proskauer.com

October 17, 2005

***Via Email***

Timothy C. Blank
Dechert LLP
200 Clarendon Street
27th Floor
Boston, MA 02116-5021

> Re:    Massachusetts Institute of Technology v. Dharmacon, Inc. and Fisher Scientific
> <u>International, Inc., Civ. No. 05-10156 (PBS)</u>

Dear Tim:

I write concerning two discovery issues about which I believe we have reached an impasse.

1.    <u>Privilege Log</u>

As per our discussion earlier today, it is my understanding that you refuse to supplement the descriptions of the documents Defendants are withholding on the basis of privilege or work product protections, beyond those descriptions provided in your October 7, 2005 log. I believe we are at an impasse with respect to this issue.

2.    <u>Documents Reflecting Marketing of Dharmacon's Products</u>

As per our discussions over the past several weeks, it is my understanding that Dharmacon does not intend to supplement its production of documents with documents showing how it markets and sells its products at issue in this case, as requested in MIT's Request Nos. 14, 15, and 17. In my September 20, 2005 email to you, I inquired whether limitation of these requests to those products described as Dharmacon's product groups 2, 3, and 4 in its response to MIT's Interrogatory No. 6 would resolve your concerns about production of such documents. In our subsequent conversations, you informed me that this limitation did not resolve your concerns, and that Dharmacon would not supplement its production with such documents. Thus, I believe we remain at an impasse as to these requests.

**PROSKAUER ROSE LLP**

Timothy C. Blank
October 17, 2005
Page 2

Please let me know by the end of the day today whether Dharmacon will provide the requested information and documents.  Otherwise, we intend to raise these issues with the Court.

Sincerely,

Kimberly A. Mottley

## Mottley, Kimberly

| | |
|---|---|
| **From:** | Mottley, Kimberly |
| **Sent:** | Monday, October 17, 2005 7:08 PM |
| **To:** | 'Blank, Timothy' |
| **Cc:** | MIT_Dharmacon |
| **Subject:** | RE: MIT/Dharmacon, Fisher |

Tim -

I understand your position as to the privilege log.

As to Request Nos. 14, 15, and 17, would you be willing to produce responsive documents for a representative set of five customers that we identify for you?  I think it would provide us a good opportunity to understand more fully what it is we're fighting about here, and would allow us to further tailor our request for responsive documents, if necessary.  Please give me a call tomorrow to discuss this.

Thanks.

Kim

---

**From:** Blank, Timothy
**Sent:** Monday, October 17, 2005 4:23 PM
**To:** 'Mottley, Kimberly'
**Subject:** RE: MIT/Dharmacon, Fisher

Kim--

I told you I will send you a list identifying the people listed on our privilege log, but otherwise I believe we have complied with our obligations.

With respect to the second paragraph of your letter, your efforts to narrow the request to products in categories 2, 3 does not narrow the requests at all, since that still encompasses every Dharmacon product.  I told you this on the phone and asked you to narrow your requests furhter or at least provide more detail about what you are seeking.  As your requests stand, you are literally asking us to produce every single communication we have ever had with every Dharmacon customer on every product.  This is far too broad.  If you can narrow it or get more specific, we will reconsider your requests.

Please let me know.

Tim

Timothy C. Blank
Dechert LLP
200 Clarendon Street, 27th Floor
Boston, MA  02116
Direct:  +1.617.728.7154
Fax: +1.617.426.6567
timothy.blank@dechert.com
www.dechert.com

**From:** Mottley, Kimberly [mailto:kmottley@proskauer.com]
**Sent:** Monday, October 17, 2005 1:14 PM
**To:** Blank, Timothy
**Cc:** MIT_Dharmacon
**Subject:** MIT/Dharmacon, Fisher

Tim - Please see the attached letter.

Thanks.

Kim

<<10.17.05 Ltr Mottley to Blank.pdf>>

Kimberly A. Mottley, Esq.
Proskauer Rose LLP
One International Place - 22nd Floor
Boston, MA 02210
Tel.  617-526-9616
Fax. 617-526-9899
kmottley@proskauer.com

---------------------------------------------------------------------------

This message and its attachments are sent from a law firm and may contain information that is confidential and protected by privilege from disclosure If you are not the intended recipient, you are prohibited from printing, copying, forwarding or saving them. Please delete the message and attachments without printing, copying, forwarding or saving them, and notify the sender immediately.

========================================================================================

This e-mail is from Dechert LLP, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments. Thank you.

**Mottley, Kimberly**

| | |
|---|---|
| **From:** | Mottley, Kimberly |
| **Sent:** | Tuesday, October 18, 2005 10:48 AM |
| **To:** | 'Blank, Timothy' |
| **Cc:** | MIT_Dharmacon |
| **Subject:** | MIT/Dharmacon, Fisher |

Hi Tim -

Following up on this morning's call, Steve spoke with MIT and they confirmed that they are always happy to meet to discuss potential for resolution.  Please let us know when you hear from your clients.

I look forward to hearing from you later on the stipulation of dismissal, my proposal for potential resolution of the marketing documents issue, and whether the outstanding protective order issue will be mooted by resolution of the Sabatini claims.

Thanks.

Kim

Kimberly A. Mottley, Esq.
Proskauer Rose LLP
One International Place - 22nd Floor
Boston, MA 02210
Tel.  617-526-9616
Fax. 617-526-9899
kmottley@proskauer.com

## Mottley, Kimberly

**From:**      Mottley, Kimberly
**Sent:**       Thursday, October 20, 2005 4:52 PM
**To:**         'Blank, Timothy'
**Cc:**         MIT_Dharmacon
**Subject:**   FW: MIT/Dharmacon, Fisher

Tim -

I look forward to our conversation tomorrow at 11:00 a.m.  Please confirm that you'll be ready with dates of deposition availability for Scaringe, Marshall and Fuhrman, and also will be ready to respond to my suggestion below on resolving our dispute with respect to Request Nos. 14, 15 and 17, on the call.

I'd also like to get the protective order squared away.  On Wednesday, I sent Mike the most recent draft of the protective order, with the changes we discussed redlined in.  Please be ready with the names of your clients' proposed designees for access to technical Highly Confidential information on the call, so that I can take those names back to the client and we can get the order finalized and filed with the Court.

Thanks.

Kim

---

**From:** Mottley, Kimberly
**Sent:** Monday, October 17, 2005 7:08 PM
**To:** 'Blank, Timothy'
**Cc:** MIT_Dharmacon
**Subject:** RE: MIT/Dharmacon, Fisher

Tim -

I understand your position as to the privilege log.

As to Request Nos. 14, 15, and 17, would you be willing to produce responsive documents for a representative set of five customers that we identify for you?  I think it would provide us a good opportunity to understand more fully what it is we're fighting about here, and would allow us to further tailor our request for responsive documents, if necessary.  Please give me a call tomorrow to discuss this.

Thanks.

Kim

---

**From:** Blank, Timothy
**Sent:** Monday, October 17, 2005 4:23 PM
**To:** 'Mottley, Kimberly'
**Subject:** RE: MIT/Dharmacon, Fisher

Kim--

I told you I will send you a list identifying the people listed on our privilege log, but otherwise I believe we have complied with our obligations.

With respect to the second paragraph of your letter, your efforts to narrow the request to products in categories 2, 3 does not narrow the requests at all, since that still encompasses every Dharmacon product. I told you this on the phone and asked you to narrow your requests furhter or at least provide more detail about what you are seeking. As your requests stand, you are literally asking us to produce every single communication we have ever had with every Dharmacon customer on every product. This is far too broad. If you can narrow it or get more specific, we will reconsider your requests.

Please let me know.

Tim

Timothy C. Blank
Dechert LLP
200 Clarendon Street, 27th Floor
Boston, MA  02116
Direct:  +1.617.728.7154
Fax: +1.617.426.6567
timothy.blank@dechert.com
www.dechert.com

---

**From:** Mottley, Kimberly [mailto:kmottley@proskauer.com]
**Sent:** Monday, October 17, 2005 1:14 PM
**To:** Blank, Timothy
**Cc:** MIT_Dharmacon
**Subject:** MIT/Dharmacon, Fisher

Tim - Please see the attached letter.

Thanks.

Kim

<<10.17.05 Ltr Mottley to Blank.pdf>>

Kimberly A. Mottley, Esq.
Proskauer Rose LLP
One International Place - 22nd Floor
Boston, MA 02210
Tel.  617-526-9616
Fax. 617-526-9899
kmottley@proskauer.com

----------------------------------------------------------------------------

This message and its attachments are sent from a law firm and may contain information that is confidential and protected by privilege from disclosure If you are not the intended recipient, you are prohibited from printing, copying, forwarding or saving them. Please delete the message and attachments without printing, copying, forwarding or saving them, and notify the sender immediately.

========================================================================

This e-mail is from Dechert LLP, a law firm, and may contain information that is confidential or
privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any
attachments. Instead, please notify the sender and delete the e-mail and any attachments. Thank you.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ———————————————————— | ) | |
| MASSACHUSETTS INSTITUTE | ) | |
| OF TECHNOLOGY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| v. | ) | 05-10156-PBS |
| | ) | |
| DHARMACON, INC. and FISHER | ) | |
| SCIENTIFIC INTERNATIONAL INC., | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————————— | ) | |

**INITIAL DISCLOSURES OF DHARMACON, INC.
AND FISHER SCIENTIFIC INTERNATIONAL INC.**

Pursuant to Federal Rule of Civil Procedure 26(a)(1), defendants Dharmacon, Inc.

("Dharmacon") and Fisher Scientific International Inc. ("Fisher") make the following

disclosures (1) without admitting or conceding the admissibility (including authenticity)

or relevance of any of the information; (2) reserving all rights to object during discovery

or at trial; (3) reserving the right to invoke the attorney-client privilege, work product

doctrine, or other applicable privileges and/or doctrines; and (4) reserving the right to

supplement or correct the following information:

A.      *Persons (in addition to the plaintiff, the defendants, and the persons subsequently identified by any party or witness) likely to have discoverable information that the defendants may use to support their claims or defenses, unless solely for impeachment*:

    1.      Dr. William Marshall
        2650 Crescent Dr.,  Suite 100
        Lafayette, CO  80026
        (303) 604-9499

        Dr. Marshall is reasonably likely to have information regarding the negotiation between Dharmacon and MIT of the siRNA Distributor License Agreement, Dharmacon siRNA products, Dharmacon reverse transfection products, and Dharmacon proprietary technology.

    2.      Dr. Steven Scaringe
        2746 Prairie Ridge Ct.
        Lafayette, CO 80026
        (303) 926-6826

        Dr. Scaringe is reasonably likely to have information regarding the negotiation between Dharmacon and MIT of the siRNA Distributor License Agreement (the "License Agreement"), Dharmacon siRNA products, Dharmacon reverse transfection products, and Dharmacon proprietary technology.

    3.      Dr. Marvin Caruthers
        University of Colorado at Boulder
        Department of Chemistry and Biochemistry
        Campus Box 215
        Boulder, Colorado 80309
        (303) 492-6531

        Dr. Caruthers is reasonably likely to have information regarding Dharmacon siRNA products, Dharmacon reverse transfection products, and Dharmacon proprietary technology.

    4.      Steven C. Fuhrman
        2650 Crescent Dr.,  Suite 100
        Lafayette, CO  80026

        Mr. Fuhrman is reasonably likely to have information regarding Dharmacon's payment of royalties under the License Agreement and correspondence between MIT and Dharmacon concerning the disputed royalties.

5.   Leland Foster
2650 Crescent Dr., Suite 100
Lafayette, CO 80026

Mr. Foster is reasonably likely to have information regarding
Dharmacon's payment of royalties under the License Agreement
and correspondence between MIT and Dharmacon concerning the
disputed royalties.

6.   Timothy Hoogheem
2650 Crescent Dr., Suite 100
Lafayette, CO 80026

Mr. Hoogheem is reasonably likely to have information regarding
Dharmacon's payment of royalties under the License Agreement
and correspondence between MIT and Dharmacon concerning the
disputed royalties.

7.   Dr. Thomas Tuschl
Rockefeller University
1230 York Avenue, Box 186
New York, NY 10021
(212) 327-7651

Dr. Tuschl is reasonably likely to have information regarding
siRNA technology, MIT's patent applications relating to siRNA,
and the License Agreement between Dharmacon and MIT.

8.   Dr. Phillip Zamore
University of Massachusetts Medical School
Department of Biochemistry and Molecular Pharmacology
364 Plantation Street
Worcester, MA 01605
(508) 856-2191

Dr. Zamore is reasonably likely to have information regarding
siRNA technology, MIT's patent applications relating to siRNA,
and the License Agreement between Dharmacon and MIT.

9.   Dr. Phillip Sharp
Massachusetts Institute of Technology
Cambridge, MA

Dr. Sharp is reasonably likely to have information regarding
siRNA technology, MIT's patent applications relating to siRNA,
and the License Agreement between Dharmacon and MIT.

10.    Dr. David Bartel
       Whitehead Institute for Biomedical Research
       Cambridge, MA

       Dr. Bartel is reasonably likely to have information regarding
       siRNA technology, MIT's patent applications relating to siRNA,
       and the License Agreement between Dharmacon and MIT.

11.    Carnegie Institute

       Representatives from the Carnegie institute are reasonably likely to
       have information regarding the Carnegie Institute family of RNAi
       patents and the state of knowledge of RNAi and siRNA technology
       at the time the License Agreement was entered into.

12.    Alnylam Pharmaceuticals Inc.

       Representatives of Alnylam Pharmaceuticals Inc. are reasonably
       likely to have information regarding the Alnylam Pharmaceuticals
       Inc. family of siRNA patents and the state of knowledge of RNAi
       and siRNA technology at the time the License Agreement was
       entered into.

13.    RibopharmaAG

       Representatives of RibopharmaAG are reasonably likely to have
       information regarding the RibopharmaAG family of siRNA patents
       and the state of knowledge of RNAi and siRNA technology at the
       time the License Agreement was entered into.

14.    Ambion, Inc.

       Representatives of Ambion, Inc. are reasonably likely to have
       information regarding the siRNA distribution license between
       Ambion, Inc. and MIT.

15.    Qiagen, Inc.

       Representatives of Qiagen, Inc. are reasonably likely to have
       information regarding the siRNA distribution license between
       Qiagen, Inc. and MIT.

16.     Proligo LLC

        Representatives of Proligo LLC are reasonably likely to have
        information regarding the siRNA distribution license between
        Proligo LLC and MIT.

17.     Irene Abrams
        Massachusetts Institute of Technology
        Cambridge, MA

        Ms. Abrams is reasonably likely to have information regarding the
        License Agreement between Dharmacon and MIT and
        correspondence between MIT and Dharmacon concerning the
        disputed royalties.

18.     Karin Rivard
        Massachusetts Institute of Technology
        Cambridge, MA

        Ms. Rivard is reasonably likely to have information regarding the
        License Agreement between Dharmacon and MIT and
        correspondence between MIT and Dharmacon concerning the
        disputed royalties.

19.     Aaron Schwartz
        Massachusetts Institute of Technology
        Cambridge, MA

        Mr. Schwartz is reasonably likely to have information regarding
        the License Agreement between Dharmacon and MIT and
        correspondence between MIT and Dharmacon concerning the
        disputed royalties.

20.     Lita Nelsen
        Massachusetts Institute of Technology
        Cambridge, MA

        Ms. Nelson is reasonably likely to have information regarding the
        License Agreement between Dharmacon and MIT and
        correspondence between MIT and Dharmacon concerning the
        disputed royalties.

21.    Donald Kaiser
Massachusetts Institute of Technology
Cambridge, MA

Mr. Kaiser is reasonably likely to have information regarding
Dharmacon's payment of royalties under the License Agreement.

22.    McGladrey & Pullen, LLP

Representatives of McGladrey & Pullen, LLP are reasonably likely
to have information regarding Dharmacon's payment of royalties
under the License Agreement.

23.    Dr. David Sabatini
Massachusetts Institute of Technology
Cambridge, MA

Dr. Sabatini is reasonably likely to have information regarding the
'790 patent application and prosecution.

24.    Kristina Bieker-Brady, Esq.
Clark & Elbing LLP
101 Federal Street, 15th Floor
Boston, MA 02110
(617) 428-0200

Ms. Bieker-Brady is reasonably likely to have information
regarding the '790 patent application and prosecution.

**B.    *Documents, data, compilations, and tangible things in the possession,
custody, or control of the defendants that the defendants may use to
support their claims or defenses, unless solely for impeachment*:**

1.    The siRNA Distributor License Agreement between MIT and
Dharmacon.

2.    Documents relating to the negotiation of and scope of the siRNA
Distributor License Agreement between MIT and Dharmacon.

3.    The siRNA distributor license agreement between MIT and
Ambion, Inc.

4.    The siRNA distributor license agreement between MIT and
Qiagen, Inc.

5.     The siRNA distributor license agreement between MIT and Proligo LLC.

6.     Documents relating to the negotiation of and scope of MIT's siRNA distributor license agreements with Ambion, Inc., Qiagen, Inc., and Proligo LLC.

7.     Documents relating to Dharmacon reverse transfection technologies.

8.     Documents relating to Dharmacon siRNA products, selection services, and kits.

9.     Documents relating to MIT's siRNA technology and patent applications.

10.     The '790 patent and documents relating to the '790 patent application and prosecution.

**C.**     ***Computation of any category of damages claimed***:

The defendants do not presently have a computation of damages and will provide a computation of any and all damages after the close of discovery.

**D.**     ***Insurance agreements***:

The defendants are unaware at this time of any insurance policy that is likely to indemnify them for any judgment in this case.

Dated: July 22, 2005

_____
Timothy C. Blank, BBO # 548670
Michael S. Shin, BBO # 658134
DECHERT LLP
200 Clarendon Street, 27th Floor
Boston, MA 02116
(617) 728-7100
*Attorneys for Dharmacon, Inc. and*
*Fisher Scientific International Inc.*

### Certificate of Service

I hereby certify that on July 22, 2005, a true and correct copy of the foregoing document was served upon opposing counsel by ~~hand.~~ email

_____
Timothy C. Blank

9881481.3.LITIGATION

8

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

MASSACHUSETTS INSTITUTE OF
TECHNOLOGY,

     Plaintiff,

v.

DHARMACON, INC. and FISHER
SCIENTIFIC INTERNATIONAL INC.,

     Defendants.

Civil Action No.: 05-10156 PBS

---

## <u>NOTICE OF DEPOSITION OF DR. STEVEN SCARINGE</u>

Please take notice that pursuant to Rule 30 of the Federal Rules of Civil Procedure, counsel for Massachusetts Institute of Technology ("MIT") will take the deposition upon oral examination of Steven Scaringe, 2746 Prairie Ridge Ct., Lafayette, CO 80026, at the offices of Esquire Deposition Services, 303 East 17th Avenue, Suite 565, Denver, CO 80203, beginning at 9:00 a.m. on November 29, 2005, or at such other time and place as mutually agreed upon by the parties, and will continue thereafter day to day until completed. The deposition will be taken before a notary public or other officer authorized by law to administer oaths. The deposition shall be recorded by a stenographer or court reporter, and may be recorded by video and sound means.

Dated: October 26, 2005

Respectfully submitted,

Massachusetts Institute of Technology,

By its Attorneys,

Steven M. Bauer (BBO# 542531)
Kimberly A. Mottley (BBO# 651190)
PROSKAUER ROSE LLP
One International Place
Boston, Massachusetts 02110-2600
Phone: 617-526-9600
Fax:    617-526-9899

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 26, 2005, I caused a true and correct copy of MIT'S NOTICE OF DEPOSITION OF DR. STEVEN SCARINGE to be served on the following counsel of record via email:

Timothy C. Blank
DECHERT LLP
200 Clarendon Street
27th Floor
Boston, MA 02116-5021
timothy.blank@dechert.com

By:    Kimberly A. Mottley

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY,<br><br>      Plaintiff,<br><br>v.<br><br>DHARMACON, INC. and FISHER SCIENTIFIC INTERNATIONAL INC.,<br><br>      Defendants. | Civil Action No.: 05-10156 PBS |

## <u>NOTICE OF DEPOSITION OF DR. WILLIAM MARSHALL</u>

Please take notice that pursuant to Rule 30 of the Federal Rules of Civil Procedure, counsel for Massachusetts Institute of Technology ("MIT") will take the deposition upon oral examination of Dr. William Marshall, 2650 Crescent Dr., Suite 100, Lafayette, CO 80026, at the offices of Esquire Deposition Services, 303 East 17th Avenue, Suite 565, Denver, CO 80203, beginning at 9:00 a.m. on November 30, 2005, or at such other time and place as mutually agreed upon by the parties, and will continue thereafter day to day until completed. The deposition will be taken before a notary public or other officer authorized by law to administer oaths. The deposition shall be recorded by a stenographer or court reporter, and may be recorded by video and sound means.

Dated: October 26, 2005

Respectfully submitted,

Massachusetts Institute of Technology,

By its Attorneys,

Steven M. Bauer (BBO# 542531)
Kimberly A. Mottley (BBO# 651190)
PROSKAUER ROSE LLP
One International Place
Boston, Massachusetts 02110-2600
Phone: 617-526-9600
Fax:    617-526-9899

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 26, 2005, I caused a true and correct copy of MIT'S NOTICE OF DEPOSITION OF DR. WILLIAM MARSHALL to be served on the following counsel of record via email:

Timothy C. Blank
DECHERT LLP
200 Clarendon Street
27th Floor
Boston, MA 02116-5021
timothy.blank@dechert.com

By:  Kimberly A. Mottley

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY,<br><br>      Plaintiff,<br><br>v.<br><br>DHARMACON, INC. and FISHER SCIENTIFIC INTERNATIONAL INC.,<br><br>      Defendants. | Civil Action No.: 05-10156 PBS |

## <u>NOTICE OF DEPOSITION OF STEVEN C. FUHRMAN</u>

Please take notice that pursuant to Rule 30 of the Federal Rules of Civil Procedure,

counsel for Massachusetts Institute of Technology ("MIT") will take the deposition upon oral

examination of Steven C. Fuhrman, 2650 Crescent Dr., Suite 100, Lafayette, CO 80026, at the

offices of Esquire Deposition Services, 303 East 17th Avenue, Suite 565, Denver, CO 80203,

beginning at 9:00 a.m. on December 1, 2005, or at such other time and place as mutually agreed

upon by the parties, and will continue thereafter day to day until completed.  The deposition will

be taken before a notary public or other officer authorized by law to administer oaths.  The

deposition shall be recorded by a stenographer or court reporter, and may be recorded by video

and sound means.

Dated: October 26, 2005

Respectfully submitted,

Massachusetts Institute of Technology,

By its Attorneys,

Steven M. Bauer (BBO# 542531)
Kimberly A. Mottley (BBO# 651190)
PROSKAUER ROSE LLP
One International Place
Boston, Massachusetts 02110-2600
Phone: 617-526-9600
Fax:    617-526-9899


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 26, 2005, I caused a true and correct copy of

MIT'S NOTICE OF DEPOSITION OF STEVEN C. FUHRMAN to be served on the following

counsel of record via email:

Timothy C. Blank
DECHERT LLP
200 Clarendon Street
27th Floor
Boston, MA 02116-5021
timothy.blank@dechert.com


By:

Kimberly A. Mottley

## Issued by the

# UNITED STATES DISTRICT COURT

DISTRICT OF _____ COLORADO

MASSACHUSETTS INSTITUTE OF TECHNOLOGY

V.

DHARMACON, INC. and FISHER SCIENTIFIC
INTERNATIONAL, INC.

**SUBPOENA IN A CIVIL CASE**

Case Number: 05-10156 PBS
(Pending in the District of Massachusetts)

TO:      Steven Scaringe
         2746 Prairie Ridge Ct.
         Lafayette, CO 80026

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a
deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Esquire Deposition Services<br>303 East 17th Avenue, Suit 565<br>Denver, CO 80203 | November 30, 2005 at<br>9:00 a.m. |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at
the place, date, and time specified below (list documents or objects):

See attached Schedule A.

| PLACE | DATE AND TIME |
|---|---|
| Esquire Deposition Services<br>303 East 17th Avenue, Suit 565<br>Denver, CO 80203 | November 17, 2005 |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated,
the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _Kimberly A. Mottley_ | 11/2/05 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Kimberly A. Mottley, Esq., PROSKAUER ROSE LLP, One International Place, Boston, MA 02110
Tel. (617) 526-9600

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

## PROOF OF SERVICE

| DATE | TIME |
|---|---|
| | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER _____

ADDRESS OF SERVER _____

_____

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except

that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

## DEFINITIONS

The following definitions shall apply:

1.      "Dharmacon" means Dharmacon, Inc., including its servants, agents, representatives, employees, principals, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest, successors-in-interest, and all other persons, forms or corporations acting with it or on its behalf.

2.      "License Agreement" means the December 21, 2001 license agreement executed by MIT and Dharmacon.

3.      "Dispute" means the dispute between Dharmacon and MIT concerning payment of royalties under the License Agreement, following the August 21, 2003 letter from Stephen C. Fuhrman to MIT's Technology Licensing Office.

4.      "Litigation" means the litigation pending in the United States District Court for the District of Massachusetts, captioned as Civil Action No. 05-10156 (PBS).

## REQUESTS FOR PRODUCTION

**Request No. 1**

All documents related to the License Agreement, the Dispute, and/or the Litigation.

**Request No. 2**

An electronic image of the entire computer hard drive(s) or other computer memory devices controlled and/or used by Steven Scaringe for Dharmacon-related work from January 1, 2001 to the present.

**PROSKAUER ROSE LLP**

One International Place
22nd Floor
Boston, MA 02110-2600
Telephone 617.526.9600
Fax 617.526.9899

NEW YORK
LOS ANGELES
WASHINGTON
BOCA RATON
NEWARK
PARIS

**Kimberly A. Mottley**

Direct Dial 617.526.9616
kmottley@proskauer.com

November 2, 2005

*__Via Email__*

Timothy C. Blank
Dechert LLP
200 Clarendon Street
27th Floor
Boston, MA 02116-5021

Re:   Massachusetts Institute of Technology v. Dharmacon, Inc. and Fisher Scientific
      International, Inc., Civ. No. 05-10156 (PBS)

Dear Tim:

Enclosed for service on Defendants are deposition notices for Michael Deines, John Adair, Timothy Hoogheem, Stephanie Hartsel, and Kim Nichols, for December 12 through 15.

Also, as we have not received confirmation from you that we have an agreement to accept service of subpoenas on behalf of third parties we represent, we will be serving the enclosed subpoena on Dr. Scaringe by hand. In our previous conversations, you agreed to produce Dr. Scaringe, Bill Marshall, and Stephen Fuhrman for their depositions on November 29-December 1, and stated that you anticipate Dr. Scaringe will be testifying on November 30, but that you would confirm the order of these three witnesses for me. Please do so at your earliest convenience, so that we can plan accordingly.

Also, we are still awaiting final confirmation of the deposition schedule I proposed in my October 25, 2005 letter for the depositions of Irene Abrams, Lita Nelsen, and the inventors. As we are dealing with extremely busy individuals, we need to firm up these dates immediately. Please let me know if that schedule works for you.

Thank you.

Sincerely,

Kimberly A. Mottley

Enclosures

# PROSKAUER ROSE LLP

One International Place
22nd Floor
Boston, MA 02110-2600
Telephone 617.526.9600
Fax 617.526.9899

NEW YORK
LOS ANGELES
WASHINGTON
BOCA RATON
NEWARK
PARIS

**Kimberly A. Mottley**

Direct Dial 617.526.9616
kmottley@proskauer.com

November 7, 2005

*Via Email*

Timothy C. Blank
Dechert LLP
200 Clarendon Street
27th Floor
Boston, MA 02116-5021

> Re:    Massachusetts Institute of Technology v. Dharmacon, Inc. and Fisher Scientific
> <u>International, Inc., Civ. No. 05-10156 (PBS)</u>

Dear Tim:

Enclosed for service on Defendants is a deposition notice for Anastasia Khvorora for December 16.

Also, we still have not received confirmation that you intend to move forward with the depositions of Irene Abrams, Lita Nelsen, and the inventors, according to the schedule I proposed in my October 25, 2005 letter. As you know, that schedule sets Dr. Tuschl's deposition for one week from now (on November 15), and the depositions of Dr. Bartel and Ms. Abrams soon thereafter (on November 21 and 22, respectively).

If we do not receive confirmation from you by 5:00 p.m. tomorrow that you will be taking these three depositions on these proposed dates, we will need to release these individuals for other scheduling purposes. As you know, they are extremely busy, and if the dates are not confirmed, they must be put to other use. Regardless of your confirmation of these three depositions, this letter confirms that we do intend to depose Dr. Scaringe, Bill Marshall, and Stephen Fuhrman on November 29-December 1, as discussed and noticed. Again, please let us know the order of these witnesses as soon as possible so that we can plan accordingly.

Sincerely,

Kimberly A. Mottley

Kimberly A. Mottley

Enclosure

**Mottley, Kimberly**

| | |
|---|---|
| **From:** | Mottley, Kimberly |
| **Sent:** | Friday, November 11, 2005 12:01 PM |
| **To:** | 'Shin, Michael' |
| **Cc:** | MIT_Dharmacon; Blank, Timothy |
| **Subject:** | RE: MIT/Dharmacon, Fisher - Discovery Issues |

Mike -

I'd really like Tim on the call, if at all possible, so we needn't retread any old ground and don't get into "he said/she said" about our previous conversations. Also, we are filing a motion to compel on Monday as to any issues we can't resolve today, so to the extent you don't have authority to reach resolution of these issues, Tim needs to be on the call.

MIT's issues for today's call include the following, although this list may not be exhaustive (if other issues come up during our discussions):
1.     All issues raised by my November 2 and 10 letters
2.     Fisher/Dharmacon acquisition-related documents
3.     Documents Responsive to Request Nos. 14, 15 and 17
4.     Deposition Issues, including the order of deponents for the Nov. 29-Dec. 1 depositions; arrangements for Tuschl deposition next week (where it will be held; how long expected to last); scheduling of additionally noticed depositions (as referenced in my Nov. 10 letter to Tim) and identification of witnesses to testify on behalf of Dharmacon as 30(b)(6) witnesses
5.     Inspection of Dharmacon's Facility
6.     Whether Dharmacon has any objection to Dr. Perrimon's access to Defendants' documents

I look forward to speaking with you later this afternoon.

Kim

-----Original Message-----
From: Shin, Michael [mailto:michael.shin@dechert.com]
Sent: Friday, November 11, 2005 11:43 AM
To: Mottley, Kimberly
Cc: MIT_Dharmacon; Blank, Timothy
Subject: Re: MIT/Dharmacon, Fisher - Discovery Issues

Kim,

Not sure whether Tim can join, but he's brought me up to speed on the issues you've been discussing so will be fine. If you want to email me the specific issues you wanted to discuss with him to make sure I covered them with him, that's fine.

Talk to you at 2.

Mike


-----Original Message-----
From: Mottley, Kimberly <kmottley@proskauer.com>
To: Shin, Michael <michael.shin@dechert.com>
CC: MIT_Dharmacon <MIT_Dharmacon@proskauer.com>; Blank, Timothy <timothy.blank@dechert.com>
Sent: Fri Nov 11 11:07:41 2005
Subject: RE: MIT/Dharmacon, Fisher - Discovery Issues

Still works for me.  I'd like to make sure Tim is on the call as well, so that we can discuss the outstanding issues about which Tim and I have spoken in the past.  Can you please make sure he is available as well?  If 2:00 doesn't work for him, pick a time that

works for both of you and I'll make sure I'm available.  Thanks.

_____

From: Shin, Michael [mailto:michael.shin@dechert.com]
Sent: Friday, November 11, 2005 10:59 AM
To: Mottley, Kimberly
Subject: RE: MIT/Dharmacon, Fisher - Discovery Issues

Kim,

2 o'clock this afternoon works for me, if it still does for you.  I'll give you a call.

Mike


_____

      From: Mottley, Kimberly [mailto:kmottley@proskauer.com]
      Sent: Thursday, November 10, 2005 12:23 PM
      To: Blank, Timothy; Shin, Michael
      Cc: MIT_Dharmacon
      Subject: MIT/Dharmacon, Fisher - Discovery Issues


      Tim, Mike - Please see the attached letters.

      Kim

      <<11.10.05 Ltr Mottley to Shin.pdf>> <<11.10.05 Ltr Mottley to Blank.pdf>>

      Kimberly A. Mottley, Esq.
      Proskauer Rose LLP
      One International Place - 22nd Floor
      Boston, MA 02210
      Tel.  617-526-9616
      Fax. 617-526-9899
      kmottley@proskauer.com
      ---------------------------------------------------------------------------

      This message and its attachments are sent from a law firm and may contain
information that is confidential and protected by privilege from disclosure If you are not
the intended recipient, you are prohibited from printing, copying, forwarding or saving
them. Please delete the message and attachments without printing, copying, forwarding or
saving them, and notify the sender immediately.

      ===========================================================================


This e-mail is from Dechert LLP, a law firm, and may contain information that is
confidential or privileged. If you are not the intended recipient, do not read, copy or
distribute the e-mail or any attachments. Instead, please notify the sender and delete the
e-mail and any attachments. Thank you.


---------------------------------------------------------------------------

This message and its attachments are sent from a law firm and may contain information that
is confidential and protected by privilege from disclosure If you are not the intended
recipient, you are prohibited from printing, copying, forwarding or saving them. Please
delete the message and attachments without printing, copying, forwarding or saving them,
and notify the sender immediately.

====================================================================

This e-mail is from Dechert LLP, a law firm, and may contain information that is
confidential or privileged. If you are not the intended recipient, do not read, copy or
distribute the e-mail or any attachments. Instead, please notify the sender and delete the
e-mail and any attachments. Thank you.

## Mottley, Kimberly

| | |
|---|---|
| **From:** | Shin, Michael [michael.shin@dechert.com] |
| **Sent:** | Friday, November 11, 2005 6:11 PM |
| **To:** | Mottley, Kimberly |
| **Cc:** | Blank, Timothy |
| **Subject:** | MIT/Dharmacon |
| **Attachments:** | 11.11.05 Ltr Shin to Mottley.pdf |

Kim,

Please see the attached letter regarding the deposition of Dr. Tuschl.

Also, I am still waiting to hear back from the client about several of the things you and I talked about today, but here are some follow-up matters:

1) We are still waiting to hear back regarding Bill Marshall's availability for the Nov.-Dec. depos.  I will let you know when I hear more;

2) We will try to designate inviduals for the 30(b)(6) depos by Wednesday of next week;
3) We maintain our position that your requests as set forth in Item I of your November 10 letter are overbroad and/or irrelevant.  Without waiving these objections, we will try to produce responsive, non-privileged documents on Mon. or Tues. of next week.

Let me know if you have any questions.

Mike

<<11.11.05 Ltr Shin to Mottley.pdf>>

Michael S. Shin
Dechert LLP
direct: +1.617.728.7133
fax: +1.617.426.6567
michael.shin@dechert.com
www.dechert.com

This email is from Dechert LLP, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the email or any attachments. Instead, please notify the sender and delete the email and any attachments.

NOTE: All messages we send are checked for viruses but please note that we do not accept liability for any viruses that may be transmitted in or with this message.

-----------------------------------------------------------------------------

This message and its attachments are sent from a law firm and may contain information that is confidential and protected by privilege from disclosure. If you are not the intended recipient, you are prohibited from printing, copying, forwarding or saving them. Please delete the message and attachments without printing, copying, forwarding or saving them, and notify the sender immediately.

========================================================================================

--------------------------------------------------------------------------------

This message and its attachments are sent from a law firm and may contain information that is confidential and protected by privilege from disclosure. If you are not the intended recipient, you are prohibited from printing, copying, forwarding or saving them. Please delete the message and attachments without printing, copying, forwarding or saving them, and notify the sender immediately.

========================================================================================

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY,<br><br>     Plaintiff,<br><br>v.<br><br>DHARMACON, INC. and FISHER SCIENTIFIC INTERNATIONAL INC.,<br><br>     Defendants. | Civil Action No.: 05-10156 PBS |

## <u>REQUEST FOR RULE 34 INSPECTION</u>

Please take notice that, pursuant to Rule 34 of the Federal Rules of Civil Procedure,

Massachusetts Institute of Technology ("MIT") requests that Dharmacon, Inc., permit counsel

for MIT to enter the facilities of Dharmacon, Inc., located at 2650 Crescent Dr., Suite 100,

Lafayette, CO  80026, for the purpose of inspecting, surveying, and/or photographing (by still

and/or video photography) the products identified by Defendants' in their Responses to MIT's

Interrogatory Nos. 5 and 6, and the methods, materials, procedures, and apparatus used to design,

make and sell such products.

Such entry shall occur beginning at 9:00 a.m. on November 30, 2005, or at such other

time as mutually agreed upon by the parties, and will continue thereafter day to day until

completed.

Dated: October 26, 2005

Respectfully submitted,

Massachusetts Institute of Technology,

By its Attorneys,

Steven M. Bauer (BBO# 542531)
Kimberly A. Mottley (BBO# 651190)
PROSKAUER ROSE LLP
One International Place
Boston, Massachusetts 02110-2600
Phone: 617-526-9600
Fax:    617-526-9899

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 26, 2005, I caused a true and correct copy of

MIT'S REQUEST FOR RULE 34 INSPECTION to be served on the following counsel of record

via email:

Timothy C. Blank
DECHERT LLP
200 Clarendon Street
27th Floor
Boston, MA 02116-5021
timothy.blank@dechert.com

By:    Kimberly A. Mottley

2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MASSACHUSETTS INSTITUTE OF
TECHNOLOGY,

      Plaintiff,

v.

DHARMACON, INC. and FISHER
SCIENTIFIC INTERNATIONAL INC.,

      Defendants.

Civil Action No.: 05-10156 PBS

## <u>NOTICE OF DEPOSITION OF JOHN ADAIR</u>

Please take notice that pursuant to Rule 30 of the Federal Rules of Civil Procedure, counsel for Massachusetts Institute of Technology ("MIT") will take the deposition upon oral examination of John Adair, 2650 Crescent Dr., Suite 100, Lafayette, CO 80026, at the offices of Esquire Deposition Services, 303 East 17th Avenue, Suite 565, Denver, CO 80203, beginning at 9:00 a.m. on December 13, 2005, or at such other time and place as mutually agreed upon by the parties, and will continue thereafter day to day until completed. The deposition will be taken before a notary public or other officer authorized by law to administer oaths. The deposition shall be recorded by a stenographer or court reporter, and may be recorded by video and sound means.

Dated: November 2, 2005

Respectfully submitted,

Massachusetts Institute of Technology,

By its Attorneys,

Steven M. Bauer (BBO# 542531)
Kimberly A. Mottley (BBO# 651190)
PROSKAUER ROSE LLP
One International Place
Boston, Massachusetts 02110-2600
Phone: 617-526-9600
Fax:    617-526-9899

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 2, 2005, I caused a true and correct copy of

MIT'S NOTICE OF DEPOSITION OF JOHN ADAIR to be served on the following counsel of

record via email:

Timothy C. Blank
DECHERT LLP
200 Clarendon Street
27th Floor
Boston, MA 02116-5021
timothy.blank@dechert.com

By:     Kimberly A. Mottley

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MASSACHUSETTS INSTITUTE OF
TECHNOLOGY,

       Plaintiff,

v.

DHARMACON, INC. and FISHER
SCIENTIFIC INTERNATIONAL INC.,

       Defendants.

Civil Action No.: 05-10156 PBS

## NOTICE OF DEPOSITION OF MICHAEL DEINES

Please take notice that pursuant to Rule 30 of the Federal Rules of Civil Procedure,

counsel for Massachusetts Institute of Technology ("MIT") will take the deposition upon oral

examination of Michael Deines, 2650 Crescent Dr., Suite 100, Lafayette, CO 80026, at the

offices of Esquire Deposition Services, 303 East 17th Avenue, Suite 565, Denver, CO 80203,

beginning at 9:00 a.m. on December 12, 2005, or at such other time and place as mutually agreed

upon by the parties, and will continue thereafter day to day until completed.  The deposition will

be taken before a notary public or other officer authorized by law to administer oaths.  The

deposition shall be recorded by a stenographer or court reporter, and may be recorded by video

and sound means.

Dated: November 2, 2005

Respectfully submitted,

Massachusetts Institute of Technology,

By its Attorneys,

*Kimberly A. Mottley*

Steven M. Bauer (BBO# 542531)
Kimberly A. Mottley (BBO# 651190)
PROSKAUER ROSE LLP
One International Place
Boston, Massachusetts 02110-2600
Phone: 617-526-9600
Fax:    617-526-9899

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 2, 2005, I caused a true and correct copy of MIT'S NOTICE OF DEPOSITION OF MICHAEL DEINES to be served on the following counsel of record via email:

Timothy C. Blank
DECHERT LLP
200 Clarendon Street
27th Floor
Boston, MA 02116-5021
timothy.blank@dechert.com

By:    *Kimberly A. Mottley*

Kimberly A. Mottley

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY,<br><br>      Plaintiff,<br><br>v.<br><br>DHARMACON, INC. and FISHER SCIENTIFIC INTERNATIONAL INC.,<br><br>      Defendants. | Civil Action No.: 05-10156 PBS |

## NOTICE OF DEPOSITION OF STEPHANIE HARTSEL

Please take notice that pursuant to Rule 30 of the Federal Rules of Civil Procedure, counsel for Massachusetts Institute of Technology ("MIT") will take the deposition upon oral examination of Stephanie Hartsel, 2650 Crescent Dr., Suite 100, Lafayette, CO 80026, at the offices of Esquire Deposition Services, 303 East 17th Avenue, Suite 565, Denver, CO 80203, beginning at 9:00 a.m. on December 15, 2005, or at such other time and place as mutually agreed upon by the parties, and will continue thereafter day to day until completed. The deposition will be taken before a notary public or other officer authorized by law to administer oaths. The deposition shall be recorded by a stenographer or court reporter, and may be recorded by video and sound means.

Dated: November 2, 2005

Respectfully submitted,

Massachusetts Institute of Technology,

By its Attorneys,

Steven M. Bauer (BBO# 542531)
Kimberly A. Mottley (BBO# 651190)
PROSKAUER ROSE LLP
One International Place
Boston, Massachusetts 02110-2600
Phone: 617-526-9600
Fax:     617-526-9899

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 2, 2005, I caused a true and correct copy of

MIT'S NOTICE OF DEPOSITION OF STEPHANIE HARTSEL to be served on the following

counsel of record via email:

Timothy C. Blank
DECHERT LLP
200 Clarendon Street
27th Floor
Boston, MA 02116-5021
timothy.blank@dechert.com

By:

Kimberly A. Mottley

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY,<br><br>　　　　Plaintiff,<br><br>v.<br><br>DHARMACON, INC. and FISHER SCIENTIFIC INTERNATIONAL INC.,<br><br>　　　　Defendants. | Civil Action No.: 05-10156 PBS |

## <u>NOTICE OF DEPOSITION OF KIM NICHOLS</u>

Please take notice that pursuant to Rule 30 of the Federal Rules of Civil Procedure, counsel for Massachusetts Institute of Technology ("MIT") will take the deposition upon oral examination of Kim Nichols, 2650 Crescent Dr., Suite 100, Lafayette, CO 80026, at the offices of Esquire Deposition Services, 303 East 17th Avenue, Suite 565, Denver, CO 80203, beginning at 2:00 p.m. on December 15, 2005, or at such other time and place as mutually agreed upon by the parties, and will continue thereafter day to day until completed. The deposition will be taken before a notary public or other officer authorized by law to administer oaths. The deposition shall be recorded by a stenographer or court reporter, and may be recorded by video and sound means.

Dated: November 2, 2005

Respectfully submitted,

Massachusetts Institute of Technology,

By its Attorneys,

*Kimberly A. Mottley*

Steven M. Bauer (BBO# 542531)
Kimberly A. Mottley (BBO# 651190)
PROSKAUER ROSE LLP
One International Place
Boston, Massachusetts 02110-2600
Phone: 617-526-9600
Fax:    617-526-9899

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 2, 2005, I caused a true and correct copy of

MIT'S NOTICE OF DEPOSITION OF KIM NICHOLS to be served on the following counsel of

record via email:

Timothy C. Blank
DECHERT LLP
200 Clarendon Street
27th Floor
Boston, MA 02116-5021
timothy.blank@dechert.com

By:    *Kimberly A. Mottley*

Kimberly A. Mottley

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY,<br><br>    Plaintiff,<br><br>v.<br><br>DHARMACON, INC. and FISHER SCIENTIFIC INTERNATIONAL INC.,<br><br>    Defendants. | Civil Action No.: 05-10156 PBS |

## NOTICE OF DEPOSITION OF TIMOTHY HOOGHEEM

Please take notice that pursuant to Rule 30 of the Federal Rules of Civil Procedure, counsel for Massachusetts Institute of Technology ("MIT") will take the deposition upon oral examination of Timothy Hoogheem, 2650 Crescent Dr., Suite 100, Lafayette, CO 80026, at the offices of Esquire Deposition Services, 303 East 17th Avenue, Suite 565, Denver, CO 80203, beginning at 9:00 a.m. on December 14, 2005, or at such other time and place as mutually agreed upon by the parties, and will continue thereafter day to day until completed. The deposition will be taken before a notary public or other officer authorized by law to administer oaths. The deposition shall be recorded by a stenographer or court reporter, and may be recorded by video and sound means.

Dated: November 2, 2005

Respectfully submitted,

Massachusetts Institute of Technology,

By its Attorneys,

*Kimberly A. Mottley*

Steven M. Bauer (BBO# 542531)
Kimberly A. Mottley (BBO# 651190)
PROSKAUER ROSE LLP
One International Place
Boston, Massachusetts 02110-2600
Phone: 617-526-9600
Fax:    617-526-9899

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 2, 2005, I caused a true and correct copy of

MIT'S NOTICE OF DEPOSITION OF TIMOTHY HOOGHEEM to be served on the following

counsel of record via email:

Timothy C. Blank
DECHERT LLP
200 Clarendon Street
27th Floor
Boston, MA 02116-5021
timothy.blank@dechert.com

By:    *Kimberly A. Mottley*

Kimberly A. Mottley

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY, <br><br> Plaintiff, <br><br> v. <br><br> DHARMACON, INC. and FISHER SCIENTIFIC INTERNATIONAL INC., <br><br> Defendants. | Civil Action No.: 05-10156 PBS |

## NOTICE OF DEPOSITION OF DHARMACON, INC.

Please take notice that pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, counsel for Massachusetts Institute of Technology ("MIT") will take the deposition upon oral examination of Dharmacon, Inc. ("Dharmacon"), through its designated representative(s), on the examination subjects listed on Schedule A attached to this Notice.

Pursuant to Rule 30(b)(6), Dharmacon shall designate and produce at this deposition those of its officers, directors, employees, managing agents, or other representatives to testify on Dharmacon's behalf with respect to the Schedule A examination subjects.

This deposition of Dharmacon will occur at the offices of Esquire Deposition Services, 303 East 17th Avenue, Suite 565, Denver, CO 80203, beginning at 9:00 a.m. on December 16, 2005, or at such other time and place as mutually agreed upon by the parties, and will continue thereafter day to day until completed. The deposition will be taken before a notary public or other officer authorized by law to administer oaths. The deposition shall be recorded by a stenographer or court reporter, and may be recorded by video and sound means.

## SCHEDULE A

## DEFINITIONS

1.      The term "MIT" shall mean the plaintiff in this action, Massachusetts Institute of Technology.

2.      "Dharmacon" means Dharmacon, Inc., including its servants, agents, representatives, employees, principals, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest, successors-in-interest, and all other persons, forms or corporations acting with it or on its behalf.

3.      "License Agreement" means the December 21, 2001 license agreement executed by MIT and Dharmacon.

4.      The connective "and" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the examination subject all responses that might otherwise be construed to be outside of its scope.

## EXAMINATION SUBJECTS

1.      Negotiation and execution of the License Agreement.

2.      Interpretation of the License Agreement.

3.      Identification of Dharmacon products considered by Dharmacon to be "Licensed Products" under the License Agreement.

4.      Conception, design, development and manufacture of products considered by Dharmacon to be "Licensed Products" under the License Agreement.

5.      Conception, design, development and manufacture of products considered by MIT to be "Licensed Products" under the License Agreement.

6.      Marketing, sales, pricing, and revenue derived from sales of products considered by Dharmacon to be "Licensed Products" under the License Agreement.

7.      Marketing, sales, pricing, and revenue derived from sales of products considered by MIT to be "Licensed Products" under the License Agreement.

8.      Royalties payments made to MIT on behalf of Dharmacon pursuant to the License Agreement.

Dated: November 3, 2005

Respectfully submitted,

Massachusetts Institute of Technology,

By its Attorneys,

*Kimberly A. Mottley*
Steven M. Bauer (BBO# 542531)
Kimberly A. Mottley (BBO# 651190)
PROSKAUER ROSE LLP
One International Place
Boston, Massachusetts 02110-2600
Phone: 617-526-9600
Fax:    617-526-9899

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 3, 2005, I caused a true and correct copy of

MIT'S NOTICE OF DEPOSITION OF DHARMACON, INC. to be served on the following

counsel of record via email:

Timothy C. Blank
DECHERT LLP
200 Clarendon Street
27th Floor
Boston, MA 02116-5021
timothy.blank@dechert.com

By:   *Kimberly A. Mottley*
      Kimberly A. Mottley

3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY, <br><br> Plaintiff, <br><br> v. <br><br> DHARMACON, INC. and FISHER SCIENTIFIC INTERNATIONAL INC., <br><br> Defendants. | Civil Action No.: 05-10156 PBS |

### <u>NOTICE OF DEPOSITION OF ANASTASIA KHVORORA</u>

Please take notice that pursuant to Rule 30 of the Federal Rules of Civil Procedure,

counsel for Massachusetts Institute of Technology ("MIT") will take the deposition upon oral

examination of Anastasia Khvorora, 2650 Crescent Dr., Suite 100, Lafayette, CO 80026, at the

offices of Esquire Deposition Services, 303 East 17th Avenue, Suite 565, Denver, CO 80203,

beginning at 9:00 a.m. on December 16, 2005, or at such other time and place as mutually agreed

upon by the parties, and will continue thereafter day to day until completed. The deposition will

be taken before a notary public or other officer authorized by law to administer oaths. The

deposition shall be recorded by a stenographer or court reporter, and may be recorded by video

and sound means.

Dated: November 7, 2005

Respectfully submitted,

Massachusetts Institute of Technology,

By its Attorneys,

Steven M. Bauer (BBO# 542531)
Kimberly A. Mottley (BBO# 051190)
PROSKAUER ROSE LLP
One International Place
Boston, Massachusetts 02110-2600
Phone: 617-526-9600
Fax:    617-526-9899


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 7, 2005, I caused a true and correct copy of

MIT'S NOTICE OF DEPOSITION OF ANASTASIA KHVORORA to be served on the

following counsel of record via email:

Timothy C. Blank
DECHERT LLP
200 Clarendon Street
27th Floor
Boston, MA 02116-5021
timothy.blank@dechert.com

By:

Kimberly A. Mottley